IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **OFFICER IN THE UNITED STATES SPACE FORCE**<br>c/o Thomas More Law Center<br>24 Frank Lloyd Wright Drive, Suite 393<br>Ann Arbor, Michigan 48106<br><br>                    Plaintiff,<br><br>      v.<br><br>**LLOYD J. AUSTIN III**, in his official capacity as the Secretary of the United States Department of Defense,<br>1000 Defense Pentagon<br>Washington, D.C. 20301-1000<br><br>**FRANK KENDALL**, in his official capacity as United States Secretary of the Air Force,<br>1670 Air Force Pentagon<br>Washington, D.C. 20330-1670<br><br>**LT. GEN. STEPHEN N. WHITING**, individually and in his official capacity as Commander, Space Operations Command,<br>150 Vandenberg Street<br>Peterson Space Force Base, CO 80914<br><br>**LT. GEN. ROBERT I. MILLER**, individually and in his official capacity as a Surgeon General of the Air Force,<br>1780 Air Force Pentagon<br>Washington, D.C. 20330-1780<br><br>                    Defendants. | Case No. _____<br><br><br>**VERIFIED COMPLAINT** |

Plaintiff Officer in the United States Space Force (hereinafter Plaintiff), by and through undersigned counsel, brings this Verified Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof allege the following upon information and belief:

- 1 -

## INTRODUCTION

1.      This case is about the human right to abstain from medical decisions that violate sincerely held religious beliefs without severe, career-ending punishment and dire financial consequences at the hand of the federal government.

2.      Since November 2, 2021, Plaintiff, a Captain in the United States Space Force, has worked under a temporary exemption from the military's vaccine mandate.  *See* Secretary of the Dep't of the U.S. Air Force, DAFI52-201 23 June 2021, https://static.e-publishing.af.mil/production/1/af_hc/publication/dafi52-201/dafi52-201.pdf      (granting      a temporary exemption for administrative convenience while processing exemption requests).

3.      The temporary exemption required Plaintiff to submit to lesser restrictive alternatives such as COVID-19 screening, testing, and other measures aimed to mitigate transmission of the virus.  Plaintiff has followed these measures without issue.

4.      The case count and number of hospitalizations due to COVID-19 has plummeted since December 2021, and the area where Plaintiff is based is now considered to be at a "low" community level per the Centers for Disease Control and Prevention (hereinafter CDC) guidelines. CDC's COVID Data Tracker, Integrated County View, https://covid.cdc.gov/covid-data-tracker/#county-view?list_select_state=Virginia&data-type=&list_select_county=51059.      New hospitalizations are now at 1 per population of 100,000.  *Id.*

5.      Yet despite successfully using lesser restrictive alternatives for several months during Plaintiff's temporary exemption, Defendants informed Plaintiff on April 5, 2022 that she must now be vaccinated within five days or leave the military.  Defendants' decision to rescind Plaintiff's temporary exemption and refusal to accommodate her sincerely held religious beliefs is being imposed now—after the threat of COVID-19 has *substantially* lessened, after the efficacy

of the presently available vaccines have waned due to the developments of new COVID-19 variants, and as the virus becomes endemic.

6.     Plaintiff's job duties have not changed.

7.     The impact of Plaintiff's adherence to her sincerely held religious beliefs has not changed, nor has her accommodation's bearing on mission accomplishment, military readiness, unit cohesion, good order and discipline, health, or safety.  She poses no greater harm today than she did prior to April 5, 2022 when Defendants exempted her from the vaccine mandate.

8.     Defendants, however, have now forced Plaintiff to either 1) get the COVID-19 immunizations knowing that doing so violates her sincerely held religious beliefs,  2) apply to leave the military immediately—losing the livelihood to which she has devoted her entire life and incurring substantial financial harm that will require paying back the military for graduate school, or 3) undergo punishment under the Uniform Code Military of Justice and the permanent ruin of her military record.  And given that Plaintiff is presently fulfilling multiple active service commitments, the second option is not guaranteed and, in fact, is unlikely.

9.     This is a civil action in which Plaintiff seeks to protect her fundamental rights guaranteed by the United States Constitution and federal statutory law.

10.    Defendants' vaccine mandate and refusal to accommodate Plaintiff's religious beliefs violates the Religious Freedom Restoration Act (hereinafter RFRA), 42 U.S.C. §§ 2000bb to 2000bb-4, and the First Amendment's guarantee of free exercise of religion. Defendants do not question the sincerity of Plaintiff's religious objections to the vaccine or dispute that the vaccine mandates substantially burden her free exercise of religion.

11.    Furthermore, Defendants have not shown that requiring Plaintiff to receive the COVID-19 vaccination is the least restrictive means of achieving a compelling government

interest.

12.     Plaintiff seeks preliminary and permanent injunctions to enjoin the enforcement of Defendants' COVID-19 vaccine mandate and any and all adverse consequences that Defendants have imposed, or will impose, upon Plaintiff for objecting to the mandate to remain faithful to her sincerely held religious beliefs, as set forth in this Complaint.  Plaintiff seeks a declaration that Defendants' vaccine mandate and refusal to grant a religious accommodation violates her rights protected by the First and Fifth Amendments to the United States Constitution and RFRA as set forth in this Complaint.  Plaintiff also seeks damages under RFRA against Lt. Gen. Robert I. Miller and Lt. Col. Stephen Whiting in their individual capacities as they unjustly and callously denied Plaintiff's religious exemption, requiring her to undergo immunization contrary to her faith.  Lt. Gen. Robert I. Miller and Lt. Gen. Stephen N. Whiting were the final decisionmakers directly responsible for the harm caused to Plaintiff.

## JURISDICTION AND VENUE

13.     The United States is a defendant in this action, and it arises under the Constitution and laws of the United States.  Jurisdiction, therefore, is conferred on this Court pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), and 1346.

14.     Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

15.     Plaintiff's claim for damages is authorized under RFRA.

16.     Plaintiff's claim for an award of their reasonable costs of litigation, including attorneys' fees and expenses, is authorized by 5 U.S.C. § 504,  28 U.S.C. §  1920, 28 U.S.C. § 2412, 42 U.S.C. § 2000bb-1, 42 U.S.C. § 1988 and other applicable law.

17.     Venue is proper under 28 U.S.C. § 1391(e) because Defendants are located in this district and a substantial part of the events and acts giving rise to Plaintiff's claims occurred in this District.

## PARTIES

18.     Plaintiff, Officer in the United States Space Force,[1] is an adult citizen of the United States on active duty and stationed in Fairfax County, Virginia.

19.     Plaintiff has served the United States of America with distinction and has made multiple sacrifices for her country to defend our freedoms against enemies around the globe and beyond.

20.     Plaintiff is now forced to filing this lawsuit to defend her own freedom of religious exercise, which she an as American too possesses.

21.     Plaintiff, a devout Catholic, cannot comply with Defendants' vaccine  mandate without violating her sincerely held religious beliefs.

22.     Defendant Lloyd J. Austin III, in his official capacity as the Secretary of the United States Department of Defense ("DoD'), is responsible for enacting, implementing, and enforcing the vaccine mandate that violates Plaintiff's sincerely held religious beliefs.  On August 24, 2021, Defendant Austin issued a DoD Memorandum requiring all military service members undergo COVID-19 vaccination.  Defendant Austin is sued in his official capacity.

23.     Defendant Frank Kendall, in his official capacity as the Secretary of the United States Air Force, is responsible for enacting, implementing, and enforcing the vaccine mandate that violates Plaintiff's sincerely held religious beliefs.  On September 3, 2021, Defendant Kendall issued a Memorandum requiring all members of the United States Air Force, including the United

---

[1] Plaintiff is filing a Motion to Proceed Pseudonymously.

States Space Force, to undergo COVID-19 vaccination.  On December 7, 2021, Defendant Kendall issued a Supplemental Memorandum.

24.     Lt. Gen. Stephen N. Whiting, in his official and individual capacity, is sued for implementing and enforcing the vaccine mandate to cause the violation of Plaintiff's sincerely held religious beliefs.  Defendant Whiting issued the denial of Plaintiff's request for a religious accommodation on February 11, 2022.  (Exhibit 3).  Defendant Whiting was the decisionmaker tasked with granting or denying Plaintiff's request for a religious accommodation.

25.     Lt. Gen. Robert I. Miller, in his official and individual capacity, is sued for implementing and enforcing the vaccine mandate to cause the violation of Plaintiff's sincerely held religious beliefs.  Defendant Miller reviewed Plaintiff's appeal and issued the final denial of Plaintiff's request for a religious exemption on March 25, 2022.  In the denial Defendant Miller stated that it was "vital to mission accomplishment" that Plaintiff undergo vaccination and that her vaccination status could have "a real adverse impact."  (Exhibit 5).  Yet, Defendants did not inform Plaintiff of the denial of her request for a religious accommodation until April 5, 2022—eleven (11) days later.  During these eleven (11) days, Plaintiff was fully engaged in the accomplishment of her mission and her status caused no adverse impact to her unit or otherwise.  Defendants have made no showing that Plaintiff's vaccination would cause a detriment to her unit in the future. Defendant United States Department of Defense (DoD) is an executive branch department that coordinates and supervises all agencies and functions of the government related to the United States Armed Forces, including the vaccination mandate and failure to accommodate Plaintiff's sincerely held religious beliefs.

## STATEMENT OF FACTS

### Plaintiff's Sincerely Held Religious Beliefs

26.     Plaintiff is a devout Roman Catholic who dutifully and strictly follows the teachings of the Catechism of the Catholic Church.

27.     Plaintiff's religious faith defines her life decisions.  She strives to follow the teachings of her church and properly exercise her conscience.  She attends Mass on Sundays and on Holy Days of Obligation, fasting and abstaining on the days prescribed.  She participates in the Sacrament of confession and receives the Blessed Eucharist.

28.     Plaintiff's religion expressly instructs that abortion is the sinful taking of an innocent life. The Catholic Catechism, in no uncertain terms, condemns the practice of abortion and defines life as beginning at the moment of conception.[2]  Scripture reflects the same.[3]  Therefore, when making any decisions, Plaintiff's faith calls her to the path that best protects the sanctity of life and interdicts the sin of abortion.

29.      Plaintiff believes that it is sinful to cooperate in an abortion, even in a remote material way.

30.     In the past, Plaintiff has  refused to take birth control medication when recommended by her primary care manager for acne because of its abortifacient properties.  Plaintiff believes that birth control use is sinful for this reason.

31.     Upon deep reflection and discernment, Plaintiff has concluded that her religious convictions forbid her from supporting, participating in, or benefiting from abortion, including benefitting from the byproduct of abortion: a deceased human and his or her tissue or cell line.

---

[2]https://www.catholicnewsagency.com/resource/55003/abortion-catechism-of-the-catholic-church
[3] Jeremiah 1:5, Psalm 139:13-18, Exodus 20:13, Job 31:15, Proverbs 6:16-19

32.     The use of aborted human cell lines in vaccine manufacturing, production, and testing creates a use and a potential marketplace for such tissue and cell lines, which is sinful and directly opposed to her religious conscience.

33.     Plaintiff's religion supports the right of an individual to abstain from COVID-19 vaccination based upon his/her conscience and understanding of the Catholic faith.  On August 5, 2021, the Colorado Catholic Conference, released a document citing the Catechism and the Second Vatican Council stating, "An individual Catholic may invoke Church teaching to refuse a vaccine that used abortion-derived cell lines at any stage of the creation of the vaccine."[4]  Plaintiff's conscience and Catholic faith compel her to refuse these vaccines.

34.     All three available COVID-19 vaccines were created with the use of aborted fetal cell lines.  The Johnson & Johnson vaccine uses the PerC6 aborted fetal cell line in development. PerC6 cells were derived from an 18-week-old fetus who was electively aborted.  The cells used to procure the Johnson & Johnson vaccine distinctly involve elective abortion and the use of human tissue and cell lines.   Plaintiff's faith instructs that it is profoundly unethical to do so. Unfortunately, the Moderna and Pfizer vaccinations suffer from the same flaw.  The Moderna and Pfizer use the HEK293 aborted cell line in the confirmation phase, a cell line derived from elective abortion as well.[5,6]

35.     Plaintiff holds sincere religious objections to the three currently available COVID-19 vaccines.

---

[4] https://cocatholicconference.org/template-for-religious-exemption-from-covid-19-vaccines/
[5] https://www.reuters.com/article/factcheck-johnson-aborted-idUSL1N2LU1T9                        ("The Pfizer/BioNTech and Moderna vaccines used fetal cell lines in their testing stages. Johnson & Johnson used a human fetal cell line called PER.C6, developed from the retinal cells of an 18-week-old fetus aborted in 1985 in its production and manufacturing stages.").
[6] https://www.nebraskamed.com/COVID/you-asked-we-answered-do-the-covid-19-vaccines-contain-aborted-fetal-cells.

36.     Therefore, on September 30, 2021, Plaintiff submitted her request for a Religious Accommodation from the Defendant's vaccine mandate.  (Exhibit 2).  The request outlines Plaintiff's sincerely held religious objections to the Johnson & Johnson, Moderna, and Pfizer COVID-19 vaccines and is incorporated by reference here.

**Defendants' Policies Were Designed to Protect Religious Freedom and are Defined by RFRA—The Controlling Federal Law**

37.     Department of Defense Instruction (DoDI) 1300.17,[7] *Religious Liberty in the Military Services*, dated September 1, 2020, establishes DoD policy in furtherance of RFRA and the Free Exercise Clause of the First Amendment to the Constitution of the United States.  DoDI 1300.17 provide that it is DoD policy that "Service members have the right to observe the tenets of their religion or to observe no religion at all, as provided in this issuance."

38.     DoDI 1300.17 provides that "[i]n accordance with Section 533(a)(1) of Public Law 112-239, as amended the DoD Components will accommodate individual expressions of sincerely held beliefs (conscience, moral, principles, or religious beliefs) which do not have an adverse impact on military readiness, unit cohesion, good order and discipline, or health and safety.  A Service member's expression of such beliefs may not in so far as practicable, be used as the basis of any adverse personnel action, discrimination, or denial of promotion, schooling, training, and assignment.

39.     DoDI 1300.17 states that "[a]ccommodation includes excusing a Service member from an otherwise applicable military policy, practice, or duty. In accordance with RFRA, if such a military policy, practice, or duty substantially burdens a Service member's exercise of religion, accommodation can only be denied if:

---

[7]DoDI                    1300.17                 is              available              at https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/130017p.pdf.

(1) The military policy, practice, or duty is in furtherance of a compelling governmental interest.

(2) It is the least restrictive means of furthering that compelling interest.

In applying the standard in paragraphs 1.2.e(1) and 1.2.e(2), the burden of proof is placed upon the DoD Component, not the individual requesting the exemption."

40.     The Air Force published AFPD 52-2, *Accommodation of Religious Practices in the Air Force*, on July 28, 2020.[8]  Compliance with AFPD 52-2 is mandatory.  AFPD 52-2 provides that Air Force has a "compelling government interest in mission accomplishment and will this  into account when considering Air Force members' requests  for accommodation of religious practices."  *Id.* § 1.2.  It further provides that the "Air Force expects commanders and supervisors to permit individual expressions of sincerely held beliefs (conscience, moral principles, or religious)."  *Id.* § 1.3.

41.     AFPD 52-2 provides that the "Air Force will approve an individual request for accommodation unless the request would have a real (not theoretical) adverse impact on military readiness, unit cohesion, good order, discipline, or public health and safety."  *Id.* § 1.4.

42.     DAFI 52-201, *Religious Freedom in the Department of the Air Force*, dated June 23, 2021[9] implements RFRA on a local scale.  In explaining the procedures to be used when evaluating a request for a religious accommodation, DAFI 52-201 provides that the "first question to answer is  whether  the accommodation requires is based on the expression of sincerely held beliefs (*e.g*., conscience, moral, principles, or religious beliefs).  If it is based on a sincerely held belief, the relevant

---

[8]    Air   Force   Policy   Directive   (AFPD)   52-2   is   available   at   https://static.e-publishing.af.mil/production/1/af_hc/publication/afpd52-2/afpd52-2.pdf.
[9] Department of the Air Force Instruction (DAFI) 52-201 is available at https://static.e-publishing.af.mil/production/1/af_hc/publication/dafi52-201/dafi52-201.pdf.

expression can include any religious practice, whether compelled by, or central to, an organized system of religious belief." *Id.* § 2.2.1.

43.     "The second question is whether the policy, practice, or duty from which the member is requesting accommodation substantially burdens the expression of that belief." *Id.* § 2.2.2. "A governmental act is a substantial burden to a Service member's exercise of religion if it . . . places substantial pressure on a Service member to engage in conduct contrary to a sincerely held religious belief." *Id*. § 2.2.3.3.

44.     Under DAFI 52-201, a request for accommodation will be approved "unless the request would have a real (not theoretical) adverse impact on military readiness, unit cohesion, good order, discipline, health or safety." *Id.* § 2.3. Specifically, "Commanders will approve the religious accommodation request unless a compelling governmental exists for the policy, practice, or duty from which the member is seeking religious accommodation. Any restriction on the expression of sincerely held religious beliefs must use the least restrictive means with respect to the applicant to achieve the compelling government interest.  Using the least restrictive means necessary may include partial approval, approval with specified conditions, or other means that a less burdensome on the member's religious beliefs.  With the advice of a chaplain, alternative ways (i.e., partial approval) to satisfy the requested accommodation can also be considered." *Id.* § 2.4.

45.     In determining whether a compelling governmental interest exists and whether the restriction uses the least restrictive means necessary to achieve the compelling interest, commanders must consider, "[t]he importance and need for the specific policy, practice, or duty as it relates to mission accomplishment, mission readiness, unite cohesion, good order and discipline, health, and safety." *Id.* § 2.4.1.1.

46.     Per DoD 1300.17.3.1.a, a Service member may be considered for a temporary

exemption during the pendency of his/her request for an accommodation, but such temporary exemptions should only be granted in exceptional circumstances. ("Service members submitting a request for accommodation will continue to comply with the policy, practice, or duty from which an accommodation has been requested unless and until informed that the request has been approved by the appropriate authority. Exceptions to this requirement may only be granted in exceptional circumstances, in accordance with the implementing regulations and policies promulgated by the Military Department and Military Service concerned.").

**Defendants' Decision to Violate Plaintiff's Sincerely Held Religious Beliefs**

47.     On or about July 29, 2021, President Biden directed the DoD to add the COVID-19 vaccine to its list of required immunizations for all service members.  *See* The White House, "FACT SHEET: President Biden to Announce New Actions to Get More Americans Vaccinated and Slow the Spread of the Delta Variant" (July 29, 2021), https://tinyurl.com/yv7eawet; Meghann Meyers and Howard Altman, *Military Times*, Oct. 21, 2021, https://tinyurl.com/mr25arhh.

48.     One month later on August 24, 2021, Defendant Austin issued a memorandum titled "Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members" (referred to in this Complaint as the "vaccine mandate"). The vaccine mandate directs the DoD to vaccinate all active duty and reserve service members against COVID-19.  The vaccine mandate states that service members who previously contracted COVID-19, and now have active antibodies against the virus, are not considered fully vaccinated and are still required to receive a vaccination against COVID-19.

49.     The vaccine mandate provides that the DoD will only use or administer COVID-19 vaccines that are fully licensed by the United States Food and Drug Administration (FDA), in accordance with FDA-approved labeling and guidance.  The vaccine mandate provides that service

members who previously received a vaccination against COVID-19 under FDA Emergency Use Authorization or World Health Organization Emergency Use Listing are considered fully vaccinated and provides that service members actively participating in COVID-19 clinical trials are exempted from the vaccine mandate until the trial is complete.

50.    The vaccine mandate states that the DoD will implement the mandate consistent with DoD Instruction 6205.02, "DoD Immunization Program," dated July 23, 2019.[10]  The vaccine mandate states that vaccination of service members will be subject to any identified contraindications and any administrative or other exemptions established in Military Department policy.

51.    Defendants issued subsequent guidance stating that service members who are not fully vaccinated by established deadlines will immediately suffer adverse consequences as directed by their service components. The adverse consequences may include court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, removal from promotion lists, inability to attend certain military training and education schools, loss of special pay, placement in a non-deployable status, recoupment of money spent training the service member, and loss of leave and travel privileges for both official and unofficial purposes.

52.    On September 3, 2021, Secretary Kendall issued a Memorandum for Department of Air Force Commanders, with the subject: Mandatory Coronavirus Disease 2019 Vaccination of Department of the Air Force Military Members ("Air Force Vaccine Mandate").[11]  The Air Force

---

[10] DoDI 6205.02 is available at
https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/620502p.pdf?ver=2019-07-23-085404-617.
[11] Secretary Kendall's September 3, 2021 Memorandum is available at
https://www.hqrio.afrc.af.mil/Portals/149/Documents/COVID/20210903%20DAF_%20SecAF%20Memo%20-%20Mandatory%20Coronavirus%20Disease%202019%20Vaccination%20of%

Vaccine Mandate requires Air Force commanders to "take all steps necessary to ensure all uniformed Airmen and Guardians receive the COVID-19 vaccine, which includes issuing unit-wide and individual orders to their military members." It provides that, "[u]nless exempted" all service members must be vaccinated by November 2, 2021. The Air Force Vaccine Mandate further provides that "[o]nly COVID-19 vaccines that receive full licensure from the Food and Drug Administration (FDA) will be utilized for mandatory vaccinations unless a military member volunteers to receive a vaccine that has obtained U.S. Food and Drug Administration Emergency Use Authorization or is included in the World Health Organization's Emergency Use Listing. Individuals with previous COVID-19 infection or positive serology are not considered fully vaccinated and are not exempt."

53.     On September 13, 2021, Maj. Gen. Donna D. Shipton issued a memorandum ordering the Department of the Air Force personnel assigned to the National Reconnaissance Office (NRO) to undergo COVID-19 vaccination, stating that "[m]andatory vaccination will only include COVID-19 vaccines that receive full licensure from the Food and Drug Administration (currently Pfizer-BioTech COVID-19 vaccine, now marketed as COMIRNATY). (Exhibit 1). Additionally, Moderna or Johnson & Johnson vaccines may be voluntarily taken to meet this requirement as well."

54.     All mandated vaccines involved the use of aborted fetal cell lines in the manufacturing or testing stages of their production. Defendants failed to offer Plaintiff an ethical vaccination option.

55.     On October 18, 2021, Lt. Gen. Robert I. Miller issued a memorandum with the

20Department%20of%20the%20Air%20Force%20Military%20Members.pdf?ver=YogX1KMirg
EUGIvzJtgUSw%3D%3D.

subject: COVID-19 Immunization Religious Accommodation Request Appeals. The memorandum states that Airmen who believe the vaccine mandate "substantially burdens their exercise of a sincerely held belief may request exemption from this immunization requirement." The memorandum provides that "[r]equests for religious accommodation from the requirement will follow guidance in DAFI 52-201, *Religious Freedom in the Department of the Air Force*, dated June 23, 2021. The memorandum directs commanders to "consider whether the member has a sincerely held belief, if the request is related to the sincerely held belief, and how and to what extent the DAF policy places a substantial burden on the exercise of their belief. The approval authority will also balance any compelling government interest, and any effect the accommodation will have on readiness, unit cohesion, good order and discipline, health, safety, and impact on the duties of the member." The memorandum further directed commanders to "assess whether less restrictive means can be used to meet any compelling governmental interest."

56.     On November 2, 2021, Lt. Gen. Robert I. Miller took to Twitter to further propagate that the "entire" military undergo COVID-19 vaccination. Defendant Miller likened COVID-19 vaccination to "wearing a helmet" and made statements about its effect on the breast tissue of female servicemembers.[12]

57.     On December 7, 2021, Defendant Kendall issued a memorandum with the subject: Supplemental Coronavirus Disease 2019 Vaccination Policy.[13] The memorandum stated that if a final appeal is denied, the "service member will have five (5) calendar days from the notice of denial to begin the COVID-19 vaccination regimen." The memorandum stated that "[s]ervice

---

[12]     Defendant Miller's Tweet is available at https://twitter.com/usairforce/status/1455500274232176641.
[13]     Defendant Kendall's Supplemental Memorandum is available at https://www.af.mil/Portals/1/documents/2021SAF/12_Dec/Supplemental_Coronavirus_Disease_2019_Vaccination_Policy.pdf.

members separated due to refusal of the COVID-19 vaccine will not be eligible for involuntary separation pay and will be subject to recoupment of any unearned special or incentive pays."

58.     Defendant Kendall's December 7, 2021, Supplemental Memorandum, outlined three bases for exemptions to the COVID-19 vaccination: medical, religious, and administrative.

59.     The memorandum also emphasized that service members with pending requests for accommodations were temporarily exempt from complying with the mandate.

60.     The memorandum forwarded the blanket statement that undergoing COVID-19 vaccination was "essential military readiness requirement for all components of the Air Force and Space Force"—revealing that while a process was provided for service members, the Defendants had already determined the outcome.  No accommodations would be properly considered under RFRA, and no accommodations would be forthcoming.

61.     To date, more than 98% of active service members in the United States Air Force have undergone COVID-19 vaccination.  DAF COVID-19 Statistics - Apr. 5, 2022, available at https://www.af.mil/News/Article-Display/Article/2989918/daf-covid-19-statistics-apr-5-2022/.

62.     However, Pentagon Press Secretary John F. Kirby, when speaking on behalf of Secretary of Defense Lloyd J. Austin, in remarks on December 16, 2021, stated "…what we want is 100 percent vaccination."[14]

63.     Therefore, it was not surprising that on February 11, 2022, Lt. Gen. Stephen N. Whiting denied Plaintiff's Request for a Religious Accommodation.  (Exhibit 3).

64.     In the denial, Defendant Whiting does not challenge that Plaintiff's religious beliefs are sincere (indeed they are).  Instead, Defendant Whiting without considering any lesser

---

[14]     Statement    of    Secretary    John    F.    Kirby    is    available    at https://www.defense.gov/News/Transcripts/Transcript/Article/2877275/pentagon-press-secretary-john-kirby-holds-an-off-camera-press-briefing/.

restrictive alternatives to the vaccine mandate, issues a conclusory and boilerplate statement that "less restrictive means would not be sufficient to achieve the compelling governmental interest in our vaccination against COVID-19." (Exhibit 3).

65.     Defendant Whiting fails to explain why testing and screening protocol would not be a lesser restrictive alternative.

66.     Defendant Whiting fails to explain why the lesser restrictive alternatives being employed by Defendants for Plaintiff's temporary exemption could not be extended.

67.     Defendant Whiting then ordered Plaintiff to undergo the mandated COVID-19 vaccination within five days or submit an appeal. (Exhibit 3).

68.     Defendant granted Plaintiff an additional five day extension after issuing its order and on February 25, 2022, Plaintiff filed her formal appeal. (Exhibit 4). Plaintiff's appeal is incorporated by reference.

69.     Plaintiff's appeal, *inter alia*, highlighted that Defendants failed to provide her with documents critical to her appeal and request for accommodation, that Defendants failed to properly apply RFRA, and that Defendants in their boilerplate response had erred in their understanding and characterization of Plaintiff's job duties. (Exhibit 4).

70.     On March 25, 2021, Lt. Gen. Robert I. Miller denied Plaintiff's appeal, making the final decision regarding Plaintiff's request for a religious accommodation. (Exhibit 5). Again, the denial contains boilerplate language and does not explain why lesser restrictive alternatives could not be used. (Exhibit 5).

71.     Eleven days later on April 5, 2022, Defendants decided to inform Plaintiff that her appeal was rejected and her temporary exemption would be coming to an end. (Exhibit 6).

72.     This boilerplate response is consistent with the Air Force's policy of issuing blanket

denials of requests for religious exemptions to the vaccine mandate. The Air Force recently disclosed statistics regarding its treatment of requests for religious exemptions in *Navy Seal #1, et al. v. Biden, et al.*, No. 8:21-cv-02429 (M.D. Fla.). In response to a court order in that case, the Air Force submitted a status update on February 4, 2022, listing the number of exemptions received, reviewed, granted, and denied. *See Navy Seal #1*, No. 8:21-cv-02429, ECF No. 73-5. As of February 3, 2022, the Air Force had received an estimated 12,623 requests for religious exemptions from the vaccine mandate. *Id.* The Air Force had approved only five of those requests. *Id.* And it had approved only one appeal. Meanwhile, the Air Force has granted 1,513 temporary medical exemptions and 2,314 administrative exemptions. *Id.*

73.     Upon information and belief, while the United State Space Force has issued temporary exemptions, such as the one extended to Plaintiff during the pendency of her request, it has approved *zero* requests for accommodations due to religious purposes.

74.     Now that her appeal has been denied, Plaintiff is facing imminent disciplinary action. If Plaintiff is discharged from the military, she will lose all rights to pension and owe financially crippling recoupment for her outstanding active service commitment.

75.     Plaintiff has enjoyed a stellar career in the United States Space Force, proudly serving her country. She has never been the subject of any disciplinary proceedings, let alone any disciplinary action.

76.      Plaintiff is being punished solely due to her sincerely held religious beliefs.

77.     Defendants have, in violation of RFRA and the United States Constitution, issued Plaintiff with the Hobson's choice: violate your sincerely held religious beliefs or sustain the wrath of their punishment.

**Defendants Have Failed to Use the Least Restrictive Means to**
**Address a Compelling Government Interest**

78.     Defendants' denial of Plaintiff's reasonable request to continue her temporary exemption from their vaccine mandate fails to use the least restrictive means to address a compelling governmental interest.

79.     DoDI 1300.17-3.1a provides that temporary exemptions to implemented policy should only be granted in exceptional circumstances.  Yet, Defendants found Plaintiff's request merited a temporary exemption.  Plaintiff has worked without issue under this temporary exemption for the past four months (since November 2, 2021).

80.     During such time, Plaintiff's vaccination status and her use of the accommodations provided in Defendant Kendall's December 7, 20221 Memorandum has not affected readiness, unit cohesion, good order and discipline, health, safety, and impact on the duties of the member.

81.     To the contrary, Plaintiff has successfully followed the testing and screening protocol required for her temporary exemption.

82.     Defendants do not explain why continuing with this accommodation would not be possible or would be unworkable moving forward.

83.     Since Defendants granted Plaintiff her temporary exemption, COVID rates and cases have plummeted—supporting the argument that there is a stronger basis for providing accommodations now than when Defendants originally agreed to extend the exemption to Plaintiff.

84.     Indeed, "[a]ll of [Defendants'] AOR's remain in the CDC low risk ('green') category.  Nationally, hospitalizations continue to decline and are near their lowest levels since the initial pandemic wave peaked in 2020.  Likewise COVID deaths are [i]n near record lows for the pandemic, rapidly approaching the lowest levels which were achieved in mid-summer 2021 (before the summer Delta surge).  These items, in combination with the high vaccination status of

our workforce, allow us to further reduce some of the remaining COVID mitigations, and leave in place those that are likely to become the new normal." (Exhibit 7).

85.    Furthermore, Plaintiff's community, per CDC guidelines, also is categorized as "low       risk."        *See*       https://covid.cdc.gov/covid-data-tracker/#county-view?list_select_state=Virginia&data-type=&list_select_county=51059.

86.    The United States Air Force and Space Force are free to meet in groups of up to 150 people, in person, but recognizes that much of the "work can be accomplished without in-person meetings, and some (e.g., Senior Staff Meeting) will continue as virtual only meetings." (Exhibit 7).

87.    Visitors, "both official and non-official," are allowed on base *without any* testing requirements or vaccination requirements. (Exhibit 7); *see also* (Exhibit 8) (explaining that when at a "low risk" community level, visitors are not required to wear masks, or undergo any type of screening or vaccination).

88.    There is no limitation to the number or frequency of visitors, other than the in-person meeting limitation of 150 people in one room.

89.    Service members of the United States Space Force frequently work with and meet with civilians and contractors who are under no requirement to be vaccinated.

90.    The Department of the Air Force and Space Force continue to limit official travel for unvaccinated personnel to "mission critical" travel only.

91.    The United States Space Force, however, utilizes non-deployable officers and makes reasonable accommodations based on a number of reasons, such as medical and secular reasons. *See, e.g.*, Secretary Charles Pope, *Space Force News*, "Raymond describes Space Force achievements,       plans,       challenges       ahead,"       September       21,       2021,

https://www.spaceforce.mil/News/Article/2783508/raymond-describes-space-force-achievements-plans-challenges-ahead/.

92.     Accommodations could be made and lesser restrictive alternatives could be used to address Plaintiff's sincerely held religious beliefs.

93.     Defendants have not proven that vaccination is the only means by which transmissibility could be controlled.

94.     Plaintiff has the antibodies to COVID-19 and therefore has natural immunity to the virus.  (Exhibit 4).

93.     COVID-19 vaccines use mRNA technology, which cause human cells to produce a spike protein they would not normally produce. *See* Centers for Disease Control, "Understanding mRNA COVID-19 Vaccines," https://tinyurl.com/5fdy89d3.

94.     U.S. Army Lt. Col. Theresa Long, M.D., M.P.H., F.S., submitted a sworn affidavit, under penalty of perjury, as a whistleblower under the Military Whistleblower Protection Act, 10 U.S.C. § 1034, in support of a Motion for Preliminary Injunction in *Robert, et al. v. Austin, et al.*, 1:21-cv-02228-RM-STV (D. Colo., Aug. 17, 2021).

95.     In her affidavit, Lt. Col. Long expressed her expert opinion that: "None of the ordered Emergency Use COVID-19 vaccines can or will provide better immunity than an infection-recovered person."

96.     Lt. Col. Long does not hold an outlier opinion. For example, in a sworn joint declaration, Drs. Jayanta Bhattacharya and Martin Kulldoff—professors of medicine at Stanford University and Harvard Medical School, respectively—concluded that "those who have recovered from a SARS-CoV-2 infection possess immunity as robust and durable as that acquired through vaccination." *Zywicki v. Washington,* 1:21-cv-00894-AJT-MSN (E.D. Va.,

Aug. 3, 2021).

97.    Dr. Hooman Noorchashm, M.D., Ph.D.—a well-published medical expert who has held numerous prestigious faculty appointments—reached a similar conclusion in his own sworn declaration. He concluded that "[a] series of epidemiological studies have demonstrated to a reasonable degree of medical certainty that natural immunity following infection and recovery from the SARS-CoV-2 virus provides robust and durable protection against reinfection, at levels equal to or better than the *most effective* vaccines currently available." *Id.*

98.    Although there is significant debate about the extent to which the vaccine can slow the spread of the COVID-19, it is now well-established—and the CDC admits—that vaccinated individuals can both be infected with COVID-19 and transmit it to others.

99.    Indeed, Defendant Austin himself contracted COVID-19 after being vaccinated and boosted. *Statement by Secretary of Defense Lloyd J. Austin III on COVID Status,* https://tinyurl.com/44namkm9.

100.    At best, there is evidence that the vaccine prevents those infected from becoming severely ill.  But even these potential benefits are inapplicable to people like Plaintiff who have already contracted COVID-19 and possess natural immunity.

101.    There is now a wealth of data indicating that COVID-19 does not pose a serious threat to healthy individuals under 65 with no preexisting conditions—such as Plaintiff. CDC, *Weekly    Updates    by    Select    Demographic    and    Geographic    Characteristics,* https://tinyurl.com/ychxpjh3.

102.    The Omicron strain has become dominant in the United States, representing roughly 99% of all infections.  *See* (Exhibit 7).  And although this strain appears to be more contagious,  it  is  significantly  milder  than  previous  strains,  thus  leading  to  fewer

hospitalizations and deaths compared to the previous winter.  (Exhibit 7).  The number of positive cases is also currently plummeting both in the United States Air Force and Space Force, and particularly where Plaintiff is based.

103.    Vaccine efficacy, however, for the Delta and the Omicron variants, have shown disappointing results.  Nick Andrews, Ph.D., et al., *The New England Journal of Medicine*, "Covid-19 Vaccine Effectiveness against the Omicron (B.1.1.529) Variant," available at https://www.nejm.org/doi/full/10.1056/NEJMoa2119451; Nany Lapid, Reuters, "Vaccines appear weak at blocking Omicron, better against severe disease," Dec. 13, 2021, available at https://www.reuters.com/business/healthcare-pharmaceuticals/vaccines-appear-weak-blocking-omicron-infection-shots-may-reduce-long-covid-2021-12-13/.

104.    There have also been significant advances in treatments for COVID-19.  In December 2021, the FDA granted emergency use authorization for Paxlovid, which treats mild to moderate COVID-19 in adults. FDA, *Coronavirus (COVID-19) Update: FDA Authorize First Oral Antiviral for Treatment of COVID-19* (Dec. 22, 2021), https://tinyurl.com/4hfxbty8.  Other treatments, including sotrovimab, Veklury (remdesivir), and molnupiravir, have previously been authorized by the FDA to treat COVID-19.

105.    Additionally, the White House recently recognized the importance of air filtration and ventilation in preventing the transmissibility of COVID-19.  Dr. Alondra Nelson, *The White House Briefing Room*, "Let's Clear The Air On COVID," March 23, 2022, available at https://www.whitehouse.gov/ostp/news-updates/2022/03/23/lets-clear-the-air-on-covid/   (stating that improved ventilation and air quality can reduce COVID-19 transmission by 50%).

106.    There are several less restrictive alternatives to Defendant's vaccine mandate that

would have the effect of preventing the transmission of COVID at a similar or a far better success rate.

107.    Defendants have not established, because they cannot establish, why it must require Plaintiff to undergo vaccination now instead of employing a lesser restrictive alternative.

## CLAIMS FOR RELIEF

### COUNT I
### Religious Freedom Restoration Act

108.    Plaintiff hereby repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint

109.    The Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb *et seq.* (RFRA), states that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1.

110.    The act broadly defines the "exercise of religion" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000bb-2(4) (citing 42 U.S.C. § 2000cc-5(7)(A)).

111.    The Supreme Court has held that the exercise of religion involves "not only belief and profession but the performance of (or abstention from) physical acts that are engaged in for religious reasons." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 710 (2014).

112.    The Supreme Court has articulated repeatedly that courts may not question whether sincerely held religious beliefs are reasonable to a non-religious observer. *Hobby Lobby*, 573 U.S. at 724.

113.    RFRA imposes strict scrutiny on all actions of the federal government that "substantially burden a person's exercise of religion." 42 U.S.C. § 2000bb-1(b).

114.    DODI 1300.17 and and DAF 52-201 explicitly recognize RFRA protection For Department of Defense and Department of the Air Force members.

115.    Unless the     government    satisfies        the    compelling interest    test by "demonstrat[ing] that [the] application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest," 42 U.S.C. § 2000bb-1(b), the governmental act violates RFRA.

116.    Plaintiff's sincerely held religious beliefs prevent her from receiving the mandated COVID-19 vaccine.

117.    Defendants' vaccine mandate substantially burdens Plaintiff's sincerely held religious beliefs by requiring her to take an action (receiving a COVID-19 vaccine) that would violate those religious beliefs or suffer adverse employment action, financial ruin, crippling fines to pay back education for which she is presently serving active duty commitments, career-ending punishment, degradation of her exemplary military record, punishment that carries to civilian life and affects lifetime employability, and even potential physical harm.

118.    The adverse actions to which Plaintiff is subject includes: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, removal from promotion lists, inability to attend certain military training and education schools, loss of special pay, placement in a non-deployable status, recoupment of money spent training the service member and for Plaintiff's graduate studies, and loss of leave and travel privileges for both official and unofficial purposes.

119.    Defendants' vaccine mandate fails strict scrutiny.

120.    Defendants do not have a compelling government interest in requiring Plaintiff to violate her sincerely held religious beliefs by taking the mandated COVID-19 vaccines.

121.    Defendants' vaccine mandate is not the least restrictive means of accomplishing the government's purported interest.

122.    DoD operated for over a year during the COVID-19 pandemic with a ready and healthy force that had not been fully vaccinated, and then for another four months while temporarily exempting Plaintiff.

123.    Plaintiff is naturally immune from COVID-19 and currently tested positive for COVID-19 antibodies.  (Exhibit 4).

124.    More than 98% of the active duty Air Force has been vaccinated.

125.    Defendants cannot show that achieving 100% vaccination compliance is the least restrictive means of maintaining force readiness.

126.    Moreover, Defendants possess multiple lesser restrictive methods of mitigating the spread of COVID-19, including screening and testing for COVID-19, considering the effect of natural immunity as was traditionally done with other immunizations,[15] masking, remote teleworking, physical distancing, and the myriad other mitigating measures that could be employed that do not violate Plaintiff's sincerely held religious beliefs.

127.    Indeed, as evidenced by Defendant Austin's January 2021 COVID infection, if Defendants are concerned about COVID-19 affecting its personnel, they would need to implement these other mitigation protocols even if service members receive the vaccine, because vaccinated personnel can also carry, transmit, and become sick with COVID-19.

---

[15]*See, e.g.*, DAFI-18-110 is available at https://static.e-publishing.af.mil/production/1/af_sg/publication/afi48-110/afi48-110.pdf.

128.    Accordingly, Defendants' vaccine mandate violates Plaintiff's rights under RFRA.

129.    Because of Defendants' policies and actions, Plaintiff has suffered, and continues to suffer, the loss of First Amendment freedoms, economic injury and irreparable harm.

130.    Plaintiff is thus entitled to an award of monetary damages and equitable relief.

131.    Plaintiff is entitled to a declaration that Defendants violated her rights under RFRA and an injunction against Defendants' policy and actions.

132.    Additionally, Plaintiff is entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including her reasonable attorneys' fees.

### COUNT II
### Free Exercise Clause of the First Amendment, U.S. Const. amend. I

133.    Plaintiffs hereby incorporate by reference all stated paragraphs set forth herein.

134.    Defendant's vaccine mandate, on its face and as applied, impermissibly burdens Plaintiff's sincerely held religious beliefs, compels Plaintiff to either change her sincerely held religious beliefs or act in contradiction to them, and forces Plaintiff to choose between following her sincerely held religious beliefs or suffering penalties, punishment, economic ruin, and loss of benefits.

135.    Defendants' vaccine mandate, on its face and as applied, puts substantial pressure on Plaintiff to violate her sincerely held religious beliefs or face penalties, economic ruin, and loss of benefits.

136.    Defendants' vaccine mandate, on its face and as applied, is neither neutral nor generally applicable.

137.    Defendants' vaccine mandate, on its face and as applied, specifically targets

Plaintiffs' religious beliefs for disparate and discriminatory treatment.

138.     Defendants' vaccine Mandate, on its face and as applied, creates a system of individualized exemptions for preferred exemption requests while discriminating against requests for exemption and accommodation based on sincerely held religious beliefs.

139.     Defendants' vaccine mandate treats secular reasons for exemptions, such as medical and administrative, more favorably than Plaintiff's request for a religious accommodation.

140.     Defendants' violation of the Free Exercise Clause as set forth in this Complaint has caused and will continue to cause Plaintiff to suffer undue hardship and irreparable injury as well as economic damage, irreversible damage to her military and even a subsequent civilian career, and damage to her reputation.

## COUNT III
## Equal Protection Clause of the Fifth Amendment, U.S. Const. amend. V

141.     Plaintiff hereby incorporates by reference all stated paragraphs set forth herein.

142.     By targeting Plaintiff for adverse treatment because she has asserted her fundamental right to religious freedom guaranteed by the U.S. Constitution, Defendants have deprived Plaintiff of the equal protection of the law guaranteed under the Fifth Amendment to the United States Constitution.

143.     The Supreme Court's approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment. Consequently, case law interpreting the Equal Protection Clause of the Fourteenth Amendment is applicable when reviewing an equal protection claim arising under the Fifth Amendment's Due Process Clause, as in this case.

144.     Through the enforcement of the vaccine mandate, Defendants are targeting Plaintiff, and other similarly situated military members who have sincere religious objections to the mandated COVID-19 vaccines, for adverse treatment because of their religious beliefs and convictions in violation of the equal protection guarantee of the Fifth Amendment.

145.     Defendants' discriminatory treatment of Plaintiff in violation of the equal protection guarantee of the Fifth Amendment has caused and will continue to cause Plaintiff to suffer undue hardship and irreparable injury as well as economic damage, irreversible damage to her military and even a subsequent civilian career, and damage to her reputation.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment as follows:

A.     That this Court declare that the enforcement of the Defendants' vaccine mandate as set forth in this Complaint violates the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb to 2000bb- 4;

B.     That this Court declare that the enforcement of Defendants' vaccine mandate as set forth in this Complaint violates the First Amendment to the United States Constitution;

C.     That this Court declare that the enforcement of Defendants' vaccine mandate as set forth in this Complaint violates the Fifth Amendment to the United States Constitution;

D.     That this Court preliminarily and permanently enjoin the enforcement of the vaccine mandate and any and all adverse consequences Defendants have imposed, or intend to impose, upon Plaintiff for failing to comply with this mandate as set forth in this Complaint;

E.     That this Court order that Plaintiff's status as an Officer in the United States Space Force be reinstated to the status she enjoyed prior to the implementation and enforcement of Defendants' vaccine mandate, including the restoration of any and all pay, active service

commissions, promotions, awards, decorations, insignias, and other benefits imperiled as a result of Defendants' enforcement of the vaccine mandate as set forth in this Complaint;

F.     That this Court order Defendants to expunge any and all adverse fitness reports or other adverse official records or entries in any official record of Plaintiff on account of Plaintiff's objection to the vaccine mandate as set forth in this Complaint;

G.     That Defendants Whiting and Miller in their individual capacity, pay compensatory damages to Plaintiff for the financial harm caused by their denials of Plaintiff's request for a religious accommodation;

H.     That this Court award Plaintiff her reasonable costs, including attorney's fees, pursuant to 5 U.S.C. § 504, 28 U.S.C. § 1920, 28 U.S.C. § 2412, 42 U.S.C. § 2000bb-1, 42 U.S.C. § 1988, and the general legal and equitable powers of this Court;

I.     That this Court award Plaintiff nominal damages to signify the loss of Plaintiff's constitutional and statutory rights;

J.     That this Court grant such other and further relief as it deems equitable and just under the circumstances.

Dated: April 8, 2022                    Respectfully submitted,

                                        THOMAS MORE LAW CENTER

                                        /s/ Richard Thompson
                                        Richard Thompson, MI0053
                                        Erin Elizabeth Mersino, MI0060
                                        24 Frank Lloyd Wright Drive
                                        Suite 393
                                        Ann Arbor, MI 48106
                                        Ph: (734) 826-2001
                                        Email: rthompson@thomasmore.org

**VERIFICATION – FILED UNDER SEAL**

I, ▇▇▇▇▇▇▇▇▇▇▇▇ pursuant to 28 U.S.C. § 1746 declare as follows:

1)     I am the Plaintiff in the present case and an adult citizen of the United States.

2)     I have personal knowledge of the statements set forth in the foregoing Verified Complaint.  If called to testify, I would competently testify as to the mattes stated herein.

3)     I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Verified Complaint are true and correct to the best of my information, knowledge, and belief.

Executed on April 8, 2022.



## Index of Exhibits

Exhibit 1       Maj. Gen. Shipton's September 13, 2021 Memorandum

Exhibit 2       Captain's Request for a Religious Exemption, September 30, 2021

Exhibit 3       Denial February 11, 2022

Exhibit 4       Appeal February 25, 2022

Exhibit 5       Denial of Appeal March 25, 2022

Exhibit 6       Order April 5, 2022

Exhibit 7       COVID Update April 6, 2022

Exhibit 8       Updated Guidance, March 1, 2022

**\*\*\*Exhibits will be filed under seal with an accompanying motion for leave to protect Plaintiff's identity and military records not released to the public.\*\*\***