**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

OFFICER IN THE UNITED STATES
SPACE FORCE,

        *Plaintiff,*

    v.

LLOYD J. AUSTIN III, *Secretary of the*
*United States Department of Defense, et al.,*

        *Defendants.*

Civil Action No. 22-981

Chief Judge Beryl A. Howell

**MEMORANDUM AND ORDER**

Plaintiff, an "officer in the United States Space Force," has moved to proceed under pseudonym in the instant action challenging defendants' "final denial of [her] request for a religious exemption from the United States Space Force's COVID-19 vaccine mandate," Pl.'s Mot. to Proceed Pseudonymously ("Pl.'s Mot.") at 2, ECF No. 3, under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, *et seq.*, and the First and Fifth Amendments, Compl. ¶ 10, ECF No. 1.  Plaintiff also seeks to file under seal (1) an unredacted version of the Complaint containing her full name; (2) Exhibits 1 through 8 to the Complaint; and (3) a declaration in support of her motion to proceed under pseudonym.  Pl.'s Mot. for Leave to File Under Seal ("Pl.'s Mot. Seal") at 1, ECF No. 4.   For the reasons set forth below, plaintiff's motion to proceed under pseudonym is denied and her motion to seal is granted in part and denied in part, subject to any further consideration by the United States District Judge to whom this case is randomly assigned.[1]

---

[1]      The instant motion has been directly referred to the undersigned Chief Judge for resolution.  *See* D.D.C. LCvR 40.7(f) (providing that the Chief Judge shall "hear and determine . . . in any case not already assigned: motion

I.    **BACKGROUND**

Plaintiff is "an officer in the United States Space Force" who currently "leads a team consisting of over 200 members in 24/7 operations at a $250+ million satellite ground station." Pl.'s Mot. at 2.  As "a devout Catholic," plaintiff alleges that she "cannot comply with Defendants' vaccine mandate without violating her sincerely held religious beliefs," Compl. ¶ 21, and since November 2021, she "has worked under a temporary exemption from the military's vaccine mandate," *id*. ¶ 2, and submitted "to lesser restrictive alternatives such as COVID-19 screening, testing, and other measures aimed to mitigate the transmission of the virus . . . without issue," *id*. ¶ 3.  On April 5, 2022, plaintiff was informed that she had five days to become vaccinated "or leave the military."  *Id*. ¶ 5.  She now faces three options: (1) to "get the COVID-19 immunizations knowing that doing so violates her sincerely held religious beliefs"; (2) "apply to leave the military immediately," causing substantial professional and financial harm to herself; or (3) "undergo punishment under the Uniform Code Military of Justice [sic] and the permanent ruin of her military career."  *Id*. ¶ 8.

In the instant suit, plaintiff seeks "preliminary and permanent injunctions to enjoin the enforcement of Defendants' COVID-19 vaccine mandate and any and all adverse consequences that Defendants have imposed, or will impose, upon Plaintiff for objecting to the mandate" and "a declaration that Defendants' vaccine mandate and refusal to grant a religious accommodation violates her rights" under the First and Fifth Amendments to the Constitution and RFRA.  *Id*. ¶ 12. [2]  Plaintiff moves to proceed pseudonymously for three reasons:  (1) given her "past and present classified military assignments, she fears that disclosing her identity for the purposes of

---

to seal the complaint and motion to file a pseudonymous complaint"); *see also* D.D.C. LCvR 5.1(h)(1) ("Absent statutory authority, no case or document may be sealed without an order from the Court.").

[2]     Defendant also seeks damages against two defendants "in their individual capacities as they unjustly and callously denied Plaintiff's religious exemption."  Compl. ¶ 12.

this litigation would compromise America's national security, the operational security of her unit, her own personal safety and the safety of other members of her unit"; (2) to protect "matters of utmost intimacy" including "her deeply held religious beliefs, un-vaccinated status and personal health"; and (3) because her immediate supervisors have already retaliated against her, and she fears that she "will be further stigmatized and ostracized and encounter even greater harm to her military career" should the lawsuit be made public.  Pl.'s Mot. at 2.

## II.    LEGAL STANDARD

Generally, a complaint must state the names of the parties and address of the plaintiff. FED. R. CIV. P. 10(a) ("The title of the complaint must name all the parties."); FED. R. CIV. P. 11(a) (requiring "[e]very pleading, written motion, and other paper," including submissions by an unrepresented party, to "be signed" with "the signer's address, e-mail address, and telephone number"); LCvR 5.1(c)(1) ("The first filing by or on behalf of a party shall have in the caption the name and full residence address of the party," and "[f]ailure to provide the address information within 30 days of filing may result in the dismissal of the case against the defendant."); LCvR 11.1 (same requirement as LCvR 5.1(c)(1)).  The Federal and Local Rules thus promote a "presumption in favor of disclosure [of litigants' identities], which stems from the 'general public interest in the openness of governmental processes,' . . . and, more specifically, from the tradition of open judicial proceedings."  *In re Sealed Case*, 931 F.3d 92, 96 (D.C. Cir. 2019) (internal citations omitted) (quoting *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897, 899 (D.C. Cir. 1996)).  That "presumption of openness in judicial proceedings is a bedrock principle of our judicial system."  *In re Sealed Case*, 971 F.3d 324, 325 (D.C. Cir. 2020) (citing *Courthouse News Serv. v. Planet*, 947 F.3d 581, 589 (9th Cir. 2020)). Accordingly, courts "generally require parties to a lawsuit to openly identify themselves to

protect the public's legitimate interest in knowing all of the facts involved, including the identities of the parties." *Id.* at 326 (internal quotation marks and alterations omitted) (quoting *United States v. Microsoft Corp.*, 56 F.3d 1448, 1463 (D.C. Cir. 1995) (per curiam)).

Despite the presumption in favor of disclosure, the Federal Rules of Civil Procedure provide a narrow set of circumstances in which a party or nonparty's name and other filings may be redacted to protect privacy by limiting public access. *See, e.g.,* FED. R. CIV. P. 5.2 (a)(1)–(4) (requiring, "[u]nless the court orders otherwise," use of only initials for minors, and only partial birthdates and social-security, taxpayer-identification, and financial account numbers); FED. R. CIV. P. 5.2(e)(1) (authorizing court order, for good cause, to "require redaction of additional information").

Courts also, in special circumstances, may permit a party to proceed anonymously.  A party seeking to do so, however, "bears the weighty burden of both demonstrating a concrete need for such secrecy, and identifying the consequences that would likely befall it if forced to proceed in its own name." *In re Sealed Case*, 971 F.3d at 326.  Once that showing has been made, "the court must then 'balance the litigant's legitimate interest in anonymity against countervailing interests in full disclosure.'" *Id.* (quoting *In re Sealed Case*, 931 F.3d at 96). When weighing those concerns, five factors, initially drawn from *James v. Jacobson,* 6 F.3d 233, 238 (4th Cir. 1993), serve as "guideposts from which a court ought to begin its analysis." *In re Sealed Case*, 931 F.3d at 97.  These five factors are:

> (1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of [a] sensitive and highly personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or[,] even more critically, to innocent non-parties; (3) the ages of the persons whose privacy interests are sought to be protected; (4) whether the action is against a governmental or private party; and relatedly, (5) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

4

*Id.* (citing *James*, 6 F.3d at 238).

At the same time, a court must not simply "engage in a wooden exercise of ticking the five boxes." *Id.* Rather, the "balancing test is necessarily flexible and fact driven" and the five factors are "non-exhaustive." *In re Sealed Case*, 971 F.3d at 326. In exercising discretion "to grant the rare dispensation of anonymity . . . the court has 'a judicial duty to inquire into the circumstances of particular cases to determine whether the dispensation is warranted' . . . tak[ing] into account the risk of unfairness to the opposing party, as well as the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Microsoft Corp.*, 56 F.3d at 1464 (quoting *James*, 6 F.3d at 238 (other internal citations and quotation marks omitted)).

In addressing motions to file under seal records filed in a case, "[t]he starting point . . . is a strong presumption in favor of public access to judicial proceedings." *Hardaway v. D.C. Hous. Auth.*, 843 F.3d 973, 980 (D.C. Cir. 2016) (quoting *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996)). Courts consider six factors, originally identified in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), in determining whether the strong presumption in favor of public access is overcome to remove the filing from public access. [3] When, however, a plaintiff initiating a lawsuit moves to file a case under seal simultaneously with the filing of the complaint, the motion is more akin to a request to proceed under a pseudonym, triggering the *James* test. In both contexts, plaintiffs are seeking to conceal their identities from the public and thus the same interests are at stake.

---

[3]     Those factors are:
         (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.
*Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017) (quoting *Nat'l Children's Ctr.*, 98 F.3d at 1409 (citing *Hubbard*, 650 F.2d at 317–22)).

### III.     DISCUSSION

At this early stage of the litigation, plaintiff has not persuasively met the burden of showing that her privacy interests outweigh the public's presumptive interest in knowing important details of this litigation, including the identity of the person initiating the suit.  Plaintiff has articulated no privacy interest sufficient to rebut the presumption in favor of open proceedings.

The first *James* factor—"whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of [a] sensitive and highly personal nature," *In re Sealed Case*, 931 F.3d at 97—weighs heavily against plaintiff.  Plaintiff argues that pseudonymity is justified because her "request for a religious exemption from the vaccine mandate necessarily involves revealing her deeply held religious beliefs, un-vaccinated status and personal health, all matters of utmost intimacy."  Pl.'s Mot. at 2.  She further explains that her "request for a religious accommodation required her to make written revelations" regarding "her religious beliefs (a matter she would not normally publicly discuss)."  *Id.* at 7.  While plaintiff's claims necessitate that she explain the source of her opposition to defendants' vaccine mandate—thereby acknowledging publicly her Catholic faith—there is no reason to believe that the litigation would require her to elaborate on those "deeply held religious beliefs," and indeed, plaintiffs regularly brings suits in their own names to protect their religious beliefs under RFRA.  *See, e.g., Wilson v. James*, 139 F. Supp. 3d 410 (D.D.C. 2015) (RFRA challenge by member of Utah Air National Guard to disciplinary action taken against him); *Boardley v. U.S. Dep't of Interior*, 615 F.3d 508 (D.C. Cir. 2010) (RFRA challenge to constitutionality of National Park Service regulations as applied to plaintiff).  Without more, what plaintiff deems "personal intimate information" about her religious beliefs is

insufficient grounds "to grant the rare dispensation of anonymity." *Microsoft Corp.*, 56 F.3d at 1464.  Plaintiff cites no cases from the D.C. Circuit in support of her position, and *Doe v. Stegall*, the Fifth Circuit decision she cites, is distinguishable, as the plaintiffs there were schoolchildren, a factor the court found "especially persuasive," 853 F.2d at 186, and the record contained "documentary exhibits" bolstering plaintiffs' "assertions that they might be subjected to retaliatory harassment or violence if their identities were publicly revealed," *id.* at 182, n. 6. Even if some information regarding the details of plaintiff's "personal health" were sensitive and highly personal, this would at most warrant limited sealing of that information.   The first *James* factor weighs against permitting plaintiff to proceed pseudonymously.

The second *James* factor, "whether identification poses a risk of retaliatory physical or mental harm," *In re Sealed Case*, 931 F.3d at 97, further weighs against plaintiff because the asserted risk of retaliatory harm is both speculative and minimal.  First, plaintiff asserts, without further elaboration, that "disclosing her identity for purposes of this litigation would compromise America's national security, the operational security of her unit, her own personal safety and the safety of other members of her unit."  Pl.'s Mot. at 2.  She relies on a declaration filed under seal as the basis for "demonstrat[ing] that disclosing her name has the potential of causing great harm to the national security interests of the United States and the operational security of her command."  *Id.* at 6.  While the sealed declaration elaborates on plaintiff's career accomplishments, such information is of tangential relevance to the instant suit, and does not support a conclusion that proceeding under her own name would in any way jeopardize plaintiff's own safety or American national security more generally.  Second, while plaintiff claims that retaliation against her "because of her unvaccinated status is . . . already occurring," the only example she cites is a denial of the opportunity to attend "Squadron Officer School, a

required professional military education course for Air Force and Space Force Captains," and this denial apparently was the result of a policy of the "National Reconnaissance Office . . . restrict[ing] all travel, including mission essential travel, for unvaccinated individuals." *Id.* at 3. Thus, the loss of this opportunity appears to be the product of a broadly-applied policy, rather than an individualized, punitive decision targeting plaintiff in retaliation for her religious objections to the vaccine.  As alleged, an Air Force or Space Force captain who was unvaccinated for a non-religious reason, such as a medical condition, would be similarly "ineligible for temporary duty or other training opportunities she would ordinarily attend." *Id*. Third, plaintiff's generalized concerns about being stigmatized, ostracized, and facing "even greater harm to her military career should her lawsuit . . . be made public," *id.* at 2, are entirely speculative, and the risk of harassment and criticism represents the quintessential "annoyance and criticism that may attend any litigation," *In re Sealed Case*, 931 F.3d at 97, and are far less severe than the degree of serious mental harm or physical danger necessary to override the strong public interest in transparent legal proceedings.  *See Qualls v. Rumsfeld*, 228 F.R.D. 8, 12 (D.D.C. 2005) ("bringing litigation can subject a plaintiff to scrutiny and criticism and can affect the way plaintiff is viewed by coworkers and friends, but fears of embarrassment or vague, unsubstantiated fears of retaliatory actions by higher-ups do not permit a plaintiff to proceed under a pseudonym"); *Stegall*, 653 F.2d at 186 ("The threat of hostile public reaction to a lawsuit, standing alone, will only with great rarity warrant public anonymity.").  The second *James* factor thus weighs against granting plaintiff's motion.

Likewise, the third and fourth *James* factors weigh against granting plaintiff's motion. Plaintiff does not allege that the privacy interests of any minors are implicated, *see In re Sealed Case*, 931 F.3d at 97, and the law is well-settled that "there is a heightened public interest when

an individual or entity files a suit against the government," *In re Sealed Case*, 971 F.3d at 329, as plaintiff has done here.

The fifth *James* factor weighs slightly in plaintiff's favor, because allowing plaintiff to proceed under pseudonym will not prejudice defendants, who "already know the identity of the plaintiff in connection with her application for a religious exemption." Pl.'s Mot. at 7.  Allowing plaintiff to proceed under pseudonym would likely not compromise defendants' ability to defend this action or pose any "risk of unfairness to the opposing party." *Nat'l Ass'n of Waterfront Emp'rs v. Chao*, 587 F. Supp. 2d 90, 99 (D.D.C. 2008).

Taking these factors together, plaintiff has presented no compelling justification for "the rare dispensation of pseudonymous status," *In re Sealed Case*, 971 F.3d at 328, and thus has failed to demonstrate a need for secrecy or identify consequences likely to befall plaintiff if she proceeds in her own name. Thus, to the extent that plaintiff seeks to seal the portion of the Complaint containing her real name, that request is denied.

Plaintiff also seeks to file under seal documents "contain[ing] personal identifying information" and "military documents in Defendants' possession that have not otherwise been made publicly available," including the eight exhibits to the Complaint and a declaration in support of her motion to proceed under pseudonym.  Pl.'s Mot. Seal at 2.  This request is granted.

The eight exhibits to the Complaint include plaintiff's request to defendants for a religious exemption and the various appeals and denials thereof.  As plaintiff rightly notes, "[d]ue to the nature of the lawsuit . . . Plaintiff is in the position of relying on information that the military has not made public themselves," which may implicate national security.  Pl.'s Mot. Seal at 4 (citing *Nio v. United States Dep't of Homeland Sec.*, 270 F. Supp. 3d 49, 64 (D.D.C.

9

2017)).  At the initial stage of the proceeding, before defendants have had a chance to opine, the Court agrees that sealing these internal documents is appropriate, given the lack of "previous public access to the documents," the "strength of [the] property and privacy interests asserted," and the strong "possibility of prejudice to those opposing disclosure." *MetLife, Inc.*, 865 F.3d at 665.  The fact that the documents contain plaintiff's sensitive medical information, Pl.'s Mot. Seal at 7, in which she has a strong privacy interest, only affirms the appropriateness of sealing these exhibits for the time being.

Finally, because it is this Court's policy to maintain a motion to proceed under pseudonym under seal, plaintiff's declaration in support of that motion may also remain under seal, subject to any further consideration by the United States District Judge to whom this case is randomly assigned.

## IV.     CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the plaintiff's Motion to Proceed Pseudonymously, ECF No. 3, is **DENIED**; it is further

**ORDERED** that the plaintiff's Motion to Seal, ECF No. 4, is **GRANTED IN PART** and **DENIED IN PART**; it is further

**ORDERED** that the plaintiff's Motion to Seal is **GRANTED** with respect to Exhibits 1 through 8 to the Complaint and to her declaration in support of her motion to proceed under pseudonym, but otherwise DENIED; and it is further

**ORDERED** that the Clerk of Court shall strike the plaintiff's Complaint on the docket and not refile the Complaint unless it is filed with the plaintiff's full name in accordance with this Memorandum and Order.

**SO ORDERED.**

Date: April 14, 2022

_____
BERYL A. HOWELL
Chief Judge