**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MARIELLA CREAGHAN,<br><br>　　　　　Plaintiff<br><br>　　v.<br><br>LLOYD AUSTIN, in his official capacity as<br>Secretary of the United States Department of<br>Defense, *et al.*,<br><br>　　　　　Defendants. | Civil Action No. 21-0981 (CKK) |

**MEMORANDUM OPINION**
(May 12, 2022)

Plaintiff Mariella Creaghan ("Plaintiff" or "Captain Creaghan") is a Captain in the United States Space Force and religious objector of one of several vaccines mandated by her branch of service. Captain Creaghan's [11] Motion seeks preliminary relief from this Court barring Defendants from "punishing, prosecuting, or taking any adverse or retaliatory action against Plaintiff as a result of, or arising from, or in conjunction with Plaintiff's request for a religious accommodation or Defendants' denial of Plaintiff's religious accommodation." As the Court explained in a similar case, requests for religious exemptions from military-mandated medical requirements "raise particularly difficult questions that implicate a storm of colliding constitutional interests." *Navy SEAL v. Austin*, 2022 WL 1294486, at *1 (D.D.C. Apr. 29, 2022). Although this case is much closer than *Navy SEAL*, the Court remains concerned that it lacks the competence to "evaluate the merits of military [epidemiological and tactical] expertise" or to "weigh technical issues of public health and immunology" necessary to resolve the case. *Id.* at *5. Justiciability is all the more uncertain given the unfixed, evolving science on which *this* vaccination mandate is based. These concerns permeate the merits of Plaintiff's claims as well.

1

Accordingly, after careful review of the pleadings,[1] the relevant legal and historical authorities, and the entire record, Court shall **DENY** Plaintiff's [11] Motion for Preliminary Injunction.

## I.   BACKGROUND

### A.  General Background

As this Court has previously noted, military vaccine mandates have a long history in this country.  "[E]xecutive immunization requirements predate the birth of this country, with George Washington famously requiring members of the Continental Army to be inoculated against smallpox."  *Feds for Med. Freedom v. Biden*, 25 F.4th 354, 357 n.6 (5th Cir. 2022) (Higginson, J., dissenting).  Until August 2021, the United States Department of the Air Force ("Air Force") mandated a number of vaccines, including those against influenza, hepatitis A & B, mumps, rubella, and tetanus.  *See* ECF 22-11 at 9.  On August 24, 2021, the Secretary of Defense directed the Air Force to add another vaccine to the list—vaccination combatting COVID-19.  *Id.* at 8.  The Secretary of Defense explained that, "[t]o defend this Nation, we need a healthy and ready force."  *Navy SEAL*, 2022 WL 1294486, at *2.  Accordingly, "[a]fter careful consultation with medical experts and military leadership, and with the support of the President [of the United States], [the Secretary of Defense] determined that mandatory vaccination against coronavirus

---

[1]  This Memorandum Opinion focuses on the following documents:
- Plaintiff's Complaint, ECF No. 3;
- Plaintiff's Memorandum in Support of Plaintiff Navy SEAL 4's Motion for Preliminary Injunction, ECF No. 14-1 ("Motion" or "Mot.");
- Defendants' Response in Opposition to Plaintiff Navy SEAL 4's Motion for Preliminary Injunction, ECF No. 22 ("Opp.");
- Plaintiff's Reply in Support of Plaintiff Navy SEAL 4's Motion for Preliminary Injunction, ECF No. 25 ("Repl.").

In an exercise of its discretion, the Court finds that holding oral argument would not be of material assistance in rendering a decision.

disease 2019 (COVID-19) is necessary to protect the Force and defend the American people."
*Id.*

      Consistent with that order, the Secretary of the Air Force, on September 3, 2021, directed all active duty servicemembers (within the Air Force and Space Force) to be fully vaccinated against COVID-19 by November 2, 2021.[2]  All Air Force orders are applicable to the United States Space Force ("Space Force") as a constituent branch of the Air Force and all Space Force servicemembers (called "Guardians").  ECF 22-4 at 1.  On December 7, 2021, the Secretary of the Air Force issued an order providing for "medical, religious[,] or administrative exemptions," and temporarily exempted servicemembers from discharge or adverse action while exemption requests were pending.[3]  The recognition of these exemptions was largely perfunctory, as requests for COVID-19 vaccination exemptions are governed by the same rules and regulations, active since 2018, that govern all other requests for exemptions from other vaccinations.  ECF 22-4 at 2.  As of April 26, 2022, the Air Force has granted 460 medical exemptions (including seven for Space Force Guardians), and 41 religious exemptions.[4]

      Pursuant to that policy, AFI 48-110_IP (Oct. 7, 2013) *as amended* (Feb. 16, 2018), a Guardian seeking a religious exemption first submits a written request to the applicable commanding officer.  ECF 22-5 at 2.  The Guardian then consults with the applicable commanding officer and a medical military provider, who address, respectively, the effect of

---

[2] DAF, "Mandatory Coronavirus Disease 2019 Vaccination of Department of the Air Force Military Members" (Sept. 3, 2021), https://www.hqrio.afrc.af.mil/Portals/149/Documents/ COVID/20210903%20DAF_%20SecAF%20Memo%20-%20Mandatory%20Coronavirus%20 Disease%202019%20Vaccination%20of%20Department%20of%20the%20Air%20Force%20 Military%20Members.pdf?ver=YogX1KMirgEUGIvzJtgUSw%3D%3D.
[3] DAF, "Supplemental Coronavirus Disease 2019 Vaccination Policy" (Dec. 7, 2021), https://www.af.mil/Portals/1/documents/2021SAF/12_Dec/Supplemental_Coronavirus_Disease_ 2019_Vaccination_Policy.pdf.
[4] DAF, "COVID-19 Statistics - Apr. 26, 2022" https://www.af.mil/News/Article- Display/Article/2989918/daf-covid-19-statistics-apr-26-2022/.

nonvaccination on the Guardian's mission and the Guardian's health.  *Id.* at 4.  The Guardian

must also consult with an Air Force chaplain, and the chaplain assesses the sincerity and

religiosity of the exemption request.  *Id.*  With these three assessments in hand, the omnibus

request is reviewed by each commanding officer in the Guardian's chain of command.  *Id.* at 5.

Each commanding officer makes a recommendation (termed an "endorsement") as to whether to

grant the exemption request, but the ultimate decision is made by the "approval/disapproval

authority."[5]  For Space Force Guardians, the approval authority is the Commander of Space

Operations Command, Lt. Gen. Stephen N. Whiting.  *See id.* at 18.  Disapproval may be

appealed to the Air Force Surgeon General.  ECF No. 22-5 at 2.  To assist Lt. Gen. Whiting in

his review, as the approval authority, the Space Force employs "Religious Resolution Teams"

("RRT").  DAFI 52-201 at 6.  These teams are made up of at least one commander, chaplain,

public affairs officer, and staff judge advocate.  *Id.*  Where a medical objection is raised, the

team must also include a medical provider.  *Id.*  At each stage of review, those involved

determine: (1) the sincerity of the religious request; (2) the military interests at issue; (3) whether

those interests are compelling; (4) whether vaccination substantially burdens the Guardian's

religious belief(s); and (4) whether vaccination is the least restrictive means to accomplish the

military's interests in vaccinating that particular Guardian.  *Id.* at 7-8.

   A Guardian whose appeal has been denied and who still objects to vaccination is subject

to discipline, up to and including administrative, general (under honorable conditions) discharge

and military courts-martial.  ECF No. 6 at 4-5.  Before adverse action may be taken on continued

objection to COVID-19 vaccination, noncompliance must first be reviewed by a high-ranking

officer (a Colonel or higher).  *Id.* at 2.

---

[5] DAFI 52-201 at 8 (June 23, 2021), https://static.e-publishing.af.mil/production/1/af_hc/
publication/dafi52-201/dafi52-201.pdf.

### B. Background Specific to Plaintiff

Plaintiff is a Space Force Captain assigned to the Space Force's National Reconnaissance Office ("NRO") in Chantilly, Virginia. ECF No. 22-10 at 1. Her precise role is somewhat difficult to discern from the record thus far, perhaps because much of it involves particularly sensitive, classified operations. From what the Court understands, the NRO provides offensive and intelligence support to the Air Force, other branches of the military, and the intelligence community. ECF No. 22-10 at 2. It manages a number of satellite systems and spacecraft that are evidently capable of engaging in electronic warfare and that also gather signals and geospatial intelligence. Captain Creaghan is a "Mission Director." *Id.* She "has operational control and on-line decision-making responsibilities for all aspects of NRO operations during [her] shift." *Id.* That includes the direction of those assets, ensuring the operational health of the assets, overseeing the security of the site in which those assets are managed, and overseeing "daily reports for [the] NRO and government senior leaders." *See id.* at 2-3. She works in a compartmentalized area known as a "SCIF" (Secure Compartmentalized Information Facility) that is fully indoors and limits airflow. *Id.* at 3. Because all her work is classified, she cannot telework. *See id.* The nature of her work evidently involves frequent interpersonal contact within her workspace. *See id.* at 4.

On September 30, 2021, Plaintiff requested a religious accommodation. She articulated a religious belief predicated on the religious view that life begins at conception, and insisted that receiving any COVID-19 vaccine would contravene her sincerely held belief because each vaccine's development involved fetal cells in some way. ECF 22-13 at 22-24. She included in her request a litany of supporting documents from religious figures in her life testifying to the sincerity of her belief and its connection to her Catholic faith. *See, e.g.*, ECF No. 22-13 at 31.

On October 18, 2021, an Air Force chaplain concluded that she held a sincerely held religious belief and that vaccination against COVID-19 would substantially burden that belief.  *Id.* at 62. On December 14, 2021, the Religious Resolution Team assigned to Captain Creaghan's request agreed with the chaplain, and also concluded that the Space Force had a compelling government interest in requiring her health as a Space Force Mission Director and that vaccination was the least restrictive means of accomplishing that interest.  *Id.* at 63-66.  That report concluded that "[s]ervice members have a responsibility to maintain their health and fitness, meet individual medical readiness requirements, and report medical and health issues that may affect their readiness to deploy or [medical] fitness to continue serving in an active status."  *Id.* at 66.

Notwithstanding this finding, Captain Creaghan's direct commanding officer, Lt. Col. Benjamin Andrea ("Col. Andrea") recommended approval of Captain Creaghan's request.  *Id.* at 88.  Most relevant for present purposes, he found that "[t]he projected impact to [Plaintiff's] unit is low" if she remains "unvaccinated."  *Id.* at 89.  He suggested that Plaintiff's unit "has backup personnel available to provide positional coverage in the event of any operations personnel requiring quarantine."  *Id.*  Col. Andrea also expressed a personal belief that the risk to Plaintiff's health was acceptable because Plaintiff "supplied sufficient medical evidence indicating presence of the SARS-CoV-2 antibody."  *Id.* at 90.  The record does not suggest that Plaintiff's direct commanding officer had any medical expertise to make such a judgment.

On the same form, Plaintiff's second-level commanding officer circled "concur" and "approval" to ratify, without explanation, Col. Andrea's recommendation.  *Id.* at 90.  On January 30, 2022, Plaintiff's third-level commanding officer, Major General Donna D. Shipton, disagreed, finding that "there are no less restrictive means available to meet the government's compelling interest without placing in jeopardy the health, safety, and availability of Capt[ain]

Creaghan." *Id.* at 92.  Captain Creaghan, Major General Shipton continued, "makes important contributions to the mission at [her] NRO [facility] . . . where she is responsible for directing daily operations and maintenance of NRO space and ground systems." *Id.*  Major General Shipton therefor concluded that placing Captain Creaghan at a "higher risk of prolonged illness, hospitalization, and death" by granting a mandate would unacceptably jeopardize Captain Creaghan's military duties and the NRO's military mission.  *See id.*

Weighing these differing recommendations, Lieutenant General Whiting sided with Major General Shipton and the interdisciplinary RRT.  *Id.* at 93.  He found that "as a Mission Director responsible for directing daily operations and maintenance for NRO space and ground systems, and ensuring overall spacecraft health and mission success," vaccination was the least restrictive means to accomplish military goals.  *Id.*  Lieutenant General Whiting's finding was limited to "the spread of the COVID-19 virus," however, and made no mention of the necessity of vaccination to protect Plaintiff's health.  *See id.*  On appeal, Lieutenant General Robert Miller, the Surgeon General of the Air Force, affirmed Lieutenant General Whiting's decision on March 25, 2022, concluding that lack of Plaintiff's immunization "in [Plaintiff's] dynamic [military] environment, and aggregated with other non-immunized individuals in steady state operations, would place health and safety, unit cohesion, and readiness at risk." *Id.* at 103.  Like Lieutenant General Whiting, Lieutenant General Miller's findings appear to rest almost entirely on transmission, although an attached appendix does mention that vaccinated "personnel are much less likely to develop severe disease, be hospitalized, or die as a result of being vaccinated." *Id.* at 105.

Denial in hand, Plaintiff filed for suit for injunctive relief in this court.  Although the Space Force may take any number of disciplinary or administrative actions against Plaintiff for

continued religious objection to Space Force medical requirements, no such action, including the institution of separation proceedings, has been taken against Plaintiff as of April 29, 2022.  ECF No. 22-10 at 13.

## II.   LEGAL STANDARD

Preliminary injunctive relief is an "extraordinary remedy that may only be awarded upon a *clear showing* that the plaintiff is entitled to such relief."  *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (emphasis added) (quoting *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)); *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).[6]  A plaintiff seeking preliminary injunctive relief "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of the equities tips in his favor, and [4] that an injunction is in the public interest."  *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014).  When seeking such relief, "the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction."  *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014).  "The four factors have typically been evaluated on a 'sliding scale,'" whereby if "the movant makes an unusually strong showing on one of the factors, then [he] does not necessarily have to make as strong a showing on another factor."  *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009).

---

[6] Plaintiff argues in her supplemental briefing that the Court in *Navy SEAL* "seem[ed] to require a heightened standard for granting a preliminary injunction."  Pl.'s Supp. Br. at 4.  Plaintiff appears to rest that argument on the Court's conclusion that the plaintiff in *Navy SEAL* "has not carried his burden to show that he is 'clearly warranted' preliminary relief."  2022 WL 1294486, at *4.  To be clear, the Court used the term "clearly warranted" to restate the D.C. Circuit's instruction that a preliminary injunction must only be granted "upon a clear showing that the plaintiff is entitled to such relief."  *Sherley*, 644 F.3d at 392.

It is unclear whether the United States Court of Appeals for the District of Columbia Circuit's ("D.C. Circuit") sliding-scale approach to assessing the four preliminary injunction factors has survived the Supreme Court's decision in *Winter*. *See Save Jobs USA v. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 112 (D.D.C. 2015). Several judges on the D.C. Circuit have "read *Winter* to suggest if not to hold that 'a likelihood of success is an independent, free-standing requirement for a preliminary injunction.'" *Sherley,* 644 F.3d at 393 (quoting *Davis*, 571 F.3d at 1296 (Kavanaugh, J., concurring)). However, the D.C. Circuit has yet to hold definitively that *Winter* has displaced the sliding-scale analysis. *See id.* In light of this ambiguity, the Court shall consider each of these factors and shall only evaluate the proper weight to accord to the likelihood of success if the Court finds that its relative weight would affect the outcome. *Accord Church v. Biden*, --- F. Supp. 3d ---, 2021 WL 5179215, at *7 (D.D.C. 2021).

### III.    DISCUSSION

For the most part, this case raises the same questions as those in *Navy SEAL*. That said, the parties' supplemental briefing in response to the Court's opinion in *Navy SEAL* have narrowed the issues somewhat. The parties do not appear to seriously contest the Court's discussion of the merits of Free Exercise and Equal Protection claims as to religious objections to military vaccination orders. Rather, they contest: (1) the Court's justiciability discussion; and (2) the application of RFRA in military context, i.e., what degree of deference the military is due on the merits of a RFRA claim and whether a vaccination order is narrowly tailored as to Plaintiff. Additionally, this case raises two new questions that were not present in *Navy SEAL*: (1) whether a servicemember has Article III standing to contest the denial of a religious accommodation where separation proceedings (or any other adverse action) have not yet begun;

and (2) whether administrative, general (under honorable conditions) discharge is irreparable

harm as a matter of law.  As such, the Court will proceed to these four questions and refer to its

opinion in *Navy SEAL* for the remaining issues presented in the parties' briefing.

### A.  Standing

First, the Government argues that Plaintiff lacks standing to challenge the denial of her

requested religious accommodation because separation proceedings have not yet begun.  Not so.

To receive a preliminary injunction, the moving "party must show, among other things, a

'substantial likelihood of success on the merits.'"  *Food & Water Watch, Inc. v. Vilsack*, 808

F.3d 905, 913 (D.C. Cir 2015).  "The merits on which plaintiff must show likelihood of success

encompass not only substantive theories but also establishment of jurisdiction," including Article

III standing.  *See Elec. Priv. Info. Ctr. v. Dep't of Com.*, 928 F.3d 95, 104 (D.C. Cir. 2019).  To

show standing, a plaintiff must show an "injury-in-fact that is 'imminent' or 'certainly

impending.'"  *Am. Petrol. Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2013).

Defendants seem to construe the alleged injury as separation proceedings or other adverse

action predicated upon the denial of Plaintiff's accommodation request.   Plaintiff, however,

relies on, the deprivation of a statutory or constitutional right as  an "injury-in-fact" triggering

Article III jurisdiction.  *See Warth v. Seldin*, 422 U.S. 490, 500 (1975).  Insofar as Plaintiff has

exhausted her administrative remedies *to receive a religious exemption from COVID-19

vaccination*, the Court agrees that Plaintiff has  demonstrated a likelihood  success in

demonstrating that she ahs standing to challenge that denial.

### B.  Justiciability

In *Navy SEAL*, the Court explained that "'[c]laims are nonjusticiable where: (1) their

resolution requires decisions which are not matters of judicial expertise but are matters of

management, public policy or technical expertise; (2) the relief requested usurps the functions of a coordinate branch of government; or (3) the relief requested is not justicially manageable." *Nat'l Coal Ass'n v. Marshall*, 510 F. Supp. 803, 805 (D.D.C. 1981) (citing *Baker*, 369 U.S. at 217). Here, as in *Navy SEAL*, there remain serious questions as to whether a judicial challenge to a military medical requirement (1) "usurps the functions" of powers committed to the Executive through the Commander-in-Chief Clause and (2) involves scientific determinations that "are not matters of judicial expertise but are matters of . . . technical expertise." 2022 WL 1294486, at *5.

As to military judgments, the Court stressed that some are undoubtedly justiciable. Justiciable military cases involving the rights of military personnel generally do not require evaluation of strategic or technical decisions. Rather, they look to whether a service member has received constitutionally sufficient process, or to evaluate constitutional claims that do not involve a particularly technical record. *See, e.g.*, *Piersall v. Winter*, 435 F.3d 319, 324 (D.C. Cir. 2006) (justiciable where review was limited to whether decision by civilian administrative board was arbitrary or capricious); *Doe 2 v. Shanahan*, 755 F. App'x 19, 23 (D.C. Cir. 2019) (suggesting that a "blanket ban" prohibiting indefinitely the accession of transgender individuals into the military would be justiciable).

At the same time, most cases involving fitness for duty are generally not justiciable, sometimes because they involve complex medical judgments, and sometimes because they involve highly subjective judgments regarding the servicemember's military capabilities. *See Emory v. Sec'y of Navy*, 819 F.2d 291, 294 (D.C. Cir. 1987); *see also, e.g.*, *Kries v. Sec'y of Air Force*, 866 F.2d 1508, 1512 (D.C. Cir. 1989) ("This court is not competent to compare appellant with other officers competing for [] a promotion."); *Charette v. Walker*, 996 F. Supp. 46, 50

(D.D.C. 1998) (holding a former military officer's "request for reinstatement . . . not justiciable"); *Harkness v. Sec'y of Navy*, 858 F.3d 437, 444-45 (6th Cir. 2017) ("Duty assignments lie at the heart of military expertise and discretion, and we are wary of intruding upon that sphere of military decision-making." (internal quotation marks omitted)).  Cases involving actual *strategic* decisions are perhaps the epitome of "complex, subtle, and professional decisions" otherwise left to the Commander-in-Chief and their subordinates.  *See Short v. Berger*, 2022 WL 1051852, at *5 (C.D. Cal. Mar. 3, 2022); Trans. at 42, ECF No. 22, *Dunn v. Austin*, No. 2:22-cv-00288-JAM-KJN (E.D. Cal. Feb. 28, 2022), *application for injunction pending appeal denied*, No. 21A599, Doc. 7 (U.S. Apr. 15, 2022); *see also Orloff v. Willoughby*, 345 U.S. 83, 91-92 (1953).

    In response, Plaintiff points the Court to *Doe v. Rumsfeld*, 297 F. Supp. 2d 119 (D.D.C. 2003).  In that case, which is not binding upon this Court, two military servicemembers challenged an anthrax vaccination mandate under the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq. Id.* at 123.  The question in that case was whether the Food and Drug Administration had classified the particular vaccine "as an investigational new drug or as a drug unapproved for its intended use." *Id.* at 131.  An applicable federal law provided that the military may not "administer[] investigational new drugs, or drugs unapproved for their intended use, to serve members without their informed consent." *Id.* at 125.  The merits question, therefore, was not the wisdom of mandating a particular vaccine generally or to particular servicemembers, but rather whether a particular vaccine fell within a certain legal category that could be determined through traditional tools of statutory interpretation.  That question fell within the familiar ambits of the APA—whether a federal agency had acted arbitrarily or capriciously. *Id.* at 128.

On justiciability, *Doe* in fact employed a similar analysis as this Court in *Navy SEAL*. The *Doe* court asked whether judicial intervention involved "the exercise of military expertise or discretion," and evidently concluded otherwise. *See id.* at 127. Rather, an APA claim is justiciable insofar as it merely asks whether the military acted arbitrarily and capriciously in its procedural review. *See id.* at 128. The Court would be inclined to agree that those sorts of claims are justiciable because (1) the test is concerned predominantly with legal process and (2) it does not involve second-guessing the wisdom of military judgments dealing with readiness and lethality. As such, the Court is not inclined to depart from its tentative conclusion in *Navy SEAL* that RFRA challenges to military medical requirements more likely raise justiciability concerns.

As for justiciability regarding scientific determinations that "are not matters of judicial expertise but are matters of . . . technical expertise," Plaintiff offers little argument to the contrary. To support such a proposition, Plaintiff cites, in a footnote, *Tandon v. Newsom*, 141 S. Ct. 1294 (2021) and *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020). In the former, and as this Court explained in *Navy SEAL*, the Supreme Court did not come close to determining the immunological wisdom of certain public health restrictions. Rather, it held that a state may not treat religious and non-religious institutions differently when imposing a public health restriction. 141 S. Ct. at 1297-98. Indeed, of the federal courts that have enjoined federal health measures in the recent past, they have done so almost exclusively on procedural, and not technical, grounds. *See, e.g.*, *Georgia v. Biden*, --- F. Supp. 3d ---, 2021 WL 5779939, at *9-10 (S.D. Ga. Dec. 7, 2021) (enjoining federal contractor vaccine mandate on grounds that mandate exceeded statutory authority); *Health Freedom Def. Fund, Inc. v. Biden*, --- F. Supp. 3d ---, 2022 WL 1134138, at *12 (M.D. Fla. Apr. 18, 2022) (enjoining federal mask mandate on airplanes on grounds that mandate exceeded statutory authority). On the other hand, this case and *Navy SEAL*

require a detailed review of the scientific, medical, immunological, and epidemiological bases of

a vaccination mandate *as to Plaintiff* to answer whether vaccination is the least restrictive means

of accomplishing Plaintiff's specific military duties.  These are fraught questions of medical

science that the judiciary generally "lacks the background, competence, and expertise to assess."

*See S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1614 (2020) (Roberts, C.J.,

concurring).  Accordingly, both military and scientific justiciability concerns remain in this case.

### C.  Merits

Before proceeding to the likelihood of success on Plaintiff's RFRA claim, the heart of

this case, a word on Plaintiff's Free Exercise claim is necessary.  Plaintiff's supplemental

briefing does not appear to seriously contest that the rational basis test in *Goldman v.

Weinberger*, 475 U.S. 503 (1986) remains good law.  Plaintiff writes that RFRA "deliberately

narrowed" *Goldman*'s holding that a Jewish servicemember had no Free Exercise right to wear a

yarmulke in military uniform.  475 U.S. 504.  It likely goes without saying that Congress cannot

narrow a constitutional holding, although it can provide statutory rights beyond that which the

Constitution protects.  Plaintiff seems to also argue that, even if *Goldman* stands, it applies only

to "operational, strategic, or tactical" military decisions.  Pl.'s Supp. Br. at 8.  The Court does not

find such a holding in that decision, and the Court would be hard-pressed to consider grooming

standards "operational, strategic, or tactical."[7]

As to RFRA, the law provides that the government "shall not substantially burden a

person's exercise of religion even if the burden results from a rule of general applicability."  42

_____

[7] Plaintiff in her supplemental briefing seems to suggest a historical right to religious
accommodation during military service.  Whatever history Plaintiff may bring to bear, history
cannot rewrite statutes, *Spicer v. Biden*, --- F. Supp. 3d ---, 2021 WL 5769458, at *5 (D.D.C.
Dec. 4, 2021) (DLF), and Plaintiff does not ask the Court to overturn a century of Supreme Court
precedent articulated in *Goldman* and its progeny by finding such a right in the Free Exercise
Clause as an original matter.  Responding briefly, however, although Plaintiff accurately notes

U.S.C. § 2000bb-1(a).  To prevail on a RFRA claim, a plaintiff must first show a "religious

exercise" that has been burdened.  *Wilson v. James*, 139 F. Supp. 3d 410, 424 (D.D.C. 2014)

(APM); *United States v. Sterling*, 75 M.J. 407, 415 (CAAF 2016).  If confronted with a

"religious exercise," the government may impose a substantial burden on that religious exercise

"only if it demonstrates that the application of the burden to the person—(1) is in furtherance of

a compelling government interest; and (2) is the least restrictive means of furthering that

compelling government interest."  *Id.* § 20000bb-1(b).

The parties do not contest that Plaintiff maintains a sincerely held religious belief and that

vaccination would substantially burden that belief.  Rather, the parties mainly contest this

Court's understanding of RFRA in the military context and whether the facts in this case

---

that colonial authorities granted religious exemptions from service during the colonial period, it
is inaccurate to say that once drafted, militiamen could always be religiously exempted from
otherwise necessary military duties.  *See, e.g.*, Peter Brock, "Colonel Washington and the Quaker
Conscientious Objectors," 53 Quaker History 12, 14 (1964).  Indeed, the military history of
colonial America and the Early Republic suggest that most early military leaders considered
strict military discipline absolutely necessary to accomplish military ends, even more so among
those not conscripted to fight.  *See, e.g.*, Bradley J. Nicholson, "Courts-Martial in the Legion
Army: American Military Law in the Early Republic, 1792-1796," 144 Mil. L. Rev. 77, 84
(1994) (further noting that early American military law essentially incorporated British law).

Moreover, the fact that some colonial legislatures gave statutory reprieve from a militia
draft should not distract from the colonial history establishing a deep skepticism of religious
objectors having a *right* to avoid military service.  *See* Ellis West, *The Right to Religion-Based
Exemptions in Early America: The Case of Conscientious Objectors to Conscription*, 10 J.L. &
Religion 367, 376-77 (1994).  *Cf. also Fulton v. City of Phila.*, 141 S. Ct. 1868, 1906 (2021)
(Alito, J., concurring in the judgment) (noting Free Exercise claims have long been due different
constitutional treatment in military context notwithstanding colonial reprieves from service).

Even during the nascent civil liberties movement during the First World War, legal
authorities met conscientious objectors with a great degree of incredulity.  *See* Christopher
Capozolla, *Uncle Sam Wants You* 82 (2008) (recounting letter authored by Justice Harlan Fiske
Stone in which he wrote, reflecting on his service as an adjudicator of religious exemptions, that
he had not had "a change of heart" after rejecting a number of requests because "one must obey
some laws of which [he] does not approve, and even participate in a war [one may] think ill
advised").  This cursory historical discussion is largely academic, however.  Whatever history's
purported role in resolving RFRA disputes, the parties have not fully briefed it, and the Court
need not rest any legal analysis upon it.

mandate a different result based on that law.  In *Navy SEAL*, the Court looked to *Singh v. McHugh*, 109 F. Supp. 3d 72, 86 (D.D.C. 2015) (ABJ) *amended and superseded in irrelevant part* 185 F. Supp. 3d 201 (D.D.C. 2016).  After a discussion of that case, RFRA's text, and its legislative history, the Court agreed with *Singh*'s main holding that RFRA applies to the military, and any military regulation that substantially burdens free exercise is due RFRA's statutory strict scrutiny.  *Navy SEAL*, 2022 WL 1294486, at *8.  Nevertheless, the Court "stresse[d] that context is important."  *Id.*  In part relying on *Singh*'s discussion of RFRA's legislative history, the Court concluded that the best reading of the statute, at least with a dearth of authority and a relatively undeveloped record in *Navy SEAL*, was that the military's technical and scientific conclusions should receive due regard in determining whether those technical and scientific judgments are *in fact* the least restrictive means to accomplish the military interest at issue as to a particular military claimant.  *Id.*  This very tentative conclusion is also rooted in other Supreme Court decisions generally cautioning that the judicial power is relatively ill-equipped to resolve highly technical conclusions of fact where their resolution is textually committed to a coordinate branch in the first instance.  *See id.*

The Government appears to agree with this approach whole-heartedly.  Defs.' Supp. Br. at 1-2.  Plaintiff, however, cautions that such an approach "[a]pplies different levels of deference to RFRA claims, according to the subject of the sincerely held religious belief, would result in treating religious practice unequally."  Pl.'s Supp. Br. at 7.  The Court sees nothing in *Navy SEAL* even remotely suggesting such a test.

Rather, the Court suggested that the military's technical, *scientific* findings supporting the wisdom of a particular, generally applicable military order may be due some regard greater than those resting on no such findings.  *See Navy SEAL*, 2022 WL 1294468, at *10.  In other words,

the military receives *no* degree of deference based on the *exercise regulated*, but on the scientific and strategic conclusions on which the regulation is based.  Beyond a citation to *Katcoff v. Marsh*, 755 F.2d 223, 234 (2d Cir. 1985), which stands for the unremarkable proposition that soldiers enjoy *some* First Amendment protections as a matter of constitutional law, Plaintiff offers no authority suggesting that the Court should take a different tack.  Plaintiff will undoubtedly have an opportunity to do so as this case progresses, but at this early stage of the case where Plaintiff must show likelihood of success on the merits (among other things), the Court is not inclined to change tack just yet.

That brings the Court to the most important aspect of Plaintiff's request for preliminary relief:  applying *her* situation to the law set out in *Navy SEAL*.  Doing so, and assuming this case is justiciable in the first place, Plaintiff makes a much stronger showing of likelihood of success on the merits on her RFRA claim than the plaintiff in *Navy SEAL*.

As to whether the military has a compelling government interest in mandating various vaccines, and COVID-19 vaccination in general, "the [Space Force] has a compelling interest in preventing COVID-19 from impairing its ability to carry out its vital responsibilities, as well as a compelling interest in minimizing any serious health risk to [Space Force] personnel."  *See Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301, 1305 (2022) (Alito, J., dissenting).  Facing the same orders at issue in this case, another district court that granted preliminary relief nevertheless agreed that the Air Force undoubtedly shares that compelling government interest. *Air Force Officer v. Austin*, --- F. Supp. 3d ---, 2022 WL 468799, at *9 (M.D. Ga. Feb. 16, 2022) ("It would be a waste of time and wrong to state that '[s]temming the spread of COVID-19' isn't a compelling interest—the Supreme Court has already decided it is.").  The Court is again inclined to conclude that "the *sine qua non* of military interests is keeping an individual

17

servicemember fit enough to accomplish their tasks in furtherance of national security." *Navy SEAL*, 2022 WL 1294486, at *9.

In a RFRA case, however, the more important question is whether the military has a compelling government interest in vaccinating the particular servicemember at issue.  Plaintiff, like the plaintiff in *Navy SEAL*, seems to suggest that the military's general compelling interest in ensuring the health of its servicemembers does not distill to a compelling interest in ensuring that Plaintiff remains healthy enough to accomplish her duties.  As the Court explained in *Navy SEAL*, it likely does by logic alone, but the Court nevertheless must look to Captain Creaghan's duties specifically.

As Captain Creaghan argues at length in her supplemental briefing, her role is quite different from a Navy SEAL.  Unlike a Navy SEAL, who must be deployable at a moment's notice and whose sickness on a mission could doom an entire team, it appears Captain Creaghan does not deploy and works solely in an office setting.  ECF No. 22-10 at 2.  Captain Creaghan argues that this difference alone means the military does not have a compelling interest in *her* vaccination.  Pl.'s Supp. Br. at 1-2.

To the extent that the main benefit of vaccination against the most prevalent SARS-CoV-2 variants and subvariants at the moment is reducing the severity and duration of disease, the inquiry centers on the military consequences of Captain Creaghan's heightened risk of severe COVID absent vaccination.  *See Navy SEAL*, 2022 WL 1294486 at *10.  The question is both actuarial, to the extent that Plaintiff presents a factual question about the degree of risk, and tactical, to the extent to which Plaintiff challenges Defendants' insistence that Plaintiff's vaccination is necessary to safeguard the military tasks with which she has been entrusted.  As the Court explained in *Navy SEAL*, assuming such a question is justiciable, there may well be

some roles in the military that are entirely fungible and servicemembers who are entirely

replaceable with little to no adverse effects on military interests.  Plaintiff argues that this is such

a case, relying on her direct commanding officer's initial recommendation that Plaintiff's request

for an exemption be approved.  Pl.'s Supp. Br. at 4.

    As the Court explained above, Col. Andrea found that "[t]he projected impact to

[Plaintiff's] unit is low" if she remains "unvaccinated."  ECF No. 22-13 at 89.  He suggested that

Plaintiff's unit "has backup personnel available to provide positional coverage in the event of

any operations personnel requiring quarantine."  *Id.*  The "backup personnel" appear to come, at

least in part, from the fact that Plaintiff works in shifts such that there are other officers nearby

who execute the same job.  ECF No. 23-1 at 8.  Part of his opinion, however, also relied on the

fact that Plaintiff had previously contracted COVID.  ECF No. 22-13 at 89.

    To be sure, Col. Andrea's recommendation, ratified by his commanding officer, is

entitled to its own due regard as an exercise of military expertise and judgment.  As Plaintiff's

commanding officer, he understands her role better than anyone else, and his view is certainly

due even more regard if, as Plaintiff alleges, the RRT that recommended denial of Plaintiff's

request neither "talked with [Plaintiff]" or visited her command.  ECF No. 23-1 at 4.  That

various officers within Plaintiff's chain of command came to different conclusion when

exercising their military expertise and that at least two of them consider Plaintiff fairly fungible

is strong support for Plaintiff's RFRA claim.

    Ultimately, however, not strong enough for a preliminary injunction.  First and foremost,

a religious exemption from a medical requirement always starts from a disadvantaged position

relative to other requests because, as the previously explained, there can be no greater military

interest than in keeping each servicemember fit and healthy enough to accomplish their duties.

*See Navy SEAL*, 2022 WL 1294486, at *10. Plaintiff argues that *Navy SEAL* and this case are distinguishable on the facts. The Court disagrees. As an officer, the military likely has a greater interest in her health than enlisted personnel. *See Short*, 2022 WL 1051852, at *6. Additionally, Plaintiff's specific duties strike the Court as relatively more important to national security. She has "operational control and on-line decision-making responsibilities for all aspects of NRO operations," which evidently includes maintaining the integrity of military spacecraft while executing highly sensitive and important missions. ECF No. 22-10 at 2. Major General Shipton relied on these facts in recommending denial, ECF No. 22-13 at 92, and her argument, ratified by Lieutenant Generals Whiting and Miller, is compelling. Although a close call, the Court is inclined to find—on this record and at this early stage of the case—a compelling government interest in Plaintiff's vaccination.

As for whether vaccination is the least restrictive means, the Court already concluded on a similar record that "the military's scientific and medical conclusion [that nothing less than vaccination sufficiently protects a servicemember from the consequences of COVID-19], which rest[s] on the great weight of scientific authority," should not be rejected, and the Court is not inclined to depart from that tentative position. *See Navy SEAL*, 2022 WL 1294486, at *11. In addition to arguments the Court addressed in *Navy SEAL*, Plaintiff also argues that vaccination cannot be the least restrictive means because "Defendants do not prohibit contact outside of work."[8] On this record, like in *Church*, that is all the more reason vaccination may be necessary.

---

[8] Plaintiff also argues that "Defendants choose not to extend its [vaccination] mandate to contractors [who] work in the same space, on the same matters." Repl. at 14. That seems to be incorrect. The Executive promulgated a regulation requiring all federal contractors to be vaccinated against COVID-19, but that regulation has been preliminarily enjoined nationwide. *Georgia v. Biden*, --- F. Supp. 3d ---, 2021 WL 5779939 (S.D. Ga. Dec. 7, 2021), *appeal pending*, No. 21-14269 (11th Cir.).

*See* 2021 WL 5179215, at * 19 ("Civilian employees who continue to telework do not live in a vacuum.")

Plaintiff also asserts, relying on *Air Force Officer*, that the Air Force is "rubber stamping" exemption denials.  Repl. at 15 (citing 2022 WL 468799, at *11 ("the Court easily finds that the Air Force's process to protect [RFRA] rights is both illusory and insincere")).  On this record, such a finding is much more difficult.  Defendants represent, and Plaintiff does not contest, that the Air Force has approved forty-one religious exemption requests.  Opp. at 9.  Plaintiff evidently thinks this number too low, but a low approval rate is not itself evidence of cursory review of exemption requests.  The review process here was also much lengthier and more involved than in *Navy SEAL*.  Defendants' Exhibit 12, "Captain Creaghan Religious Accommodation Request Package," is 111 pages.  Aside from the RRT, Captain Creaghan's request was reviewed by five officers, including the Surgeon General of the Air Force, who each issued individual, specific findings. The RRT report also made specific findings based on its characterization of Plaintiff's duties.  It found that Captain Creaghan was "responsible for directing daily operations and maintenance for NRO space and ground systems and assuring overall spacecraft health and mission success."  ECF No. 22-13 at 63.  It concluded that Plaintiff is "a practicing Catholic who believes she would be a willing participant and beneficiary of abortion" and thereby holds a sincere religious belief.  *Id.* at 65.  It found a "compelling government interest in ensuring military mission success" through vaccination.  *Id.* at 66.  It further found that "[t]elework is not a viable less restrictive means, because [Plaintiff's] duties require physical presence on an operations floor with 110 personnel."  *Id.* at 67.  On the Court's reading, Lieutenant General Whiting had a full record with findings specific to Plaintiff's beliefs and duties when he denied Plaintiff's request.

As such, and on the whole, there remain a number of questions as to whether Plaintiff can carry her burden to show that she is likely to succeed on her RFRA claim on the record at this time.

### C.  Irreparable Harm

The Court next considers whether Plaintiff has demonstrated "irreparable harm." *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995).  To constitute "irreparable harm," the injury alleged must be both "certain and great, actual and not theoretical, beyond remediation, and of such imminence that there is a clear and present need for equitable relief."  *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 55 (D.C. Cir. 2015) (cleaned up).  A mere "possibility of irreparable harm" is not enough; a plaintiff must demonstrate that the alleged injury is "*likely* in the absence of a injunction."  *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (cleaned up).  Plaintiff has not carried her burden.

First, it is somewhat unclear whether separation proceedings are actually certain to proceed.  Although Plaintiff's direct commanding officer warned that "if the initial dose is not completed by [a] deadline, initiation of administrative discharge *will* be pursued," ECF No. 8-5 at 4 (emphasis added), the applicable form letter provides that "[f]ailure to comply with this lawful order *may* result in administrative and/or punitive action," *id.* at 2 (emphasis added). Were separation proceedings, or any other adverse action, certain to occur, Plaintiff has not shown that those actions would be irreparable.  *See Navy SEAL*, 2022 WL 1294486, at *15 ("[a]n adverse fitness report may be purged from Plaintiff's files, adverse separation proceedings may be dissolved," and military records can be corrected in subsequent proceedings).  Nor has Plaintiff demonstrated how the financial consequences of discharge are the sorts of loss of employment benefits that, as the Court held in *Church*, is not irreparable harm absent a

"genuinely extraordinary situation."  2021 WL 5179215, at *15 (citing *Sampson v. Murray*, 415
U.S. 61, 92 n.68 (1974); *see also Short*, 2022 WL 1051852, at *9 (citing *Hartikka v. United
States*, 754 1516, 1518 (9th Cir. 1985) ("loss of income, loss of retirement and relocation pay,
and damage to [the plaintiff's] reputation resulting from the stigma attaching to less than
honorable discharge" are not irreparable injuries)).  Finally, as the Court explained in *Navy
SEAL*, because Plaintiff likely only faces the deprivation of a *statutory* right, Plaintiff has not
shown irreparable injury predicated on the loss of a *constitutional* right.  *See* 2022 WL 1294486,
at *16.

### D.  Public Interest

"The final two factors the Court must consider when deciding whether to grant a
preliminary injunction are the balance of harms and the public interest."  *Sierra Club v. U.S.
Army Corps of Eng'rs*, 990 F. Supp. 2d 9, 41 (D.D.C. 2013).  Where, as here, the government is
a party to the litigation, these two factors merge and are "one and the same, because the
government's interest is the public's interest."  *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500,
511 (D.C. Cir. 2016).  "Although allowing challenged conduct to persist certainly may be
harmful to a plaintiff and the public, harm can also flow from enjoining an activity, and the
public may benefit most from permitting it to continue."  *Sierra Club*, 990 F. Supp. 2d at 41.
Therefore, when "balanc[ing] the competing claims of injury," the Court must "consider the
effect on each party of the granting or withholding of the requested relief."  *Winter v. Nat'l Res.
Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

On the present record, as in *Navy SEAL*, the public's interest in military readiness and the
military's interest in Plaintiff's health outweigh Plaintiff's religious liberty interest.  *See* 2022
WL 1294486 *17.  As the Court explained in *Church*, the military has concluded, based on a

long and detailed scientific record, that vaccination is necessary to protect its servicemembers individually and to further national security more broadly.  2021 WL 5179215, at *19.  At the very least, without a lengthier record, the Court would not be inclined to "disturb th[o]se well-found military judgments."  *Id.*  Nor has Plaintiff offered any reason in this case for the Court to depart from *Navy SEAL* and *Church*.

## IV.    CONCLUSION

An appropriate order accompanies this memorandum opinion.

Dated: May 12, 2022

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge
