APPEAL,TYPE–D

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:22–cv–00981–CKK</u>
### *Internal Use Only*

CREAGHAN v. AUSTIN et al

Assigned to: Judge Colleen Kollar–Kotelly

Demand: $100,000

  Cases:  1:21–cv–02483–CJN
          1:21–cv–02815–CKK
          1:22–cv–00688–CKK
          1:22–cv–01267–BAH

Cause: 42:2000 Religion

Date Filed: 04/08/2022

Jury Demand: None

Nature of Suit: 440 Civil Rights: Other

Jurisdiction: U.S. Government Defendant

**<u>Plaintiff</u>**

| | | |
|---|---|---|
| **MARIELLA CREAGHAN**<br>*CAPTAIN* | represented by | **Richard Thompson**<br>THOMAS MORE LAW CENTER<br>P.O. Box 393<br>24 Frank Lloyd Wright Drive<br>Ann Arbor, MI 48106<br>734–827–2001<br>Fax: 734–930–7160<br>Email: <u>rthompson@thomasmore.org</u><br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Erin Elizabeth Mersino**<br>To access the upgraded system, you must<br>have a PACER account<br>24 Frank Lloyd Wright Drive<br>Ann Arbor, MI 48106<br>734–827–2001<br>Fax: 734–930–7160<br>Email: <u>emersino@thomasmore.org</u><br>*ATTORNEY TO BE NOTICED* |

V.

**<u>Defendant</u>**

| | | |
|---|---|---|
| **LLOYD J. AUSTIN, III**<br>*in his official capacity as the Secretary of*<br>*the United States Department of Defense* | represented by | **Andrew Evan Carmichael**<br>U.S. DEPARTMENT OF JUSTICE<br>Civil Division, Federal Programs Branch<br>1100 L Street NW<br>Washington, DC 20005<br>(202) 514–3346<br>Fax: (202) 616–8460<br>Email: <u>andrew.e.carmichael@usdoj.gov</u> |

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cassie Snyder**
DOJ–CIV
Department of Justice
1100 L Street NW
Washington, DC 20005
202–451–7729
Email: cassandra.m.snyder@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Catherine Yang**
1100 L Street NW
Washington, DC 20005
202–514–4336
Email: catherine.m.yang@usdoj.gov
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**FRANK KENDALL**
*in his official capacity as United States Secretary of the Air Force*

represented by **Andrew Evan Carmichael**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cassie Snyder**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Catherine Yang**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**STEPHEN N. WHITING**
*LT. GEN., Individually and in his official capacity as Commander*

represented by **Andrew Evan Carmichael**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cassie Snyder**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Catherine Yang**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**ROBERT I. MILLER**
*LT. GEN., individually and in his official capacity as a Surgeon General of the Air*

represented by **Andrew Evan Carmichael**
(See above for address)
*LEAD ATTORNEY*

2

*Force*                                                          *ATTORNEY TO BE NOTICED*

**Cassie Snyder**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Catherine Yang**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 04/09/2022 | 1 | | STRICKEN PURSUANT TO ORDER FILED 04/14/2022.....COMPLAINT against All Defendants ( Filing fee $ 402 receipt number ADCDC–9161359) filed by Officer in the United States Space Force. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons)(Mersino, Erin) Modified on 4/14/2022 (zmh). (Entered: 04/09/2022) |
| 04/11/2022 | | | NOTICE OF ERROR re 1 Complaint; emailed to emersino@thomasmore.org, cc'd 3 associated attorneys –– The PDF file you docketed contained errors: 1. Missing summonses–government. When naming a government agent or agency as a defendant, you must supply a summons for each defendant & two additional summonses for the U.S. Attorney & U.S. Attorney General. Please submit using the event Request for Summons to Issue., 2. No signature. Please file the signed document using the event Errata. All filings must have an original signature or *'/s/ Attorney Name'* to represent an electronic signature of the filer., 3. Attorney signature must match documents filed, 4. **COMPLIANCE DEADLINE is by close of business today. This case will not proceed any further until all errors are satisfied.** (zmh, ) (Entered: 04/11/2022) |
| 04/11/2022 | 2 | | STRICKEN PURSUANT TO ORDER FILED 04/14/2022.....ERRATA re 1 Complaint by OFFICER IN THE UNITED STATES SPACE FORCE. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Summons, # 7 Summons)(Thompson, Richard) Modified on 4/14/2022 (zsb). Modified on 4/14/2022 (zmh). (Entered: 04/11/2022) |
| 04/11/2022 | 3 | | Ex Parte MOTION to Proceed Under Pseudonym by OFFICER IN THE UNITED STATES SPACE FORCE. (Attachments: # 1 Declaration)(Thompson, Richard) (Entered: 04/11/2022) |
| 04/11/2022 | 4 | | Ex Parte MOTION for Leave to File *Documents Under Seal* by OFFICER IN THE UNITED STATES SPACE FORCE. (Thompson, Richard) (Entered: 04/11/2022) |
| 04/11/2022 | 5 | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by OFFICER IN THE UNITED STATES SPACE FORCE (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Declaration Verification of Complaint, # 2 Exhibit Index of Exhibits in Support of Verified Complaint, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Declaration Declaration in Support of Motion to Proceed Pseudonymously)(Thompson, Richard) (Entered: 04/11/2022) |

| 04/13/2022 | | | NOTICE OF ERROR re 3 MOTION to Proceed Under Pseudonym ; emailed to rthompson@thomasmore.org, cc'd 4 associated attorneys –– The PDF file you docketed contained errors: 1. Pseudonym Request e–filed without leave of court. Please submit motion using the event Motion to Proceed Under Pseudonym. In the future, do not file these kinds of cases electronically. (zmh, ) (Entered: 04/13/2022) |
|---|---|---|---|
| 04/14/2022 | 6 | | MEMORANDUM AND ORDER DENYING plaintiff's 3 Motion for Leave to Proceed Under Pseudonym and GRANTING IN PART and DENYING PART plaintiff's 4 Motion for Leave to File Documents Under Seal. See Memorandum and Order for further details. Signed by Chief Judge Beryl A. Howell on April 14, 2022. (lcbah4) (Entered: 04/14/2022) |
| 04/15/2022 | 7 | | COMPLAINT against All Defendants (Fee Status:Filing Fee Waived) filed by OFFICER IN THE UNITED STATES SPACE FORCE. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Summons, # 7 Summons)(Thompson, Richard) (Entered: 04/15/2022) |
| 04/15/2022 | 8 | | SEALED DOCUMENT filed by OFFICER IN THE UNITED STATES SPACE FORCE re 7 Complaint, (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 1, # 2 Exhibit 3, # 3 Exhibit 4, # 4 Exhibit 5, # 5 Exhibit 6, # 6 Exhibit 7, # 7 Exhibit 8, # 8 Exhibit 2)(Thompson, Richard) (Entered: 04/15/2022) |
| 04/15/2022 | 9 | | SEALED DOCUMENT filed by OFFICER IN THE UNITED STATES SPACE FORCE re 8 Sealed Document, 7 Complaint, (This document is SEALED and only available to authorized persons.)(Thompson, Richard) (Entered: 04/15/2022) |
| 04/15/2022 | 10 | | Joint MOTION for Briefing Schedule *on Plaintiff Motion for a TRO* by OFFICER IN THE UNITED STATES SPACE FORCE. (Attachments: # 1 Text of Proposed Order)(Thompson, Richard) (Entered: 04/15/2022) |
| 04/15/2022 | 11 | | MOTION for Temporary Restraining Order , MOTION for Preliminary Injunction by OFFICER IN THE UNITED STATES SPACE FORCE. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Thompson, Richard) (Entered: 04/15/2022) |
| 04/16/2022 | 12 | | NOTICE of Appearance by Cassie Snyder on behalf of All Defendants (Snyder, Cassie) (Entered: 04/16/2022) |
| 04/18/2022 | | | ENTERED IN ERROR.....Case Assigned to Judge James E. Boasberg. (zmh) Modified on 4/18/2022 to correct judge assignment (zsb). (Entered: 04/18/2022) |
| 04/18/2022 | 13 | | SUMMONS (6) Issued Electronically as to All Defendants, U.S. Attorney and U.S. Attorney General (Attachment: # 1 Notice and Consent)(zmh) (Entered: 04/18/2022) |
| 04/18/2022 | | | Case Assigned to Judge Timothy J. Kelly. Judge James E. Boasberg is no longer assigned to the case. (zmh) (Entered: 04/18/2022) |
| 04/18/2022 | 14 | | NOTICE of Appearance by Andrew Evan Carmichael on behalf of All Defendants (Carmichael, Andrew) (Entered: 04/18/2022) |
| 04/18/2022 | 15 | | NOTICE of Appearance by Catherine Yang on behalf of All Defendants (Yang, Catherine) (Entered: 04/18/2022) |

| 04/18/2022 | | | MINUTE ORDER granting the parties' 10 Joint Motion for Briefing Schedule. It is hereby ORDERED that the parties' 10 Joint Motion for Briefing Schedule is GRANTED. Defendants shall file their response to Plaintiff's 11 Motion for Temporary Restraining Order and Preliminary Injunction by April 29, 2022, and Plaintiff shall file any reply by May 2, 2022. It is further ORDERED that, by April 20, 2022, the parties shall file a joint status report informing the Court whether the parties are available for a hearing on the 11 Motion on May 5, 2022, at 3:30 p.m. Signed by Judge Timothy J. Kelly on 4/18/2022. (lctjk3) (Entered: 04/18/2022) |
| 04/18/2022 | | | Set/Reset Deadlines: Joint Status Report due by 4/20/2022. (zkh) (Entered: 04/18/2022) |
| 04/19/2022 | 16 | | NOTICE OF RELATED CASE by All Defendants. Case related to Case No. 21cv2815. (Carmichael, Andrew) (Entered: 04/19/2022) |
| 04/19/2022 | | | MINUTE ORDER: Civil cases in this district are related if, relevant here, they "involve common issues of fact" or "grow out of the same event or transaction." LCvR 40.5(a)(3). The party seeking related–case designation "bears the burden of showing that the cases are related." *Trump v. Comm. on Ways & Means*, 391 F. Supp. 3d 91, 95 (D.D.C. 2019). Defendants have filed a notice stating that this case is related to three other cases pending before another judge. *See* ECF No. 16. But their filing only contains only a single sentence stating that the other cases also involve "service member challenges to the Department of Defense COVID–19 vaccination requirement under the Religious Freedom Restoration Act and First Amendment to the Constitution." *Id.* Accordingly, it is hereby ORDERED that, by April 22, 2022, Defendants shall file a further explanation as to why these cases are related. It is further ORDERED that Plaintiff shall file any response by April 29, 2022, and Defendants shall file any reply by May 3, 2022.. Signed by Judge Timothy J. Kelly on 4/19/2022. (lctjk3) (Entered: 04/19/2022) |
| 04/20/2022 | 17 | | Joint STATUS REPORT *re April 18, 2022 Minute Order* by LLOYD J. AUSTIN, III, FRANK KENDALL, ROBERT I. MILLER, STEPHEN N. WHITING. (Yang, Catherine) (Entered: 04/20/2022) |
| 04/20/2022 | 18 | | RESPONSE TO ORDER OF THE COURT re Order,,,,, Set Deadlines,,,, filed by LLOYD J. AUSTIN, III, FRANK KENDALL, ROBERT I. MILLER, STEPHEN N. WHITING. (Carmichael, Andrew) (Entered: 04/20/2022) |
| 04/21/2022 | | | MINUTE ORDER: It is hereby ORDERED that the parties shall appear for a hearing on Plaintiff's 11 Motion for Temporary Restraining Order And Preliminary Injunction on May 5, 2022, at 3:30 p.m. via videoconference. The parties shall contact the Courtroom Deputy at (202) 354–3495 at least one business day prior to the hearing to make arrangements to participate. Signed by Judge Timothy J. Kelly on 4/21/2022. (lctjk3) (Entered: 04/21/2022) |
| 04/25/2022 | 19 | | Case directly reassigned to Judge Colleen Kollar–Kotelly as there is an earlier related case. Judge Timothy J. Kelly is no longer assigned to the case. (rj) (Entered: 04/25/2022) |
| 04/25/2022 | | | MINUTE ORDER: In light of this case's reassignment to the undersigned, the hearing set for May 5, 2022 is **VACATED** pending further briefing in this case. |

| | | The Court also notes that the parties have jointly requested an expedited ruling on Plaintiff's motion on or before May 13, 2022." ECF No. 10 at 2. Pursuant to LCvR 65.1(d), "a hearing on an application for a preliminary injunction shall be set by the Court no later than 21 days after its filing, unless the Court earlier decides the motion on the papers or makes a finding that a later hearing date will not prejudice the parties." The Court calculates the 21–day deadline as May 6, 2022. Having reviewed the parties' <u>10</u> Joint Motion, granted by Judge Timothy J. Kelly by Minute Order on April 18, 2022, the Court assumes that the parties agree that resolution after May 6, 2022 but on or before May 13, 2022 would not prejudice the parties. If, in fact, either of the parties intends the 21–day deadline set forth in LCvR 65.1(d) to apply in this matter, they shall file such a notice on the docket on or before April 27, 2022. If no such notice is filed, the Court will adopt such a finding and the briefing schedule set in the April 18, 2022 Minute Order shall stand. <br><br> Signed by Judge Colleen Kollar–Kotelly on April 25, 2022. (lcckk1) (Entered: 04/25/2022) |
|---|---|---|
| 04/27/2022 | <u>20</u> | NOTICE by MARIELLA CREAGHAN re Order,,,,, (Thompson, Richard) (Entered: 04/27/2022) |
| 04/27/2022 | <u>21</u> | ORDER ESTABLISHING PROCEDURES FOR CASES ASSIGNED TO JUDGE COLLEEN KOLLAR–KOTELLY. Signed by Judge Colleen Kollar–Kotelly on 04/27/22. (DM) (Entered: 04/27/2022) |
| 04/27/2022 | | MINUTE ORDER: The Court is in receipt of Plaintiff's <u>20</u> Notice. Therein, Plaintiff writes that she "cannot make the blanket attestation that delay [of a ruling to May 13, 2022] will not cause her prejudice," but nevertheless continues to consent to the parties' joint proposed briefing schedule requiring a ruling on Plaintiff's <u>11</u> Motion for a Temporary Restraining Order and/or Preliminary Injunction on or before May 13, 2022. Plaintiff appears to fear that Defendants may commence separation proceedings on May 13, 2022. Defendants represented in the parties' <u>10</u> Joint Motion that they would not commence separation proceedings until "[a]fter May 13, 2022." Accordingly, pursuant to LCvR 65.1(d), the Court finds that the parties would not suffer sufficient prejudice to warrant departure from the parties' joint proposed briefing schedule. Defendants shall file their opposition to Plaintiff's <u>11</u> Motion on or before April 29, 2022, and Plaintiff shall file her reply in support of her <u>11</u> Motion on or before May 2, 2022. The Court will rule on Plaintiff's <u>11</u> Motion on or before May 13, 2022. Signed by Judge Colleen Kollar–Kotelly on April 27, 2022. (lcckk1) (Entered: 04/27/2022) |
| 04/29/2022 | <u>22</u> | Memorandum in opposition to re <u>11</u> MOTION for Temporary Restraining Order MOTION for Preliminary Injunction filed by LLOYD J. AUSTIN, III, FRANK KENDALL, ROBERT I. MILLER, STEPHEN N. WHITING. (Attachments: # <u>1</u> Exhibit Table, # <u>2</u> Exhibit 1 – Stanley Decl., # <u>3</u> Exhibit 2 – Rans Decl., # <u>4</u> Exhibit 3 – Chapa Decl., # <u>5</u> Exhibit 4 – Streett Decl., # <u>6</u> Exhibit 5 – Little Decl., # <u>7</u> Exhibit 6 – Hernandez Decl., # <u>8</u> Exhibit 7 – Poel Decl., # <u>9</u> Exhibit 8 – Angelo Decl., # <u>10</u> Exhibit 9 – Shipton Decl., # <u>11</u> Exhibit 10 – Schneider Decl., # <u>12</u> Exhibit 11 – Dunn Op., # <u>13</u> Exhibit 12 – RAR Package)(Snyder, Cassie) (Entered: 04/29/2022) |
| 05/02/2022 | | MINUTE ORDER: Pending before the Court is Plaintiff's <u>11</u> Motion for |

| | | |
|---|---|---|
| | | Temporary Restraining Order and/or Preliminary Injunction. On April 29, 2022, the Court entered a Memorandum Opinion on a similar motion for preliminary relief pending in *Navy SEAL v. Austin*, 22–cv–688 (D.D.C.). Because the issues in these two cases are quite similar, the Court shall provide either party the option to file, on or before May 4, 2022, supplemental briefing of no longer than ten double–spaced pages addressing that Memorandum Opinion. Such supplemental briefing is entirely optional. Signed by Judge Colleen Kollar–Kotelly on May 2, 2022. (lcckk1) (Entered: 05/02/2022) |
| 05/02/2022 | | Set/Reset Deadlines: Supplemental Briefing due by 5/4/2022. (dot) (Entered: 05/02/2022) |
| 05/02/2022 | 23 | REPLY to opposition to motion re 11 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction filed by MARIELLA CREAGHAN. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Mersino, Erin) (Entered: 05/02/2022) |
| 05/04/2022 | 24 | SUPPLEMENTAL MEMORANDUM to re Order,, *Addressing Navy SEAL v. Austin* filed by LLOYD J. AUSTIN, III, FRANK KENDALL, ROBERT I. MILLER, STEPHEN N. WHITING. (Yang, Catherine) (Entered: 05/04/2022) |
| 05/04/2022 | 25 | SUPPLEMENTAL MEMORANDUM to re 11 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction filed by MARIELLA CREAGHAN. (Mersino, Erin) (Entered: 05/04/2022) |
| 05/12/2022 | 26 | ORDER denying 11 Motion. Joint status report as to how the parties intend to proceed due **June 2, 2022**. Signed by Judge Colleen Kollar–Kotelly on May 12, 2022. (lcckk1) (Main Document 26 replaced on 5/13/2022 to correct case number on document) (kt). (Entered: 05/12/2022) |
| 05/12/2022 | 27 | MEMORANDUM OPINION re 26 Order. Signed by Judge Colleen Kollar–Kotelly on May 12, 2022. (lcckk1) (Main Document 27 replaced on 5/13/2022 to correct case number on document) (kt). (Entered: 05/12/2022) |
| 05/12/2022 | | Set/Reset Deadlines: Joint Status Report due by 6/2/2022. (kt) (Entered: 05/12/2022) |
| 05/18/2022 | 28 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 26 Order on Motion for TRO,, Order on Motion for Preliminary Injunction, 27 Memorandum & Opinion by MARIELLA CREAGHAN. Filing fee $ 505, receipt number ADCDC–9247881. Fee Status: Fee Paid. Parties have been notified. (Thompson, Richard) (Entered: 05/18/2022) |
| 05/18/2022 | 29 | MOTION for Injunction *Pending Appeal – Expedited Relief Requested* by MARIELLA CREAGHAN. (Attachments: # 1 Text of Proposed Order)(Thompson, Richard) (Entered: 05/18/2022) |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**CAPTAIN MARIELLA CREAGHAN**
    Plaintiff,

    v.

**LLOYD J. AUSTIN III**, **FRANK KENDALL**, **LT. GEN. STEPHEN N. WHITING**, and **LT. GEN. ROBERT I. MILLER**,

        Defendants.

Case No.  1:22-cv-00981

Hon. Colleen Kollar-Kotelly

**NOTICE OF APPEAL**

_____

     Notice is hereby given that Plaintiff Captain Mariella Creaghan, by and through undersigned

counsel, hereby appeals to the United States Court of Appeals for the District of Columbia from the

Order Denying Motion Preliminary Injunction and Memorandum Opinion, issued on May 12, 2022,

ECF Nos. 26, 27.

Dated:  May 18, 2022                    Respectfully submitted,

                                        THOMAS MORE LAW CENTER

                                        /s/ *Richard Thompson*
                                        Richard Thompson, MI0053
                                        Erin Elizabeth Mersino, MI0060
                                        24 Frank Lloyd Wright Drive
                                        J-3200
                                        Ann Arbor, MI 48106
                                        Ph: (734) 826-2001
                                        Email: rthompson@thomasmore.org

- 1 -

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2022, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the court's electronic filing system.  Parties may access this filing through the court's system.  I further certify that a copy of the foregoing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically.

THOMAS MORE LAW CENTER

/s/ *Richard Thompson*
Richard Thompson, MI0053

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CAPTAIN MARIELLA CREAGHAN** | Case No.  1:22-cv-00981 |
| Plaintiff, | Hon. Colleen Kollar-Kotelly |
| v. | |
| **LLOYD J. AUSTIN III**, **FRANK KENDALL, LT. GEN. STEPHEN N. WHITING**, and **LT. GEN. ROBERT I. MILLER**, | **EXPEDITED CONSIDERATION REQUESTED** |
| Defendants. | |

**MOTION FOR INJUNCTION PENDING APPEAL**

Plaintiff Captain Mariella Creaghan, by and through undersigned counsel, hereby moves this Court for an injunction pending appeal to immediately and preliminarily enjoin the enforcement of Defendants' 5 April 2022 Order.  Plaintiff requests expedited consideration of this motion in light of the impending enforcement of the order and to preserve the status quo.  Pursuant to Local Rule 7(m), Plaintiff's counsel certifies that they sought concurrence in this motion from Defendants, and it was denied.

Plaintiff filed a motion for a temporary restraining order or preliminary injunction, relying upon the facts and arguments presented in Plaintiff's Verified Complaint (ECF No. 7), Exhibits and Declarations (ECF Nos. 8, 9, 10), Motion and Brief in Support (ECF No 10, 11), Reply in Support and Declarations (ECF No. 23), and Supplemental Memorandum (ECF No. 25).  No evidentiary hearing was scheduled or held.  The Court denied Plaintiff's Motion on May 12, 2022, and issued a corrected Opinion on May 13, 2022 (ECF Nos. 26, 27).

1

Plaintiffs intend to file a motion for an injunction pending appeal in the United States Court of Appeals for the D.C. Circuit. However, before doing so, Plaintiffs are "ordinarily" required to "move first in the district court." *See* Fed. R. App. P. 8; Fed. R. Civ. P. 62. And while Plaintiff understands the likely futility of this motion, she is nonetheless compelled to file it in order to maintain the ability to seek such relief in the appellate court. *Id.; see, e.g., LaPorte v. Gordon*, No. 20-1269, 2020 U.S. App. LEXIS 10951, at \*2 (6th Cir. Apr. 7, 2020) ("Just because the district court denied an injunction pending its own ultimate determination on the merits does not necessarily mean that the district court would deny an injunction pending the interlocutory appeal to this court.").

For the reasons below, Captain Creaghan (1) is reasonably likely to succeed on the merits of her claims; (2) She is suffering a continuing, irreparable harm in the absence of preliminary relief that outweighs any harm the Government may suffer if the preliminary injunction is granted; (3) She has no adequate remedy at law; and (4) an injunction in this case furthers the public interest. Accordingly, Plaintiff respectfully moves this Court to issue an injunction pending appeal.

## ARGUMENT

When assessing the propriety of granting an injunction pending appeal, the Court looks to four factors: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Cuomo v. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985); *see also Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 842-44 (D.C. Cir. 1977). Injunctive relief pending appeal is especially appropriate when granting such relief "maintains the status quo of the parties pending the outcome of the appeal." Moore's Federal

Practice Civil § 62.06 (2021).  Here, enjoining Defendants' 5 April 2021 order would continue the status quo that the parties have been operating under since 2 November 2021.  Further, Plaintiff satisfies each of the four factors.

### A.  Plaintiff Is Likely to Succeed on the Merits of her Claims.

Plaintiff meets the first factor for the purposes of an injunction pending appeal, particularly in the light of her particular circumstances.  To demonstrate a likelihood of success, Plaintiff need not "'show[] a mathematical probability of success'" but rather that she is challenging, serious legal questions that present a need for a "'more deliberative investigation.'"  *Jewish War Veterans of U.S., Inc. v. Gates*, 522 F. Supp. 2d 73, 76 (D.D.C. 2007) (citing *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (1997)).  Moreover, even if the Court questions Plaintiff's ability to establish a likelihood of success on appeal, where there is a showing on irreparable harm, a stay is appropriate if they "have made out a '*substantial* case on the merits.'"  *Ctr. For Int'l Envtl. Law v. Office of U.S. Trade Rep.*, 240 F. Supp. 2d 21, 22 (D.D.C. 2003) (emphasis added) (quoting that "although the Court ultimately did not agree with defendants' position on the merits," an injunction pending appeal was still appropriate).

Plaintiff meets this standard.  Plaintiff seeks an injunction pending appeal regarding the application of statutory and constitutional law to the sincerely held religious objection of Captain Mariella Creaghan.[1]  This Court properly stated that "[t]o prevail on a RFRA claim, a plaintiff must first show a 'religious exercise' that has been burdened. *Wilson v. James*, 139 F. Supp. 3d

---

[1] Plaintiff sought a temporary restraining order or preliminary injunction pursuant to Fed. R. Civ. P. 65.  Injunctions granted under this rule allow for the Court to address the procedures that apply and set a potential duration for the injunction.  The Court's Opinion expressed concern for the scope of injunctive relief and the desire not to interfere with strategic military operations.  The Court could easily avoid those issues with limiting language in its order.  *Uniformed Fire Officers Ass'n v. de Blasio*, 973 F.3d 41 (2d Cir. 2020).  Plaintiff does not seek to change military strategy, only to ensure that the military follows RFRA and constitutional law for which it is required.

3

410, 424 (D.D.C. 2014) (APM); *United States v. Sterling*, 75 M.J. 407, 415 (CAAF 2016). If confronted with a 'religious exercise,' the government may impose a substantial burden on that religious exercise 'only if it demonstrates that the application of the burden to the person—(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.' *Id.* § 20000bb-1(b)." Op. at 15. "The parties do not contest that Plaintiff maintains a sincerely held religious belief and that vaccination would substantially burden that belief." *Id.* Plaintiff argues that Defendants failed to follow the legal procedure required under RFRA because 1) they did not explain why it was an "interest of the highest order" for Plaintiff to undergo vaccination when they do not require the same of visitors and contractors with whom she works,[2] and 2) they did not address, or consider, why several other lesser restrictive alternatives were unworkable. Plaintiff asked the Court to issue an injunction and require Defendants to answer these questions (*i.e.*, comply with RFRA).

The Court stated that "the most important aspect of Plaintiff's request for preliminary relief" was "applying *her* situation to the law set out in *Navy SEAL*. Doing so, and assuming this

---

[2] The Court notes that President Biden issued an Executive Order requiring that federal contractors undergo COVID-19 vaccination. Op. 20 at fn. 8. There presently is a nationwide injunction against that Executive Order. *Id.* As the district court who enjoined the president's Executive Order noted, "even in times of crisis this Court must preserve the rule of law and ensure that all branches of government act within the bounds of their constitutionally granted authorities. Indeed, the United States Supreme Court has recognized that, while the public indisputably 'has a strong interest in combating the spread of [COVID-19],' that interest does not permit the government to 'act unlawfully even in pursuit of desirable ends.'" *Georgia v. Biden*, No. 1:21-cv-163, 2021 U.S. Dist. LEXIS 234032, at *3-4 (S.D. Ga. Dec. 7, 2021) (quoting *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2490 (2021); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582, 585-86 (1952)).

It is true, however, that *Defendants* have not required vaccination for federal contractors and visitors for Plaintiff's unit. Plaintiff works, primarily, with contractors and thus the majority of her co-workers do not have to abide by Defendant's mandate. Defs' Memo. in Opp. at Ex. 12 at 88 ("**The unit consists of approximately 35 Air Force and Space Force personnel, and approximately 75 contractors.**") (emphasis added).

case is justiciable in the first place, Plaintiff makes a much stronger showing of likelihood of success on the merits on her RFRA claim than the plaintiff in *Navy SEAL*." Op. at 18. The Court then found that "Plaintiff, like the plaintiff in *Navy SEAL*, seems to suggest that the military's general compelling interest in ensuring the health of its servicemembers does not distill to a compelling interest in ensuring that Plaintiff remains healthy enough to accomplish her duties." *Id*. Plaintiff's legal argument, however, simply asks for RFRA to be followed.

Defendants' interest cannot be considered legally compelling under existing case law because it "leaves appreciable damage to that supposedly vital interest unprohibited." *Church of the Lukumi* v. *City of Hialeah*, 508 U.S. 520, 547 (1993). Defendants have the burden, not of proving it "has a compelling interest in enforcing its [vaccine] policies generally, but whether it has such an interest in denying an exception to" Captain Creaghan. *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1881 (2021). And when its enforcement, as here, pertains to 35 people within Plaintiff's unit, but leaves untouched the majority of individuals, namely the other 75 people with whom Plaintiff works, it "cannot be regarded as protecting an interest of the highest order." *Lukumi*, 508 U.S. at 547.

This compelling interest test under RFRA is not diluted by *Goldman* v. *Weinberger*, 475 U.S. 503 (1986). RFRA abrogated the holding in *Goldman*. In enacting RFRA, Congress deliberately rejected *Goldman*'s "deferential approach" that simply asked whether a "regulation reasonably satisfied" the military's interests, S. Rep. No.103-111, at 11-12. Congress set a standard where "[s]eemingly reasonable regulations based upon speculation . . . cannot stand." H.R. Rep. No.103-88. Both the Senate and House reports noted that in *Goldman* the military had sought and received broad deference under the Free Exercise Clause, and that RFRA was meant to avoid that result. H.R. Rep. No.103-88; S. Rep. No.103-111. This protection was by design and

should not be ignored.  When enacting RFRA, Congress recognized that "the expertise and authority of military * * * officials" would be considered, H.R. Rep. No.103-88, *but only within the strict-scrutiny standard*, a "workable test for striking sensible balances," 42 U.S.C. 2000bb(a)(5), which Congress was "confident" would not "adversely impair the ability of the U.S. military to maintain good order, discipline, and security." S. Rep. No.103-111, at 12.  As the Supreme Court in Burwell v. Hobby Lobby stated, "Congress, in enacting RFRA, took the position that "the compelling interest test as set forth in prior Federal court rulings is a workable test for striking sensible balances between religious liberty and competing prior governmental interests." 42 U.S.C. §2000bb(a)(5). The wisdom of Congress's judgment on this matter is not our concern. Our responsibility is to enforce RFRA as written, and under the standard that RFRA prescribes." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 729-32 (2014).

Under RFRA's standard, it is "not enough" for military officials to ask courts to "simply defer to their determination" or to accept the government's "speculation" about future cases. *Ramirez* v. *Collier*, 142 S. Ct. 1264 (2022). Rather, the military must "*prove* that denying [an] exemption is the least restrictive means of furthering a compelling government interest." *Holt* v. *Hobbs*, 574 U.S. 352, 364 (2015) (emphasis added).

The Court noted that "Col. Andrea found that '[t]he projected impact to [Plaintiff's] unit is low' if she remains 'unvaccinated.' ECF No. 22-13 at 89. He suggested that Plaintiff's unit 'has backup personnel available to provide positional coverage in the event of any operations personnel requiring quarantine.' *Id.* The 'backup personnel' appear to come, at least in part, from the fact that Plaintiff works in shifts such that there are other officers nearby who execute the same job. ECF No. 23-1 at 8 . . . To be sure, Col. Andrea's recommendation, ratified by his commanding officer, is entitled to its own due regard as an exercise of military expertise and judgment.  As

6

Plaintiff's commanding officer, he understands her role better than anyone else, and his view is certainly due even more regard if, as Plaintiff alleges, the RRT that recommended denial of Plaintiff's request neither 'talked with [Plaintiff]' or visited her command. ECF No. 23-1 at 4." Op. at 19.

Notably, there are no conflicting facts in the record on this issue. Plaintiff submitted a sworn declaration to this fact. If the Court believed there was an evidentiary issue regarding facts or credibility of the parties' submissions, at this stage in the litigation it should set the matter for an evidentiary hearing to determine if injunctive relief is warranted. *Cobell v. Norton*, 391 F.3d 251, 260-62 (D.C. Cir. 2004) (noting that courts should rely on declarations and, if necessary, an evidentiary hearing to resolve a motion for a preliminary injunction); *see also M3 USA Corp. v. Qamoum*, Case No. 20-cv-2903 (RDM), 2021 U.S. Dist. LEXIS 105778, at *27 (D.D.C. June 4, 2021) ("An evidentiary hearing, in particular, is required 'when a court must make credibility determinations to resolve key factual disputes in favor of the moving party,' and 'it is an abuse of discretion for the court to settle the question on the basis of documents alone, without an evidentiary hearing.'") (quoting *Cobell*, 391 F.3d at 261).

Defendants' declarations were largely based on factors that *Plaintiff* does not pose because she does not travel and her position is non-deployable. Defendants' analysis was based on health risks due to travel, deployments, and close contact with other service members. *See*, e.g., Defs' Memo. in Opp. at Ex. 1 (discussing spread of COVID-19 on airplanes and impacts not on Captain Creaghan's unit, but on the entire military force); Ex. 2 (stating "People who are closer than 6 feet from the infected person are most likely to get infected, especially in areas where there is poor ventilation"—Captain Creaghan does not work within six feet of others and is in an area with remarkably good ventilation, *see* Pl's Reply at Ex. 1—and explaining dangers to "those working

on ships, submarines, or engaged in the operation of aircraft and vehicles; those deployed to austere environments; or those engaged in routine field training and airborne exercises"). Again, all not applicable to Captain Creaghan). Defendants' Exhibit 5 states that COVID vaccination "is even more important for those military duties and positions, like the plaintiff, which require interaction with others in close quarters or travel, whether to an austere, deployed setting or for training at another location in the United States." Defs' Memo. in Opp. at Ex. 5 ¶ 6. A factor, again, that does not apply to Plaintiff.

The fact that Plaintiff does not deploy, or travel was not in dispute; she does not. Her Commander and Delta Commander accurately described her position as non-deployable, non-traveling, and not involving close contact, and Defendants did not dispute this. Defs' Memo. in Opp. at Ex. 12, 89-91. Defendants, under RFRA, should be required to tailor its analysis to Plaintiff.

"The least-restrictive-means standard" required under RFRA "is exceptionally demanding." *Burwell*, 573 U.S. at 729. It requires that the Defendants explain why lesser restrictive alternatives posed by Plaintiff would not work. *Id*. 729-32. And when the government accommodates other servicemembers, which Defendants do here, it "has demonstrated that it has at its disposal an approach that is less restrictive." *Id*. at 732.

Defendants should answer the question whether the lesser restrictive alternatives raised by Plaintiff are workable to achieve their compelling interest. It is not enough to conclude vaccination is the only option, especially when they managed to accommodate other exemptions. Defendants submitted one affidavit on lesser restrictive alternatives. In it, Defendants briefly discuss masks on a general level. Defs' Memo in Opp. at Ex. 7 at ¶ 11 ("The effectiveness of face masks depends upon the behavior of the wearer. Face masks are less effective if they are not tight fitting, not

8

double layered, worn only around the mouth, taken off frequently, and adjusted frequently increasing hand/finger contact with one's face."). Defendants, however, make no claim that Captain Creaghan would or ever has exhibited behavior that would call the effectiveness of masks into question. To the contrary, her Commander reported no issues with the lesser restrictive alternatives Captain Creaghan is presently following under her temporary exemption. Defs' Memo. in Opp. at Ex. 12, 89-91.

Defendants state that "As source control, consistent and correct wear of multiple-layered cloth masks filter out 50–70% of viral particles and limit the distance of spread for the remaining virus. For the wearer, consistent and correct wear of a multiple-layered cloth mask can filter out up to 50% of viral particles." Defs' Memo in Opp. at Ex. 7 at ¶ 12. The CDC reports that using an N95 mask instead of a cloth mask yields far better efficacy. https://www.cdc.gov/mmwr/volumes/71/wr/mm7106e1.htm (stating that wearing an N95 mask lowers one's risk of testing positive for COVID-19 by 83%). Defendants did not consider N95 masks as a lesser restrictive alternative. They also did not consider the mitigation measures of increased ventilation or ultraviolet germicidal irrigation, or even the efficacy of using a mutli-layered approach employing more than one method to achieve a lesser restrictive alternative. https://www.cdc.gov/coronavirus/2019ncov/community/ventilation.html;https://www.cdc.gov/coronavirus/2019-ncov/community/ventilation/UVGI.html;https://www.whitehouse.gov/ostp/news-updates/2022/03/23/lets-clear-the-air-on-covid/. Defendants should be required to perform an honest and complete assessment of lesser restrictive alternatives. Until then, they have not met their burden under RFRA.

**B.  Absent an Injunction Pending Appeal, Plaintiff Will Be Irreparably Harmed.**

Because Defendants have not met their burden under RFRA, Plaintiff will be irreparably harmed absent injunctive relief.  *Burwell*, 723 F.3d at 1146 ("establishing a likely RFRA violation satisfies the irreparable harm factor") (citing *Kikumura v. Hurley,* 242 F.3d 950, 963 (10th Cir. 2001)).  Plaintiff's religious exercise guaranteed by the First Amendment is protected by RFRA. Therefore, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable harm." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2021) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.)); *see also Priests for Life v. U.S. Dep't of Health and Human Servs.*, 772 F.3d 229, 276 (2014).  Therefore, the burden placed on Plaintiff by the denial of her request for a religious accommodation and the devasting effects of being reprimanded due to her sincerely held religious beliefs mean that "the very rights [she] seeks to protect will have been destroyed" absent an injunction.  *Council on Am. Islamic Relations v. Gaubatz*, 667 F. Supp. 2d 67, 76 (D.D.C. 2009); *see also* ECF No. 23 at Exs. 1 and 2 (discussing burden of Plaintiff's religious beliefs and the irreparable harm imposed by carrying out Defendants' 5 April 2022 Order).

**C.  Granting an Injunction Pending Appeal Will Neither Substantially Injure Any Other Party nor Harm the Public's Interest.**

Granting an injunction would preserve the status quo that the parties have been operating under since 2 November 2021.  Since the injunction involves the deprivation of Plaintiff's First Amendment rights protected by RFRA, and absent injunctive relief those First Amendment rights will be violated, "there is always a strong public interest" in not abridging constitutional liberty. *America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016); *see also Priests for Life v. U.S. Dep't of Health and Human Servs*., 772 F.3d 229, 276 (2014); *Roman Cath. Diocese*, 141 S. Ct. at 68.  Finally, even if these two factors did not decidedly favor Plaintiff's request for injunctive

10

relief pending appeal, such a finding alone would not overcome Plaintiff's showing of a substantial

case on the merits and irreparable injury if such relief is denied. *See Ctr. For Int'l Envtl. Law*, 240

F. Supp. 2d at 23.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that her motion be granted and

that this Court stay its Order of May 12, 2022 and enter an injunction pending appeal precluding

Defendants from enforcing punishment against Plaintiff under their 5 April 2022 Order until the

Court of Appeals has resolved Plaintiff's appeal from that Order.

Date: May 18, 2022                              Respectfully submitted,

                                                THOMAS MORE LAW CENTER

                                                */s/ Richard Thompson*
                                                Richard Thompson, MI0053

                                                */s/ Erin Elizabeth Mersino*
                                                Erin Elizabeth Mersino, MI0060
                                                24 Frank Lloyd Wright Drive
                                                J-3200
                                                Ann Arbor, MI 48106
                                                Ph: (734) 826-2001
                                                Email: rthompson@thomasmore.org
                                                       emersino@thomasmore.org

11

**CERTIFICATE OF SERVICE**

I hereby certify that on May 18, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the court's electronic filing system. Parties may access this filing through the court's system. I further certify that a copy of the foregoing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically.

THOMAS MORE LAW CENTER

/s/ *Richard Thompson*
Richard Thompson, MI0053

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CAPTAIN MARIELLA CREAGHAN** Plaintiff, | Case No.  1:22-cv-00981 |
| v. | |
| **LLOYD J. AUSTIN III**, **FRANK KENDALL, LT. GEN. STEPHEN N. WHITING**, and **LT. GEN. ROBERT I. MILLER**, | |
| Defendants. | |

**[PROPOSED] ORDER**

_____

Upon Plaintiff Captain Mariella Creaghan's Motion for Injunctive Relief Pending Appeal and for good cause shown, the motion is hereby GRANTED.

An injunction during the pendency of the appeal is appropriate in this case to preserve the status quo and because (1) Plaintiff can demonstrate a substantial likelihood of success on the merits of her claims arising under the Religious Freedom Restoration Act (42 U.S.C. § 2000bb, *et seq*.) ("RFRA"); (2) the momentary loss of religious freedom under RFRA constitutes irreparable harm as a matter of law; (3) the balance of equities favors protecting Plaintiff's religious exercise; and (4) it is always in the public interest to uphold fundamental rights.

Therefore, Defendants, their officers, agents, servants, employees, and attorneys are TEMPORARILY ENJOINED from 1) enforcing against Plaintiff the punishments contained within their 5 April 2022 Order that violate Plaintiff's sincerely held religious beliefs as described in Plaintiff's Verified Complaint (ECF No. 7)  and from 2) substantially burdening, prosecuting, or taking any adverse or retaliatory action against Plaintiff as a result of, arising from, or in conjunction with Plaintiff's request for a religious accommodation or Defendants' 5 April 2022 order denying Plaintiff a religious accommodation.

1

So Ordered this ____ day of May 2022.

_____

Honorable Judge Colleen Kollar-Kotelly

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| MARIELLA CREAGHAN, |
|        Plaintiff |
|    v. |
| LLOYD AUSTIN, in his official capacity as Secretary of the United States Department of Defense, *et al.*, |
|        Defendants. |

Civil Action No. 22-0981 (CKK)

**ORDER**
(May 12, 2022)

For the reasons discussed in the accompanying Memorandum Opinion, it is hereby

**ORDERED**, that Plaintiff's [11] Motion for a Temporary Restraining Order and/or

Preliminary Injunction is **DENIED**.  It is further

**ORDERED**, that the parties shall file, on or before **June 2, 2022**, a joint status report

explaining how they intend to proceed in this matter.

      **SO ORDERED.**

Dated: May 12, 2022

                     /s/
                     COLLEEN KOLLAR-KOTELLY
                     United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| MARIELLA CREAGHAN, |
| Plaintiff |
| v. |
| LLOYD AUSTIN, in his official capacity as Secretary of the United States Department of Defense, *et al.*, |
| Defendants. |

Civil Action No. 22-0981 (CKK)

**MEMORANDUM OPINION**
(May 12, 2022)

Plaintiff Mariella Creaghan ("Plaintiff" or "Captain Creaghan") is a Captain in the United States Space Force and religious objector of one of several vaccines mandated by her branch of service. Captain Creaghan's [11] Motion seeks preliminary relief from this Court barring Defendants from "punishing, prosecuting, or taking any adverse or retaliatory action against Plaintiff as a result of, or arising from, or in conjunction with Plaintiff's request for a religious accommodation or Defendants' denial of Plaintiff's religious accommodation." As the Court explained in a similar case, requests for religious exemptions from military-mandated medical requirements "raise particularly difficult questions that implicate a storm of colliding constitutional interests." *Navy SEAL v. Austin*, 2022 WL 1294486, at *1 (D.D.C. Apr. 29, 2022). Although this case is much closer than *Navy SEAL*, the Court remains concerned that it lacks the competence to "evaluate the merits of military [epidemiological and tactical] expertise" or to "weigh technical issues of public health and immunology" necessary to resolve the case. *Id.* at *5. Justiciability is all the more uncertain given the unfixed, evolving science on which *this* vaccination mandate is based. These concerns permeate the merits of Plaintiff's claims as well.

1

Accordingly, after careful review of the pleadings,[1] the relevant legal and historical authorities, and the entire record, Court shall **DENY** Plaintiff's [11] Motion for Preliminary Injunction.

## I.   BACKGROUND

### A.  General Background

As this Court has previously noted, military vaccine mandates have a long history in this country.  "[E]xecutive immunization requirements predate the birth of this country, with George Washington famously requiring members of the Continental Army to be inoculated against smallpox."  *Feds for Med. Freedom v. Biden*, 25 F.4th 354, 357 n.6 (5th Cir. 2022) (Higginson, J., dissenting).  Until August 2021, the United States Department of the Air Force ("Air Force") mandated a number of vaccines, including those against influenza, hepatitis A & B, mumps, rubella, and tetanus.  *See* ECF 22-11 at 9.  On August 24, 2021, the Secretary of Defense directed the Air Force to add another vaccine to the list—vaccination combatting COVID-19.  *Id.* at 8.  The Secretary of Defense explained that, "[t]o defend this Nation, we need a healthy and ready force."  *Navy SEAL*, 2022 WL 1294486, at *2.  Accordingly, "[a]fter careful consultation with medical experts and military leadership, and with the support of the President [of the United States], [the Secretary of Defense] determined that mandatory vaccination against coronavirus

---

[1]  This Memorandum Opinion focuses on the following documents:
- Plaintiff's Complaint, ECF No. 3;
- Plaintiff's Memorandum in Support of Plaintiff Navy SEAL 4's Motion for Preliminary Injunction, ECF No. 14-1 ("Motion" or "Mot.");
- Defendants' Response in Opposition to Plaintiff Navy SEAL 4's Motion for Preliminary Injunction, ECF No. 22 ("Opp.");
- Plaintiff's Reply in Support of Plaintiff Navy SEAL 4's Motion for Preliminary Injunction, ECF No. 25 ("Repl.").

In an exercise of its discretion, the Court finds that holding oral argument would not be of material assistance in rendering a decision.

disease 2019 (COVID-19) is necessary to protect the Force and defend the American people."
*Id.*

Consistent with that order, the Secretary of the Air Force, on September 3, 2021, directed all active duty servicemembers (within the Air Force and Space Force) to be fully vaccinated against COVID-19 by November 2, 2021.[2]  All Air Force orders are applicable to the United States Space Force ("Space Force") as a constituent branch of the Air Force and all Space Force servicemembers (called "Guardians").  ECF 22-4 at 1.  On December 7, 2021, the Secretary of the Air Force issued an order providing for "medical, religious[,] or administrative exemptions," and temporarily exempted servicemembers from discharge or adverse action while exemption requests were pending.[3]  The recognition of these exemptions was largely perfunctory, as requests for COVID-19 vaccination exemptions are governed by the same rules and regulations, active since 2018, that govern all other requests for exemptions from other vaccinations.  ECF 22-4 at 2.  As of April 26, 2022, the Air Force has granted 460 medical exemptions (including seven for Space Force Guardians), and 41 religious exemptions.[4]

Pursuant to that policy, AFI 48-110_IP (Oct. 7, 2013) *as amended* (Feb. 16, 2018), a Guardian seeking a religious exemption first submits a written request to the applicable commanding officer.  ECF 22-5 at 2.  The Guardian then consults with the applicable commanding officer and a medical military provider, who address, respectively, the effect of

---

[2] DAF, "Mandatory Coronavirus Disease 2019 Vaccination of Department of the Air Force Military Members" (Sept. 3, 2021), https://www.hqrio.afrc.af.mil/Portals/149/Documents/COVID/20210903%20DAF_%20SecAF%20Memo%20-%20Mandatory%20Coronavirus%20Disease%202019%20Vaccination%20of%20Department%20of%20the%20Air%20Force%20Military%20Members.pdf?ver=YogX1KMirgEUGIvzJtgUSw%3D%3D.
[3] DAF, "Supplemental Coronavirus Disease 2019 Vaccination Policy" (Dec. 7, 2021), https://www.af.mil/Portals/1/documents/2021SAF/12_Dec/Supplemental_Coronavirus_Disease_2019_Vaccination_Policy.pdf.
[4] DAF, "COVID-19 Statistics - Apr. 26, 2022" https://www.af.mil/News/Article-Display/Article/2989918/daf-covid-19-statistics-apr-26-2022/.

nonvaccination on the Guardian's mission and the Guardian's health.  *Id.* at 4.  The Guardian must also consult with an Air Force chaplain, and the chaplain assesses the sincerity and religiosity of the exemption request.  *Id.*  With these three assessments in hand, the omnibus request is reviewed by each commanding officer in the Guardian's chain of command.  *Id.* at 5. Each commanding officer makes a recommendation (termed an "endorsement") as to whether to grant the exemption request, but the ultimate decision is made by the "approval/disapproval authority."[5]  For Space Force Guardians, the approval authority is the Commander of Space Operations Command, Lt. Gen. Stephen N. Whiting.  *See id.* at 18.  Disapproval may be appealed to the Air Force Surgeon General.  ECF No. 22-5 at 2.  To assist Lt. Gen. Whiting in his review, as the approval authority, the Space Force employs "Religious Resolution Teams" ("RRT").  DAFI 52-201 at 6.  These teams are made up of at least one commander, chaplain, public affairs officer, and staff judge advocate.  *Id.*  Where a medical objection is raised, the team must also include a medical provider.  *Id.*  At each stage of review, those involved determine: (1) the sincerity of the religious request; (2) the military interests at issue; (3) whether those interests are compelling; (4) whether vaccination substantially burdens the Guardian's religious belief(s); and (4) whether vaccination is the least restrictive means to accomplish the military's interests in vaccinating that particular Guardian.  *Id.* at 7-8.

A Guardian whose appeal has been denied and who still objects to vaccination is subject to discipline, up to and including administrative, general (under honorable conditions) discharge and military courts-martial.  ECF No. 6 at 4-5.  Before adverse action may be taken on continued objection to COVID-19 vaccination, noncompliance must first be reviewed by a high-ranking officer (a Colonel or higher).  *Id.* at 2.

---

[5] DAFI 52-201 at 8 (June 23, 2021), https://static.e-publishing.af.mil/production/1/af_hc/publication/dafi52-201/dafi52-201.pdf.

4

**B.  Background Specific to Plaintiff**

Plaintiff is a Space Force Captain assigned to the Space Force's National Reconnaissance Office ("NRO") in Chantilly, Virginia.  ECF No. 22-10 at 1.  Her precise role is somewhat difficult to discern from the record thus far, perhaps because much of it involves particularly sensitive, classified operations.  From what the Court understands, the NRO provides offensive and intelligence support to the Air Force, other branches of the military, and the intelligence community.  ECF No. 22-10 at 2.  It manages a number of satellite systems and spacecraft that are evidently capable of engaging in electronic warfare and that also gather signals and geospatial intelligence.  Captain Creaghan is a "Mission Director."  *Id.*  She "has operational control and on-line decision-making responsibilities for all aspects of NRO operations during [her] shift."  *Id.*  That includes the direction of those assets, ensuring the operational health of the assets, overseeing the security of the site in which those assets are managed, and overseeing "daily reports for [the] NRO and government senior leaders."  *See id.* at 2-3.  She works in a compartmentalized area known as a "SCIF" (Secure Compartmentalized Information Facility) that is fully indoors and limits airflow.  *Id.* at 3.  Because all her work is classified, she cannot telework.  *See id.*  The nature of her work evidently involves frequent interpersonal contact within her workspace.  *See id.* at 4.

On September 30, 2021, Plaintiff requested a religious accommodation.  She articulated a religious belief predicated on the religious view that life begins at conception, and insisted that receiving any COVID-19 vaccine would contravene her sincerely held belief because each vaccine's development involved fetal cells in some way.  ECF 22-13 at 22-24.  She included in her request a litany of supporting documents from religious figures in her life testifying to the sincerity of her belief and its connection to her Catholic faith.  *See, e.g.*, ECF No. 22-13 at 31.

5

On October 18, 2021, an Air Force chaplain concluded that she held a sincerely held religious belief and that vaccination against COVID-19 would substantially burden that belief.  *Id.* at 62. On December 14, 2021, the Religious Resolution Team assigned to Captain Creaghan's request agreed with the chaplain, and also concluded that the Space Force had a compelling government interest in requiring her health as a Space Force Mission Director and that vaccination was the least restrictive means of accomplishing that interest.  *Id.* at 63-66.  That report concluded that "[s]ervice members have a responsibility to maintain their health and fitness, meet individual medical readiness requirements, and report medical and health issues that may affect their readiness to deploy or [medical] fitness to continue serving in an active status."  *Id.* at 66.

Notwithstanding this finding, Captain Creaghan's direct commanding officer, Lt. Col. Benjamin Andrea ("Col. Andrea") recommended approval of Captain Creaghan's request.  *Id.* at 88.  Most relevant for present purposes, he found that "[t]he projected impact to [Plaintiff's] unit is low" if she remains "unvaccinated."  *Id.* at 89.  He suggested that Plaintiff's unit "has backup personnel available to provide positional coverage in the event of any operations personnel requiring quarantine."  *Id.*  Col. Andrea also expressed a personal belief that the risk to Plaintiff's health was acceptable because Plaintiff "supplied sufficient medical evidence indicating presence of the SARS-CoV-2 antibody."  *Id.* at 90.  The record does not suggest that Plaintiff's direct commanding officer had any medical expertise to make such a judgment.

On the same form, Plaintiff's second-level commanding officer circled "concur" and "approval" to ratify, without explanation, Col. Andrea's recommendation.  *Id.* at 90.  On January 30, 2022, Plaintiff's third-level commanding officer, Major General Donna D. Shipton, disagreed, finding that "there are no less restrictive means available to meet the government's compelling interest without placing in jeopardy the health, safety, and availability of Capt[ain]

Creaghan." *Id.* at 92.  Captain Creaghan, Major General Shipton continued, "makes important contributions to the mission at [her] NRO [facility] . . . where she is responsible for directing daily operations and maintenance of NRO space and ground systems." *Id.*  Major General Shipton therefor concluded that placing Captain Creaghan at a "higher risk of prolonged illness, hospitalization, and death" by granting a mandate would unacceptably jeopardize Captain Creaghan's military duties and the NRO's military mission.  *See id.*

Weighing these differing recommendations, Lieutenant General Whiting sided with Major General Shipton and the interdisciplinary RRT.  *Id.* at 93.  He found that "as a Mission Director responsible for directing daily operations and maintenance for NRO space and ground systems, and ensuring overall spacecraft health and mission success," vaccination was the least restrictive means to accomplish military goals.  *Id.*  Lieutenant General Whiting's finding was limited to "the spread of the COVID-19 virus," however, and made no mention of the necessity of vaccination to protect Plaintiff's health.  *See id.*  On appeal, Lieutenant General Robert Miller, the Surgeon General of the Air Force, affirmed Lieutenant General Whiting's decision on March 25, 2022, concluding that lack of Plaintiff's immunization "in [Plaintiff's] dynamic [military] environment, and aggregated with other non-immunized individuals in steady state operations, would place health and safety, unit cohesion, and readiness at risk."  *Id.* at 103.  Like Lieutenant General Whiting, Lieutenant General Miller's findings appear to rest almost entirely on transmission, although an attached appendix does mention that vaccinated "personnel are much less likely to develop severe disease, be hospitalized, or die as a result of being vaccinated."  *Id.* at 105.

Denial in hand, Plaintiff filed for suit for injunctive relief in this court.  Although the Space Force may take any number of disciplinary or administrative actions against Plaintiff for

continued religious objection to Space Force medical requirements, no such action, including the institution of separation proceedings, has been taken against Plaintiff as of April 29, 2022.  ECF No. 22-10 at 13.

## II.    LEGAL STANDARD

Preliminary injunctive relief is an "extraordinary remedy that may only be awarded upon a *clear showing* that the plaintiff is entitled to such relief."  *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (emphasis added) (quoting *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)); *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).[6]  A plaintiff seeking preliminary injunctive relief "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of the equities tips in his favor, and [4] that an injunction is in the public interest."  *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014).  When seeking such relief, "the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction."  *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014).  "The four factors have typically been evaluated on a 'sliding scale,'" whereby if "the movant makes an unusually strong showing on one of the factors, then [he] does not necessarily have to make as strong a showing on another factor."  *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009).

---

[6]  Plaintiff argues in her supplemental briefing that the Court in *Navy SEAL* "seem[ed] to require a heightened standard for granting a preliminary injunction."  Pl.'s Supp. Br. at 4.  Plaintiff appears to rest that argument on the Court's conclusion that the plaintiff in *Navy SEAL* "has not carried his burden to show that he is 'clearly warranted' preliminary relief."  2022 WL 1294486, at *4.  To be clear, the Court used the term "clearly warranted" to restate the D.C. Circuit's instruction that a preliminary injunction must only be granted "upon a clear showing that the plaintiff is entitled to such relief."  *Sherley*, 644 F.3d at 392.

It is unclear whether the United States Court of Appeals for the District of Columbia Circuit's ("D.C. Circuit") sliding-scale approach to assessing the four preliminary injunction factors has survived the Supreme Court's decision in *Winter*. *See Save Jobs USA v. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 112 (D.D.C. 2015). Several judges on the D.C. Circuit have "read *Winter* to suggest if not to hold that 'a likelihood of success is an independent, free-standing requirement for a preliminary injunction.'" *Sherley,* 644 F.3d at 393 (quoting *Davis*, 571 F.3d at 1296 (Kavanaugh, J., concurring)). However, the D.C. Circuit has yet to hold definitively that *Winter* has displaced the sliding-scale analysis. *See id.* In light of this ambiguity, the Court shall consider each of these factors and shall only evaluate the proper weight to accord to the likelihood of success if the Court finds that its relative weight would affect the outcome. *Accord Church v. Biden*, --- F. Supp. 3d ---, 2021 WL 5179215, at *7 (D.D.C. 2021).

### III. DISCUSSION

For the most part, this case raises the same questions as those in *Navy SEAL*. That said, the parties' supplemental briefing in response to the Court's opinion in *Navy SEAL* have narrowed the issues somewhat. The parties do not appear to seriously contest the Court's discussion of the merits of Free Exercise and Equal Protection claims as to religious objections to military vaccination orders. Rather, they contest: (1) the Court's justiciability discussion; and (2) the application of RFRA in military context, i.e., what degree of deference the military is due on the merits of a RFRA claim and whether a vaccination order is narrowly tailored as to Plaintiff. Additionally, this case raises two new questions that were not present in *Navy SEAL*: (1) whether a servicemember has Article III standing to contest the denial of a religious accommodation where separation proceedings (or any other adverse action) have not yet begun;

9

and (2) whether administrative, general (under honorable conditions) discharge is irreparable harm as a matter of law.  As such, the Court will proceed to these four questions and refer to its opinion in *Navy SEAL* for the remaining issues presented in the parties' briefing.

### A.  Standing

First, the Government argues that Plaintiff lacks standing to challenge the denial of her requested religious accommodation because separation proceedings have not yet begun.  Not so.

To receive a preliminary injunction, the moving "party must show, among other things, a 'substantial likelihood of success on the merits.'"  *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir 2015).  "The merits on which plaintiff must show likelihood of success encompass not only substantive theories but also establishment of jurisdiction," including Article III standing.  *See Elec. Priv. Info. Ctr. v. Dep't of Com.*, 928 F.3d 95, 104 (D.C. Cir. 2019).  To show standing, a plaintiff must show an "injury-in-fact that is 'imminent' or 'certainly impending.'"  *Am. Petrol. Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2013).

Defendants seem to construe the alleged injury as separation proceedings or other adverse action predicated upon the denial of Plaintiff's accommodation request.   Plaintiff, however, relies on, the deprivation of a statutory or constitutional right as  an "injury-in-fact" triggering Article III jurisdiction.  *See Warth v. Seldin*, 422 U.S. 490, 500 (1975).  Insofar as Plaintiff has exhausted her administrative remedies *to receive a religious exemption from COVID-19 vaccination*, the Court agrees that Plaintiff has  demonstrated a likelihood  success in demonstrating that she ahs standing to challenge that denial.

### B.  Justiciability

In *Navy SEAL*, the Court explained that "'[c]laims are nonjusticiable where: (1) their resolution requires decisions which are not matters of judicial expertise but are matters of

10

management, public policy or technical expertise; (2) the relief requested usurps the functions of a coordinate branch of government; or (3) the relief requested is not justiciably manageable." *Nat'l Coal Ass'n v. Marshall*, 510 F. Supp. 803, 805 (D.D.C. 1981) (citing *Baker*, 369 U.S. at 217). Here, as in *Navy SEAL*, there remain serious questions as to whether a judicial challenge to a military medical requirement (1) "usurps the functions" of powers committed to the Executive through the Commander-in-Chief Clause and (2) involves scientific determinations that "are not matters of judicial expertise but are matters of . . . technical expertise." 2022 WL 1294486, at *5.

As to military judgments, the Court stressed that some are undoubtedly justiciable. Justiciable military cases involving the rights of military personnel generally do not require evaluation of strategic or technical decisions. Rather, they look to whether a service member has received constitutionally sufficient process, or to evaluate constitutional claims that do not involve a particularly technical record. *See, e.g.*, *Piersall v. Winter*, 435 F.3d 319, 324 (D.C. Cir. 2006) (justiciable where review was limited to whether decision by civilian administrative board was arbitrary or capricious); *Doe 2 v. Shanahan*, 755 F. App'x 19, 23 (D.C. Cir. 2019) (suggesting that a "blanket ban" prohibiting indefinitely the accession of transgender individuals into the military would be justiciable).

At the same time, most cases involving fitness for duty are generally not justiciable, sometimes because they involve complex medical judgments, and sometimes because they involve highly subjective judgments regarding the servicemember's military capabilities. *See Emory v. Sec'y of Navy*, 819 F.2d 291, 294 (D.C. Cir. 1987); *see also, e.g.*, *Kries v. Sec'y of Air Force*, 866 F.2d 1508, 1512 (D.C. Cir. 1989) ("This court is not competent to compare appellant with other officers competing for [] a promotion."); *Charette v. Walker*, 996 F. Supp. 46, 50

11

(D.D.C. 1998) (holding a former military officer's "request for reinstatement . . . not justiciable"); *Harkness v. Sec'y of Navy*, 858 F.3d 437, 444-45 (6th Cir. 2017) ("Duty assignments lie at the heart of military expertise and discretion, and we are wary of intruding upon that sphere of military decision-making." (internal quotation marks omitted)). Cases involving actual *strategic* decisions are perhaps the epitome of "complex, subtle, and professional decisions" otherwise left to the Commander-in-Chief and their subordinates. *See Short v. Berger*, 2022 WL 1051852, at *5 (C.D. Cal. Mar. 3, 2022); Trans. at 42, ECF No. 22, *Dunn v. Austin*, No. 2:22-cv-00288-JAM-KJN (E.D. Cal. Feb. 28, 2022), *application for injunction pending appeal denied*, No. 21A599, Doc. 7 (U.S. Apr. 15, 2022); *see also Orloff v. Willoughby*, 345 U.S. 83, 91-92 (1953).

In response, Plaintiff points the Court to *Doe v. Rumsfeld*, 297 F. Supp. 2d 119 (D.D.C. 2003). In that case, which is not binding upon this Court, two military servicemembers challenged an anthrax vaccination mandate under the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq. Id.* at 123. The question in that case was whether the Food and Drug Administration had classified the particular vaccine "as an investigational new drug or as a drug unapproved for its intended use." *Id.* at 131. An applicable federal law provided that the military may not "administer[] investigational new drugs, or drugs unapproved for their intended use, to serve members without their informed consent." *Id.* at 125. The merits question, therefore, was not the wisdom of mandating a particular vaccine generally or to particular servicemembers, but rather whether a particular vaccine fell within a certain legal category that could be determined through traditional tools of statutory interpretation. That question fell within the familiar ambits of the APA—whether a federal agency had acted arbitrarily or capriciously. *Id.* at 128.

On justiciability, *Doe* in fact employed a similar analysis as this Court in *Navy SEAL*. The *Doe* court asked whether judicial intervention involved "the exercise of military expertise or discretion," and evidently concluded otherwise. *See id.* at 127. Rather, an APA claim is justiciable insofar as it merely asks whether the military acted arbitrarily and capriciously in its procedural review. *See id.* at 128. The Court would be inclined to agree that those sorts of claims are justiciable because (1) the test is concerned predominantly with legal process and (2) it does not involve second-guessing the wisdom of military judgments dealing with readiness and lethality. As such, the Court is not inclined to depart from its tentative conclusion in *Navy SEAL* that RFRA challenges to military medical requirements more likely raise justiciability concerns.

As for justiciability regarding scientific determinations that "are not matters of judicial expertise but are matters of . . . technical expertise," Plaintiff offers little argument to the contrary. To support such a proposition, Plaintiff cites, in a footnote, *Tandon v. Newsom*, 141 S. Ct. 1294 (2021) and *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020). In the former, and as this Court explained in *Navy SEAL*, the Supreme Court did not come close to determining the immunological wisdom of certain public health restrictions. Rather, it held that a state may not treat religious and non-religious institutions differently when imposing a public health restriction. 141 S. Ct. at 1297-98. Indeed, of the federal courts that have enjoined federal health measures in the recent past, they have done so almost exclusively on procedural, and not technical, grounds. *See, e.g.*, *Georgia v. Biden*, --- F. Supp. 3d ---, 2021 WL 5779939, at *9-10 (S.D. Ga. Dec. 7, 2021) (enjoining federal contractor vaccine mandate on grounds that mandate exceeded statutory authority); *Health Freedom Def. Fund, Inc. v. Biden*, --- F. Supp. 3d ---, 2022 WL 1134138, at *12 (M.D. Fla. Apr. 18, 2022) (enjoining federal mask mandate on airplanes on grounds that mandate exceeded statutory authority). On the other hand, this case and *Navy SEAL*

require a detailed review of the scientific, medical, immunological, and epidemiological bases of a vaccination mandate *as to Plaintiff* to answer whether vaccination is the least restrictive means of accomplishing Plaintiff's specific military duties. These are fraught questions of medical science that the judiciary generally "lacks the background, competence, and expertise to assess." *See S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1614 (2020) (Roberts, C.J., concurring). Accordingly, both military and scientific justiciability concerns remain in this case.

## C. Merits

Before proceeding to the likelihood of success on Plaintiff's RFRA claim, the heart of this case, a word on Plaintiff's Free Exercise claim is necessary. Plaintiff's supplemental briefing does not appear to seriously contest that the rational basis test in *Goldman v. Weinberger*, 475 U.S. 503 (1986) remains good law. Plaintiff writes that RFRA "deliberately narrowed" *Goldman*'s holding that a Jewish servicemember had no Free Exercise right to wear a yarmulke in military uniform. 475 U.S. 504. It likely goes without saying that Congress cannot narrow a constitutional holding, although it can provide statutory rights beyond that which the Constitution protects. Plaintiff seems to also argue that, even if *Goldman* stands, it applies only to "operational, strategic, or tactical" military decisions. Pl.'s Supp. Br. at 8. The Court does not find such a holding in that decision, and the Court would be hard-pressed to consider grooming standards "operational, strategic, or tactical."[7]

As to RFRA, the law provides that the government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42

---

[7] Plaintiff in her supplemental briefing seems to suggest a historical right to religious accommodation during military service. Whatever history Plaintiff may bring to bear, history cannot rewrite statutes, *Spicer v. Biden*, --- F. Supp. 3d ---, 2021 WL 5769458, at *5 (D.D.C. Dec. 4, 2021) (DLF), and Plaintiff does not ask the Court to overturn a century of Supreme Court precedent articulated in *Goldman* and its progeny by finding such a right in the Free Exercise Clause as an original matter. Responding briefly, however, although Plaintiff accurately notes

14

U.S.C. § 2000bb-1(a).  To prevail on a RFRA claim, a plaintiff must first show a "religious exercise" that has been burdened.  *Wilson v. James*, 139 F. Supp. 3d 410, 424 (D.D.C. 2014) (APM); *United States v. Sterling*, 75 M.J. 407, 415 (CAAF 2016).  If confronted with a "religious exercise," the government may impose a substantial burden on that religious exercise "only if it demonstrates that the application of the burden to the person—(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest."  *Id.* § 20000bb-1(b).

The parties do not contest that Plaintiff maintains a sincerely held religious belief and that vaccination would substantially burden that belief.  Rather, the parties mainly contest this Court's understanding of RFRA in the military context and whether the facts in this case

---

that colonial authorities granted religious exemptions from service during the colonial period, it is inaccurate to say that once drafted, militiamen could always be religiously exempted from otherwise necessary military duties.  *See, e.g.*, Peter Brock, "Colonel Washington and the Quaker Conscientious Objectors," 53 Quaker History 12, 14 (1964).  Indeed, the military history of colonial America and the Early Republic suggest that most early military leaders considered strict military discipline absolutely necessary to accomplish military ends, even more so among those not conscripted to fight.  *See, e.g.*, Bradley J. Nicholson, "Courts-Martial in the Legion Army: American Military Law in the Early Republic, 1792-1796," 144 Mil. L. Rev. 77, 84 (1994) (further noting that early American military law essentially incorporated British law).

Moreover, the fact that some colonial legislatures gave statutory reprieve from a militia draft should not distract from the colonial history establishing a deep skepticism of religious objectors having a *right* to avoid military service.  *See* Ellis West, *The Right to Religion-Based Exemptions in Early America: The Case of Conscientious Objectors to Conscription*, 10 J.L. & Religion 367, 376-77 (1994).  *Cf. also Fulton v. City of Phila.*, 141 S. Ct. 1868, 1906 (2021) (Alito, J., concurring in the judgment) (noting Free Exercise claims have long been due different constitutional treatment in military context notwithstanding colonial reprieves from service).

Even during the nascent civil liberties movement during the First World War, legal authorities met conscientious objectors with a great degree of incredulity.  *See* Christopher Capozzola, *Uncle Sam Wants You* 82 (2008) (recounting letter authored by Justice Harlan Fiske Stone in which he wrote, reflecting on his service as an adjudicator of religious exemptions, that he had not had "a change of heart" after rejecting a number of requests because "one must obey some laws of which [he] does not approve, and even participate in a war [one may] think ill advised").  This cursory historical discussion is largely academic, however.  Whatever history's purported role in resolving RFRA disputes, the parties have not fully briefed it, and the Court need not rest any legal analysis upon it.

15

mandate a different result based on that law.  In *Navy SEAL*, the Court looked to *Singh v. McHugh*, 109 F. Supp. 3d 72, 86 (D.D.C. 2015) (ABJ) *amended and superseded in irrelevant part* 185 F. Supp. 3d 201 (D.D.C. 2016).  After a discussion of that case, RFRA's text, and its legislative history, the Court agreed with *Singh*'s main holding that RFRA applies to the military, and any military regulation that substantially burdens free exercise is due RFRA's statutory strict scrutiny.  *Navy SEAL*, 2022 WL 1294486, at *8.  Nevertheless, the Court "stresse[d] that context is important."  *Id.*  In part relying on *Singh*'s discussion of RFRA's legislative history, the Court concluded that the best reading of the statute, at least with a dearth of authority and a relatively undeveloped record in *Navy SEAL*, was that the military's technical and scientific conclusions should receive due regard in determining whether those technical and scientific judgments are *in fact* the least restrictive means to accomplish the military interest at issue as to a particular military claimant.  *Id.*  This very tentative conclusion is also rooted in other Supreme Court decisions generally cautioning that the judicial power is relatively ill-equipped to resolve highly technical conclusions of fact where their resolution is textually committed to a coordinate branch in the first instance.  *See id.*

The Government appears to agree with this approach whole-heartedly.  Defs.' Supp. Br. at 1-2.  Plaintiff, however, cautions that such an approach "[a]pplies different levels of deference to RFRA claims, according to the subject of the sincerely held religious belief, would result in treating religious practice unequally."  Pl.'s Supp. Br. at 7.  The Court sees nothing in *Navy SEAL* even remotely suggesting such a test.

Rather, the Court suggested that the military's technical, *scientific* findings supporting the wisdom of a particular, generally applicable military order may be due some regard greater than those resting on no such findings.  *See Navy SEAL*, 2022 WL 1294468, at *10.  In other words,

16

the military receives *no* degree of deference based on the *exercise regulated*, but on the scientific and strategic conclusions on which the regulation is based.  Beyond a citation to *Katcoff v. Marsh*, 755 F.2d 223, 234 (2d Cir. 1985), which stands for the unremarkable proposition that soldiers enjoy *some* First Amendment protections as a matter of constitutional law, Plaintiff offers no authority suggesting that the Court should take a different tack.  Plaintiff will undoubtedly have an opportunity to do so as this case progresses, but at this early stage of the case where Plaintiff must show likelihood of success on the merits (among other things), the Court is not inclined to change tack just yet.

   That brings the Court to the most important aspect of Plaintiff's request for preliminary relief:  applying *her* situation to the law set out in *Navy SEAL*.  Doing so, and assuming this case is justiciable in the first place, Plaintiff makes a much stronger showing of likelihood of success on the merits on her RFRA claim than the plaintiff in *Navy SEAL*.

   As to whether the military has a compelling government interest in mandating various vaccines, and COVID-19 vaccination in general, "the [Space Force] has a compelling interest in preventing COVID-19 from impairing its ability to carry out its vital responsibilities, as well as a compelling interest in minimizing any serious health risk to [Space Force] personnel."  *See Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301, 1305 (2022) (Alito, J., dissenting).  Facing the same orders at issue in this case, another district court that granted preliminary relief nevertheless agreed that the Air Force undoubtedly shares that compelling government interest. *Air Force Officer v. Austin*, --- F. Supp. 3d ---, 2022 WL 468799, at *9 (M.D. Ga. Feb. 16, 2022) ("It would be a waste of time and wrong to state that '[s]temming the spread of COVID-19' isn't a compelling interest—the Supreme Court has already decided it is.").  The Court is again inclined to conclude that "the *sine qua non* of military interests is keeping an individual

servicemember fit enough to accomplish their tasks in furtherance of national security." *Navy SEAL*, 2022 WL 1294486, at *9.

In a RFRA case, however, the more important question is whether the military has a compelling government interest in vaccinating the particular servicemember at issue. Plaintiff, like the plaintiff in *Navy SEAL*, seems to suggest that the military's general compelling interest in ensuring the health of its servicemembers does not distill to a compelling interest in ensuring that Plaintiff remains healthy enough to accomplish her duties. As the Court explained in *Navy SEAL*, it likely does by logic alone, but the Court nevertheless must look to Captain Creaghan's duties specifically.

As Captain Creaghan argues at length in her supplemental briefing, her role is quite different from a Navy SEAL. Unlike a Navy SEAL, who must be deployable at a moment's notice and whose sickness on a mission could doom an entire team, it appears Captain Creaghan does not deploy and works solely in an office setting. ECF No. 22-10 at 2. Captain Creaghan argues that this difference alone means the military does not have a compelling interest in *her* vaccination. Pl.'s Supp. Br. at 1-2.

To the extent that the main benefit of vaccination against the most prevalent SARS-CoV-2 variants and subvariants at the moment is reducing the severity and duration of disease, the inquiry centers on the military consequences of Captain Creaghan's heightened risk of severe COVID absent vaccination. *See Navy SEAL*, 2022 WL 1294486 at *10. The question is both actuarial, to the extent that Plaintiff presents a factual question about the degree of risk, and tactical, to the extent to which Plaintiff challenges Defendants' insistence that Plaintiff's vaccination is necessary to safeguard the military tasks with which she has been entrusted. As the Court explained in *Navy SEAL*, assuming such a question is justiciable, there may well be

18

some roles in the military that are entirely fungible and servicemembers who are entirely replaceable with little to no adverse effects on military interests.  Plaintiff argues that this is such a case, relying on her direct commanding officer's initial recommendation that Plaintiff's request for an exemption be approved.  Pl.'s Supp. Br. at 4.

As the Court explained above, Col. Andrea found that "[t]he projected impact to [Plaintiff's] unit is low" if she remains "unvaccinated."  ECF No. 22-13 at 89.  He suggested that Plaintiff's unit "has backup personnel available to provide positional coverage in the event of any operations personnel requiring quarantine."  *Id.*  The "backup personnel" appear to come, at least in part, from the fact that Plaintiff works in shifts such that there are other officers nearby who execute the same job.  ECF No. 23-1 at 8.  Part of his opinion, however, also relied on the fact that Plaintiff had previously contracted COVID.  ECF No. 22-13 at 89.

To be sure, Col. Andrea's recommendation, ratified by his commanding officer, is entitled to its own due regard as an exercise of military expertise and judgment.  As Plaintiff's commanding officer, he understands her role better than anyone else, and his view is certainly due even more regard if, as Plaintiff alleges, the RRT that recommended denial of Plaintiff's request neither "talked with [Plaintiff]" or visited her command.  ECF No. 23-1 at 4.  That various officers within Plaintiff's chain of command came to different conclusion when exercising their military expertise and that at least two of them consider Plaintiff fairly fungible is strong support for Plaintiff's RFRA claim.

Ultimately, however, not strong enough for a preliminary injunction.  First and foremost, a religious exemption from a medical requirement always starts from a disadvantaged position relative to other requests because, as the previously explained, there can be no greater military interest than in keeping each servicemember fit and healthy enough to accomplish their duties.

19

*See Navy SEAL*, 2022 WL 1294486, at *10.  Plaintiff argues that *Navy SEAL* and this case are distinguishable on the facts.  The Court disagrees.  As an officer, the military likely has a greater interest in her health than enlisted personnel.  *See Short*, 2022 WL 1051852, at *6.  Additionally, Plaintiff's specific duties strike the Court as relatively more important to national security.  She has "operational control and on-line decision-making responsibilities for all aspects of NRO operations," which evidently includes maintaining the integrity of military spacecraft while executing highly sensitive and important missions.  ECF No. 22-10 at 2.  Major General Shipton relied on these facts in recommending denial, ECF No. 22-13 at 92, and her argument, ratified by Lieutenant Generals Whiting and Miller, is compelling.  Although a close call, the Court is inclined to find—on this record and at this early stage of the case—a compelling government interest in Plaintiff's vaccination.

As for whether vaccination is the least restrictive means, the Court already concluded on a similar record that "the military's scientific and medical conclusion [that nothing less than vaccination sufficiently protects a servicemember from the consequences of COVID-19], which rest[s] on the great weight of scientific authority," should not be rejected, and the Court is not inclined to depart from that tentative position.  *See Navy SEAL*, 2022 WL 1294486, at *11.  In addition to arguments the Court addressed in *Navy SEAL*, Plaintiff also argues that vaccination cannot be the least restrictive means because "Defendants do not prohibit contact outside of work."[8]  On this record, like in *Church*, that is all the more reason vaccination may be necessary.

---

[8] Plaintiff also argues that "Defendants choose not to extend its [vaccination] mandate to contractors [who] work in the same space, on the same matters."  Repl. at 14.  That seems to be incorrect.  The Executive promulgated a regulation requiring all federal contractors to be vaccinated against COVID-19, but that regulation has been preliminarily enjoined nationwide.  *Georgia v. Biden*, --- F. Supp. 3d ---, 2021 WL 5779939 (S.D. Ga. Dec. 7, 2021), *appeal pending*, No. 21-14269 (11th Cir.).

20

*See* 2021 WL 5179215, at * 19 ("Civilian employees who continue to telework do not live in a vacuum.")

Plaintiff also asserts, relying on *Air Force Officer*, that the Air Force is "rubber stamping" exemption denials. Repl. at 15 (citing 2022 WL 468799, at *11 ("the Court easily finds that the Air Force's process to protect [RFRA] rights is both illusory and insincere")). On this record, such a finding is much more difficult. Defendants represent, and Plaintiff does not contest, that the Air Force has approved forty-one religious exemption requests. Opp. at 9. Plaintiff evidently thinks this number too low, but a low approval rate is not itself evidence of cursory review of exemption requests. The review process here was also much lengthier and more involved than in *Navy SEAL*. Defendants' Exhibit 12, "Captain Creaghan Religious Accommodation Request Package," is 111 pages. Aside from the RRT, Captain Creaghan's request was reviewed by five officers, including the Surgeon General of the Air Force, who each issued individual, specific findings. The RRT report also made specific findings based on its characterization of Plaintiff's duties. It found that Captain Creaghan was "responsible for directing daily operations and maintenance for NRO space and ground systems and assuring overall spacecraft health and mission success." ECF No. 22-13 at 63. It concluded that Plaintiff is "a practicing Catholic who believes she would be a willing participant and beneficiary of abortion" and thereby holds a sincere religious belief. *Id.* at 65. It found a "compelling government interest in ensuring military mission success" through vaccination. *Id.* at 66. It further found that "[t]elework is not a viable less restrictive means, because [Plaintiff's] duties require physical presence on an operations floor with 110 personnel." *Id.* at 67. On the Court's reading, Lieutenant General Whiting had a full record with findings specific to Plaintiff's beliefs and duties when he denied Plaintiff's request.

As such, and on the whole, there remain a number of questions as to whether Plaintiff can carry her burden to show that she is likely to succeed on her RFRA claim on the record at this time.

### C.  Irreparable Harm

The Court next considers whether Plaintiff has demonstrated "irreparable harm." *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995).  To constitute "irreparable harm," the injury alleged must be both "certain and great, actual and not theoretical, beyond remediation, and of such imminence that there is a clear and present need for equitable relief." *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 55 (D.C. Cir. 2015) (cleaned up).  A mere "possibility of irreparable harm" is not enough; a plaintiff must demonstrate that the alleged injury is "*likely* in the absence of a injunction." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (cleaned up).  Plaintiff has not carried her burden.

First, it is somewhat unclear whether separation proceedings are actually certain to proceed.  Although Plaintiff's direct commanding officer warned that "if the initial dose is not completed by [a] deadline, initiation of administrative discharge *will* be pursued," ECF No. 8-5 at 4 (emphasis added), the applicable form letter provides that "[f]ailure to comply with this lawful order *may* result in administrative and/or punitive action," *id.* at 2 (emphasis added). Were separation proceedings, or any other adverse action, certain to occur, Plaintiff has not shown that those actions would be irreparable.  *See Navy SEAL*, 2022 WL 1294486, at *15 ("[a]n adverse fitness report may be purged from Plaintiff's files, adverse separation proceedings may be dissolved," and military records can be corrected in subsequent proceedings).  Nor has Plaintiff demonstrated how the financial consequences of discharge are the sorts of loss of employment benefits that, as the Court held in *Church*, is not irreparable harm absent a

"genuinely extraordinary situation."  2021 WL 5179215, at \*15 (citing *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974); *see also Short*, 2022 WL 1051852, at \*9 (citing *Hartikka v. United States*, 754 1516, 1518 (9th Cir. 1985) ("loss of income, loss of retirement and relocation pay, and damage to [the plaintiff's] reputation resulting from the stigma attaching to less than honorable discharge" are not irreparable injuries)).  Finally, as the Court explained in *Navy SEAL*, because Plaintiff likely only faces the deprivation of a *statutory* right, Plaintiff has not shown irreparable injury predicated on the loss of a *constitutional* right.  *See* 2022 WL 1294486, at \*16.

### D.  Public Interest

"The final two factors the Court must consider when deciding whether to grant a preliminary injunction are the balance of harms and the public interest."  *Sierra Club v. U.S. Army Corps of Eng'rs*, 990 F. Supp. 2d 9, 41 (D.D.C. 2013).  Where, as here, the government is a party to the litigation, these two factors merge and are "one and the same, because the government's interest is the public's interest."  *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016).  "Although allowing challenged conduct to persist certainly may be harmful to a plaintiff and the public, harm can also flow from enjoining an activity, and the public may benefit most from permitting it to continue."  *Sierra Club*, 990 F. Supp. 2d at 41.  Therefore, when "balanc[ing] the competing claims of injury," the Court must "consider the effect on each party of the granting or withholding of the requested relief."  *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

On the present record, as in *Navy SEAL*, the public's interest in military readiness and the military's interest in Plaintiff's health outweigh Plaintiff's religious liberty interest.  *See* 2022 WL 1294486 \*17.  As the Court explained in *Church*, the military has concluded, based on a

long and detailed scientific record, that vaccination is necessary to protect its servicemembers individually and to further national security more broadly.  2021 WL 5179215, at *19.  At the very least, without a lengthier record, the Court would not be inclined to "disturb th[o]se well-found military judgments."  *Id.*  Nor has Plaintiff offered any reason in this case for the Court to depart from *Navy SEAL* and *Church*.

## IV.   CONCLUSION

An appropriate order accompanies this memorandum opinion.

Dated: May 12, 2022

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

24

48