IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CAPTAIN MARIELLA CREAGHAN,** *Plaintiff,* v. **LLOYD J. AUSTIN III,** *et al.,* *Defendants.* | No. 1:22-cv-981 (CKK) |

### DEFENDANTS' RESPONSE TO PLAINTIFF'S RESPONSE TO SHOW CAUSE

Plaintiff Captain Mariella Creaghan challenges a COVID-19 vaccination requirement that no longer exists and seeks relief that this Court therefore cannot grant her. On December 23, 2022, Congress passed Section 525 of the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 ("NDAA"). *See* Pub. L. No. 117-263, § 525 (Dec. 23, 2022), 136 Stat 2395. Section 525 of the NDAA directed the Secretary of Defense, within 30 days, to rescind the August 2021 memorandum requiring vaccination of service members for COVID-19. Pursuant to the NDAA, the Secretary of Defense issued a memo on January 10, 2023. *See* 1/10/2023 SECDEF Memo ("Rescission Memo") (attached as Ex. 1). That memo rescinded the Secretary's August 24, 2021 memorandum, which required COVID-19 vaccination, and his November 30, 2021 memorandum, which required COVID-19 vaccination for members of the National Guard and the Ready Reserve.

The statutorily-mandated Rescission Memo confirms that this case is moot. The Rescission Memo prohibits separations based solely on refusal of the COVID-19 vaccine by service members who sought an exemption. *Id.* The Rescission Memo further directs the Services to update the records of individuals currently serving to remove any adverse actions solely associated with the denial of an accommodation request. *Id.* The Rescission Memo also halts the processing of

1

requests for exemption to the now-defunct mandate. *Id*. The NDAA, as implemented through the Rescission Memo, thereby grants Plaintiff the relief requested in her Complaint. She thus lacks a legally cognizable interest in the outcome of this litigation, and her Complaint should be dismissed as moot.

## BACKGROUND

Plaintiff is an active-duty officer in the Space Force, which is a component of the Department of the Air Force. Plaintiff requested, and was not approved for, a religious exemption from the COVID-19 vaccination requirement. Plaintiff alleges that she received a Letter of Reprimand on July 5, 2022, for failure to comply with her vaccination order. Suppl. Am. Compl., ECF No. 58 ¶ 85. She also alleges that she "faces adverse disciplinary proceedings," *id*. ¶ 12, and "could face military discharge" for failure to comply with her vaccination order, *id*. ¶ 87.

Plaintiff initiated this action to prevent the consequences that she fears from her refusal to comply with her vaccination order. She alleges that the requirement for vaccination against COVID-19 violates the Religious Freedom Restoration Act ("RFRA"), the Free Exercise Clause of the First Amendment, and the Equal Protection Clause of the Fifth Amendment. *Id*. ¶¶ 185–223. She seeks an order declaring the challenged vaccination requirement unlawful and enjoining the enforcement of the vaccination requirement "and any and all adverse consequences" imposed upon her for failure to comply with the vaccination requirement. *Id*. at 51–52. Plaintiff also seeks nominal damages from Defendants "to signify the loss of Plaintiff's constitutional and statutory rights." *Id*. at 52.

Plaintiff sought a preliminary injunction, which this Court denied. *Creaghan v. Austin*, --- F. Supp. 3d ---, 2022 WL 1500544 (D.D.C. May 12, 2022). That order is on appeal. *See Creaghan*

*v. Austin*, No. 22-5135 (D.C. Cir.).[1]  Additionally, Defendants have filed motions to dismiss, which are fully briefed, including court-ordered supplemental briefs regarding Plaintiffs' supplemental complaint.  *See* ECF Nos. 53, 55, 56, 59, 60.[2]

On December 23, 2022, Congress passed Section 525 of the NDAA, which directed the Secretary of Defense, within 30 days, to rescind the August 2021 memorandum requiring vaccination of service members for COVID-19.  That same day, the Court issued a minute order directing the parties to show cause why this matter should not be dismissed as moot in light of the NDAA.  The parties each submitted briefing on January 6, 2023.  *See* Defs.' Resp. to Order to Show Cause, ECF No. 62; Pl.'s Resp. To Show Cause, ECF No. 63.  Defendants submitted that "at least some and possibly all aspects of this case will become moot and that the Court should order further briefing on mootness after the rescission mandated by the NDAA is implemented by the Department of Defense."  ECF No. 62 at 1.  On January 7, 2023, the Court issued a minute order directing Defendants to file a substantive response to Plaintiff's Response to Show Cause "no later than five days after the recission of the vaccine mandate at issue in this case."[3]  Defendants now submit that the NDAA, as implemented by the Rescission Memo, moots this case.

## LEGAL STANDARDS

Article III of the Constitution limits federal court jurisdiction to "actual, ongoing controversies."  *Foretich v. United States*, 351 F.3d 1198, 1210 (D.C. Cir. 2003) (quoting *Honig v.*

---

[1] In that appeal, on January 6, 2023, the Court granted the government's motion to hold the case in abeyance, over Plaintiff's opposition, pending further order of the Court.

[2] On July 27, 2022, a federal district court in Ohio issued a classwide injunction in *Doster v. Kendall*, No. 1:22-cv-84, 2022 WL 2974733, at *1 (S.D. Ohio July 27, 2022).  Pursuant to that injunction, the Department of the Air Force—including the U.S. Space Force—halted processing of religious accommodation requests (including appeals), as well as any adverse action (including discharge) based on refusal to comply with a vaccination order following the denial of a religious accommodation request.

[3] The Court of Appeals has similarly ordered the parties to brief, no later than January 27, 2023, "(1) whether the appeal is now moot, and (2) if not, whether or how the congressional directive to rescind the vaccine mandate, and the Secretary's action doing so, affect the merits of the appeal."

*Doe*, 484 U.S. 305, 317 (1988)) (quotations omitted). Mootness is an Article III jurisdictional doctrine that "limits federal courts to deciding actual, ongoing controversies." *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 645 (D.C. Cir. 2011) (quoting *Clarke v. United States*, 915 F.2d 699, 700–01 (D.C. Cir. 1990) (en banc)). Courts must "evaluat[e] mootness 'through all stages' of the litigation in order to ensure there remains a live controversy." *21st Century Telesis Joint Venture v. FCC*, 318 F.3d 192, 198 (D.C. Cir. 2003) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). If facts develop such that a "decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future," a case is moot and the court should not decide it. *Am. Bar Ass'n*, 636 F.3d at 645 (quoting *Clarke*, 915 F.2d at 701).

## ARGUMENT

### I. THE NDAA, AS IMPLEMENTED BY THE RESCISSION MEMO, MOOTS THIS CASE.

"It is well established that a case must be dismissed as moot if new legislation addressing the matter in dispute is enacted while the case is still pending." *Am. Bar Ass'n*, 636 F.3d at 643; *see also Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1198 (9th Cir. 2019) ("[T]he repeal, amendment, or expiration of challenged legislation is generally enough to render a case moot and appropriate for dismissal."). Indeed, the District of Columbia Circuit has repeatedly confirmed that challenges to a policy are mooted when intervening legislation terminates that policy. *See, e.g.*, *Nat'l Black Police Ass'n v. Dist. of Columbia*, 108 F.3d 346, 347 (D.C. Cir. 1997) (dismissing as moot challenge to a voter initiative that capped campaign-contribution levels due to subsequent legislation raising the caps above the voter initiative levels); *Defenders of Wildlife, Inc. v. Endangered Species Scientific Auth.*, 725 F.2d 726 (D.C. Cir. 1984) (holding that congressional amendments to Endangered Species Act mooted challenge to guidelines issued under the previous version of the statute); *see also Dep't of Treasury v.*

4

*Galioto,* 477 U.S. 556, 556 (1986) (dismissing challenge to statute denying access to firearms based on prior mental institutionalization as moot due to intervening redraft of statute providing an administrative remedy for those affected). This is especially true when intervening legislation moots an agency's policy. *See, e.g.*, *Klayman v. Obama*, 759 F. App'x 1, 3 (D.C. Cir. 2019) (dismissing as moot challenge to bulk collection of telephone metadata where intervening legislation terminated telephone metadata collection program); *Am. Bar Ass'n*, 636 F.3d at 643 (D.C. Cir. 2011) (dismissing as moot challenge to FTC policy statement where intervening legislation materially redefined the term at issue).

The NDAA is intervening legislation that, as implemented by the Secretary's statutorily mandated Rescission Memo, ends any live controversy between Plaintiff and Defendants. The NDAA as implemented through the Rescission Memo gave Plaintiff the relief sought in her Complaint. The Rescission Memo terminates the challenged vaccination requirement, rendering moot Plaintiff's requests for declaratory relief and injunctive relief barring enforcement of the vaccination requirement. It also confirms that Plaintiff will not be separated based solely on her refusal to comply with the vaccination requirement, and that Plaintiff's Letter of Reprimand—which was issued solely based on her refusal to comply with the vaccination requirement—will neither be finalized nor entered into her record and that no further action will be taken with regard to it. Plaintiff can point to no further relief to be gained by pursuing this lawsuit. *See* Resp. at 8 (alleging incorrectly that the NDAA does not moot the case because it "does not rescind [Plaintiff's Letter of Reprimand], halt prosecution against her for 'failing to follow a lawful order' . . . , nor protect her for [sic] noncompliance with the August 24, 2021 Memorandum").[4] Plaintiff thus

---

[4] Plaintiff argues in her Response to Show Cause that the NDAA fails to "revers[e] . . . denial of a religious exemption," and thus Plaintiff "is still presently being harmed by Defendants." Resp. at 6. Of course, because there is no longer a live requirement that Plaintiff be vaccinated, there is no longer any need to provide a religious accommodation to the vaccination requirement.

5

"lack[s] a legally cognizable interest in the outcome" of her lawsuit. *Larsen v. U.S. Navy*, 525 F.3d 1, 3 (D.C. Cir. 2008) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).

Plaintiff cannot sustain a lawsuit based merely on her desire to prove that the vaccination requirement was unlawful prior to its termination. A judicial ruling as to whether the now-rescinded policy violated RFRA, the First Amendment, or the Fifth Amendment would be an impermissible advisory opinion. *See St. Pierre v. United States*, 319 U.S. 41, 42 (1943) ("A federal court is without power to decide moot questions or to give advisory opinions which cannot affect the rights of the litigants in the case before it.").

Plaintiff's request for damages does not revive her lawsuit. Plaintiff seeks nominal damages against Defendants. But there is no waiver of sovereign immunity that would permit a damages award against the Government. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1025 (D.C. Cir. 2006) (quoting *United States v. Mitchell,* 463 U.S. 206, 212 (1983)). "The federal government may waive its sovereign immunity by statute, but that waiver 'must be unequivocally expressed in statutory text.'" *Id.* (quoting *Lane v. Peña,* 518 U.S. 187, 192 (1996)). Plaintiff wrongly couches her claim for nominal damages under RFRA. Suppl. Am. Compl. ¶ 19. RFRA authorizes "appropriate relief against a government." 42 U.S.C. § 2000bb–1(c). But the District of Columbia Circuit has conclusively determined that "RFRA does not waive the federal government's sovereign immunity for damages." *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006). Thus, even assuming Plaintiff could establish ongoing RFRA violations—which she cannot, *see* Defs.' Opp. to Pl.'s Mot. for a Temp. Restraing Or. and/or Prelim Inj., ECF No. 22 at 14–30—her request for

nominal damages fails as a matter of law.[5]

Plaintiff further attempts to sustain her lawsuit based on various speculations. First, Plaintiff argues that the case is not moot because it is possible that "the language of the NDAA will be ineffective as the policy measure will simply not be carried out." Resp. at 3. But Defendants have already demonstrably implemented the NDAA by signing the Rescission Memo. And any allegation that the Services will ignore the Secretary's Rescission Memo is unfounded speculation. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004) ("[A] presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." (quoting *United States v. Chemical Found. Inc.*, 272 U.S. 1, 14–15 (1926)).

Plaintiff also speculates that Defendants are likely to reinstate the same COVID-19 vaccination requirement, and thus an exception to the mootness doctrine applies. To the contrary, as set forth below, neither the exception for issues capable of repetition yet evading review, nor the exception for voluntary cessation applies here.

### A. THE MOOTNESS EXCEPTION FOR ISSUES CAPABLE OF REPETITION YET EVADING REVIEW DOES NOT APPLY HERE.

Plaintiff wrongly asserts that the case falls under the mootness exception for issues capable of repetition yet evading review. "This exception applies where '(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'" *Pulphus v. Ayers*, 909 F.3d 1148, 1154–55 (D.C. Cir. 2018) (quoting *Senate Permanent*

---

[5] Plaintiff's original Complaint sought damages against Defendants Lieutenant General Robert I. Miller and Lieutenant General Stephen Whiting in their individual capacities. Compl. at 30, ECF No. 7. Plaintiff has since dismissed those claims. *See* Am. Complaint, ECF No. 49 at 43–44; Suppl. Am. Complaint, ECF No. 58 at 51–52.

*Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1088 (D.C. Cir. 2017)). Plaintiff meets neither prong.

Plaintiff presents no evidence for the assertion that she will be subject to the same challenged COVID-19 vaccination requirement again in the future. Plaintiff alleges that the NDAA "fails to provide lasting relief for servicemembers in other fiscal years" because it "is specific to the DoD's August 24, 2021 Memorandum." Resp. at 7. But Plaintiff relies on speculation that Defendants will revive the same COVID-19 vaccination requirement. Plaintiff provides no evidence of any such expectation, much less a "reasonable expectation," *Pulphus*, 909 F.3d at 1154–55, that she will be subject to the same challenged COVID-19 vaccination requirement in the future.

Even if the military were to subject plaintiffs to a new COVID-19 vaccination requirement, there would be no "reasonable expectation" that any such requirement would be "the same" as the one that has now been rescinded. *Id*. If the military or one of its Services were to impose a different vaccination requirement—for example, one applicable to service members who are about to deploy to a particular location—then any RFRA challenge to that policy, and the imposition of discipline for noncompliance with such a requirement, would raise different issues than this case does. In that circumstance, even if Plaintiff herself were subject to a new or different requirement in the future, "'the same parties'" would not be "'engag[ing] in litigation over the same issues'"— a precondition for the capable-of-repetition exception to apply. *Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1088 (D.C. Cir. 2017). Moreover, "[i]t does not matter that the [agency] might hereafter . . . promulgate *new* rules" because "[t]hese are merely hypothetical possibilities." *Am. Bar Ass'n*, 636 F.3d at 647. Mere "*possibilities* regarding

8

regulations and enforcement policies that do not presently exist" are "not enough to give rise to a live dispute." *Id*.

Regardless, a vaccination requirement would not be so short in duration as to evade review. *See United Bhd. of Carpenters & Joiners of Am. v. Operative Plasterers' & Cement Masons' Int'l Ass'n of the U.S. & Can.*, 721 F.3d 678, 688 (D.C. Cir. 2013) ("To evade review, the challenged action must be incapable of surviving long enough to undergo Supreme Court review."). The relevant inquiry under the evading-review prong is "whether 'the challenged activity is *by its very nature short in duration,* so that it could not, or probably would not, be able to be adjudicated while fully live.'" *Pharmachemie B.V. v. Barr Lab'ys, Inc.*, 276 F.3d 627, 633 (D.C. Cir. 2002) (quoting *LaRouche v. Fowler,* 152 F.3d 974, 978 (D.C. Cir. 1998)). A vaccination requirement is, by its nature, not short in duration. *Cf. Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 322 (D.C. Cir. 2009) (finding mootness exception applied to challenge to delay in issuance of an export license, where average length of delay was 74 days). The mere fact that Congress terminated the vaccination requirement before Plaintiff brought her case to the Supreme Court does not trigger the exception. Indeed, two other lawsuits challenging the vaccination requirement reached the Supreme Court long before the NDAA terminated the vaccination requirement. *See Dunn v. Austin*, 142 S. Ct. 1707 (2022); *Navy SEALs 1–26 v. Austin*, 142 S. Ct. 1301, 1301 (2022).

Accordingly, the exception for issues capable of repetition yet evading review does not apply.

### B.  THE MOOTNESS EXCEPTION FOR VOLUNTARY CESSATION DOES NOT APPLY HERE.

The voluntary cessation exception does not apply for similar reasons. Under that doctrine, a defendant's voluntary cessation of challenged conduct moots a case when "(i) there is no reasonable expectation . . . that the alleged violation will recur, and (ii) interim relief or events

have completely and irrevocably eradicated the effects of the alleged violation." *Pinson v. U.S. Dep't of Just.*, 514 F. Supp. 3d 232, 245 (D.D.C. 2021) (quoting *Aref v. Lynch*, 833 F.3d 242, 251 (D.C. Cir. 2016)) (quotations omitted).

First, contrary to Plaintiff's assertions, Defendants' cessation of the vaccination requirement was not voluntary. Defendants "most assuredly did not alter [their own course] in order to avoid litigation." *Am. Bar Ass'n*, 636 F.3d at 648. Rather, intervening legislation—in the form of the NDAA—required DoD to rescind the vaccination mandate. *See id.* (finding voluntary cessation exception did not apply where "intervening legislation simply nullified the [agency's challenged] policy statement"). The NDAA "specifically forbids the kind of [action] challenged in this suit" and "[t]he cessation of the [vaccination requirement] was therefore not voluntary." *Klayman*, 759 F. App'x at 3; *see also J. T. v. D.C.*, 983 F.3d 516, 523 (D.C. Cir. 2020) ("'The voluntary-cessation doctrine has no apparent relevance' where the 'source of cessation . . . lies beyond the unilateral legal authority of any of the named defendants.'" (quoting *Guedes v. ATF*, 920 F.3d 1, 15 (D.C. Cir. 2019) (per curiam)).

Second, even assuming Defendants' cessation was voluntary, Plantiff still fails to show any "reasonable expectation that the alleged violation will recur." *Nat'l Black Police Ass'n*, 108 F.3d at 349 (quoting *County of Los Angeles v. Davis,* 440 U.S. 625, 631 (1979)). A "presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Nat'l Archives & Records Admin.*, 541 U.S. at 174 (quoting *Chemical Found. Inc.*, 272 U.S. at 14–15). Thus, "[w]ithout evidence to the contrary, [courts] assume that formally announced changes to official governmental policy are not mere litigation posturing." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009) ("[G]overnment actors in their sovereign capacity and in

the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties."), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011). It is settled practice in this Circuit and others to lend a presumption of regularity to voluntary cessation by government actors. *See Pinson*, 514 F. Supp. 3d at 245 ("[W]here the defendant is a government actor—and not a private litigant—there is less concern about the recurrence of objectionable behavior[.]" (quoting *Citizens for Responsibility & Ethics in Wash. v. SEC*, 858 F. Supp. 2d 51, 61–62 (D.D.C. 2012))); *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 918 F.3d 151, 157–59 (D.C. Cir. 2019) (recognizing that an unambiguous representation by an agency official would be entitled to presumption of regularity and could satisfy burden for voluntary cessation purposes); *Comm. in Solidarity With People of El Salvador (CISPES) v. Sessions*, 929 F.2d 742, 745 (D.C. Cir. 1991) (explaining that, in deciding "whether a case presents a live controversy," it is "settled practice" to accept government defendants' representations regarding cessation); *Keister v Bell*, 29 F 4th 1239, 1250 (11th Cir. 2022) ("Government defendants receive the benefit of the doubt in voluntary-cessation cases: When they voluntarily stop the challenged conduct, a rebuttable presumption arises that they will not reengage in it."). As discussed above, Plaintiff presents no evidence—much less "clear evidence," *Nat'l Archives & Records Admin.*, 541 U.S. at 174—that Defendants intend to revive the same challenged COVID-19 vaccination requirement contrary to the NDAA and the Rescission Memo. Thus, the exception for voluntary cessation does not apply.

Accordingly, this case should be dismissed as moot.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Supplemental Amended Complaint as moot. Plaintiff's request for nominal damages should be dismissed for lack of subject-matter jurisdiction.

Dated: January 17, 2023					Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

ANTHONY J. COPPOLINO
Deputy Branch Director
Federal Programs Branch

*/s/ Cassandra Snyder*
ANDREW E. CARMICHAEL
Senior Trial Counsel
STUART J. ROBINSON
Senior Counsel
CATHERINE M. YANG
JOHNNY H. WALKER
CASSANDRA M. SNYDER (DC Bar # 1671667)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 451-7729
Fax: (202) 616-8470
Email: cassandra.m.snyder@usdoj.gov

*Attorneys for Defendants*