IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CAPTAIN MARIELLA CREAGHAN

        *Plaintiff*,

    v.

LLOYD J. AUSTIN III, FRANK KENDALL, LT. GEN. STEPHEN N. WHITING, and LT. GEN. ROBERT I. MILLER,

        *Defendants*.

Case No.  1:22-cv-00981

Hon. Colleen Kollar-Kotelly

---

## CAPTIAN MARIELLA CREAGHAN'S REPLY IN SUPPORT OF HER RESPONSE TO SHOW CAUSE

Defendants argue that Section 525 of the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 (hereinafter 2023 NDAA) "grants Plaintiff the relief requested in her Complaint." Defs' Resp. Br. at 2.  It does not.

This case asks whether Defendants must follow the legal standard in the Religious Freedom Restoration Act (RFRA) in their decisions before substantially burdening Captain Creaghan's religious exercise, or whether Defendants may continue to impose consequences and restrictions on Captain Creaghan due to her vaccination status, which is based on the exercise of her sincerely held religious beliefs.  As documented in Defendants' briefing, Captain Creaghan seeks to vindicate her rights under RFRA, which govern Defendants' decision to grant an exemption from its mandate, as well as the "adverse consequences" that stem from her religious abstention from COVID-19 vaccination.  Defs' Resp. Br. at 2.

Defendants argue that recission of their 24 August 2021 Memorandum moots this case. Yet, while the memorandum has now been rescinded, Defendants' "standing Departmental policies, procedures, and processes regarding immunizations remain in effect.  These include the

ability of commanders to consider, as appropriate, the individual immunization status of personnel in making deployment, assignment, and other operational decisions, including . . . travel." Defs' Resp. at Ex. 1. While the specific mandate is presently not in effect, the "policies, procedures, and processes" which carry out its intent and continue to enforce its goals "remain in place." Defs' Resp. at Ex. 1. It is these "policies, procedures, and processes" that continue to harm Captain Creaghan by substantially burdening her religious exercise without proper compliance with the RFRA. This Reply discusses I) the extant and ongoing harm Captain Creaghan continues to face, and II) how, even if the Court were to deny that harm is ongoing, her claims fall under the Capable of Repetition, Yet Evading Review and Voluntary Cessation exceptions to mootness.

## I.      HARM IS EXTANT AND ONGOING

Defendants' Response aggrandizes the real effect the recission of their 24 August 2021 Memorandum has on Captain Creaghan. The recession of the memorandum is only as effective as Defendants' policies, procedures, and processes allow it to be. And here, Defendants admit that their ongoing COVID-19 policies, procedures, and processes still "remain in place" despite the memorandum's recission. Defs' Resp. at Ex. 1. In following these policies, procedures, and processes, Defendants continue to base their decisions on the vaccination status of religious individuals, without providing an accommodation. *See* Exhibit 1, Decl. of Captain Creaghan.

Captain Creaghan's Individual Medical Readiness (IMR) status still indicates that she is classified as "not medially ready." Exhibit 1, Decl. of Captain Creaghan at ¶¶ 4-8. Since the implementation of the August 24, 2021 Memorandum, a servicemember who has been granted an administrative, religious, or medical exemption would be deemed to have a "medically ready" IMR status. *Id*. at ¶ 5. When Defendants denied Captain Creaghan's religious exemption request, they changed her IMR status to "not medically ready." *Id*. at ¶ 4. She still holds that same status

today under Defendants' current policies.  *Id*.  A servicemember's IMR status is heavily weighed when Defendants make deployment and assignment decisions.  *Id*. at ¶ 7.  The controlling policy regarding both official and personal travel "Consolidated Department of Defense Coronavirus Disease 2019 Force Health Protection Guidance", first implemented on August 29, 2022, remains in place. https://media.defense.gov/2022/Aug/30/2003067565/-1/1/0/CONSOLIDATEDDEPAR TMENT-OF-DEFENSE-CORONAVIRUS-DISEASE-2019-FORCE-HEALTHPROTECTION-GUIDANCE-REVISION-3.PDF,     last     visited     Jan.     24,     2023;     *see     also* https://www.airforcemedicine.af.mil/Portals/1/Documents/COVID-19/TAB%202%20-%20DAF %20Supplement%20to%20DoD%20Consolidated%20FHPG%20R3%20%2031Aug22%20Final .pdf, last visited Jan. 24, 2023, last visited Jan. 24, 2023 (adopting the Department of Defense (DoD) policies to the U.S. Air Force) (herein after "DoD Policies").  *Id*. at ¶ 8.  Defendants' travel approval policies for both official and personal travel continue to be based on the vaccination status of a servicemember.  *Id*. at ¶ 9.  These travel restrictions, however, do not apply to Captain Creaghan's co-workers who are DoD contractors.  *Id*. at ¶ 10.  Defendants' current policies continue to restrict Captain Creaghan's travel, future promotions, etc. due to her abstention from the COVID-19 vaccine on religious grounds.  *Id*. at ¶ 12.

All this to say: the RFRA is not satisfied by continuing to disadvantage and discriminate against religious individuals through policies, procedures, and processes that carry out the objective of the now-rescinded memorandum.  The effect is the same, whether inflicted by a memorandum or whether inflicted by a policy.  And the substantial burden of the consequences imposed on Captain Creaghan is the same, whether spearheaded by a memorandum or carried out by a policy.  Indeed, the majority of RFRA cases involving the military concern their policies. *See, e.g.*, *Singh v. McHugh*, 109 F. Supp. 3d 72 (D.D.C. 2015), *amended at* 185 F. Supp. 3d 201

(D.D.C. 2016); *Rigdon v. Perry*, 962 F.Supp.150, 162 (D.D.C. 1997).[1]   And while the NDAA required the recission of the 24 August 2021 Memorandum, it "has not remedied all injuries alleged by" Captain Creaghan, as these injuries are caused by Defendants' ongoing immunization policies. *Guam Contractors Ass'n v. Wilkinson*, No. 16-00075, 2021 U.S. Dist. LEXIS 16455, at *7 (D. Guam Jan. 27, 2021).   Therefore, the case is not moot because the NDAA did not prevent Defendants from continued implementation of their "standing Departmental policies, procedures, and processes regarding immunizations" that violate the RFRA.  Defs' Resp. at Ex. 1.[2]

## II.   EVEN IF THE COURT WERE TO DENY THE PRESENT EXISTANCE OF HARM, CAPTAIN CREAGHAN'S CLAIMS STILL AVOID MOOTNESS.

A case only becomes moot when "(1) it can be said with assurance that 'there is no reasonable expectation . . .' that the alleged violation will recur, and, (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (citations omitted); *see also* 15 Moore's Federal Practice § 101.93 (Matthew Bender 3d ed.) (stating that mootness occurs as a result of the plaintiff having "lost a present right to be vindicated or no longer ha[ving] a stake or interest in the outcome of the litigation.").  Such is not the case here, where Captain Creaghan continues to serve in the Space Force and continues to be subject to Defendants' policies, procedures, and processes.  Under these circumstances Captain Creaghan's claims satisfy two exceptions to the mootness doctrine:

---

[1] Defendants are correct to argue that "challenges to a policy are mooted when intervening legislation terminates that policy."  Defs' Resp. at 4 (citing *Nat'l Black Police Ass'n v. Dist. of Columbia*, 108 F.3d 346, 347 (D.C. Cir. 1997); *Defenders of Wildlife, Inc. v. Endangered Species Scientific Auth.*, 725 F.2d 726 (D.C. Cir. 1984)).  Here, however, that axiom is inexact as the NDAA has expressly not terminated Defendants' immunization policies, processes, and procedures.  Defs' Resp. at Ex. 4.

[2] Defendants continue to fight the injunction upheld in *Doster v. Kendall*, No. 22-3497/3702, 2022 U.S. App. LEXIS 32847, at *2 (6th Cir. Nov. 29, 2022).  On December 15, 2022, Defendants motioned the Sixth Circuit for more time to file their Petition for Rehearing En Banc.  *Id.* at ECF No. 43.  The following day, the Sixth Circuit granted the request.  *Id.* at ECF No. 44.

1) they are capable of repetition, yet evading review, and 2) they fall under the voluntary cessation doctrine as the NDAA only requires that the August 24, 2021 Memorandum be rescinded.  Any other acts of the Defendants have been voluntary and are reasonably likely to reoccur given Defendants' emphatic defense of its mandate and its continuation of the same policies, procedures, and processes.

### a.  Capable of Repetition, Yet Evading Review

Defendants argue that its vaccine mandate is not "capable of repetition, yet evading review" because Captain Creaghan's claims are neither too short in duration to be fully litigated by the Court nor reasonably likely to reoccur.  Defs' Resp. at 7-8.  Defendants claim that Captain Creaghan relies solely on "speculation."  Defs' Resp. at 8.  As an initial matter, when Captain Creaghan filed her Response to Show Cause on January 6, 2023, the NDAA had just recently been signed by the President and Defendants had not yet issued their January 10, 2023 Memorandum. Now that Defendant Secretary Austin has issued the January 10, 2023 Memorandum, Defendants' official position is known and now part of the record.  Defs' Resp. at Ex. 1.  Today, it is clearer that Captain Creaghan's claims are capable of repetition, yet evading review.

First, if the Court determines that the passage of the NDAA is "intervening legislation," as Defendants argue, then its fleeting policy implications of one-year duration provide too short of a duration for full litigation.  "The NDAA is enacted each fiscal year to specify the budget needs for the Department of Defense" and "authorizes appropriations for Department of Defense military activities".  *Utah Shared Access All. v. Carpenter*, 463 F.3d 1125, 1131 (10th Cir. 2006).[3]

---

[3]  The Supreme Court has clarified,

> [E]ven if the government withdraws or modifies a COVID restriction in the course of litigation, that does not necessarily moot the case. And so long as a case is not moot, litigants otherwise entitled to . . . relief remain entitled to such relief where the applicants "*remain under a constant threat*" that government officials will use

Second, Defendants' January 10, 2023 Memorandum reveals that there is a "reasonable likelihood" the same issues will reoccur again with the same parties.  Defendants state that "[t]he Department will continue to promote and encourage COVID-19 vaccination for all Service members."  Defs' Resp. at Ex. 1.  They vow to continue the same policy it used to deny Captain Creaghan's religious accommodation.  Defs' Resp. at Ex. 1 (Defendants "shall *continue* to apply the uniform standards set forth in DoD Instruction 1300.17") (emphasis added).  Defendants also state that "*standing* Departmental policies, procedures, and processes regarding immunizations *remain in effect*."  Defs' Resp. at Ex. 1 (emphasis added).  Given Defendants' stated position, not only is there a "reasonable likelihood" that Captain Creaghan's religious exercise will be treated in the same way again, Defendants have all but promised it. *See, e.g., Kansas v. SourceAmerica*, 874 F.3d 1226, 1239 (10th Cir. 2017) (holding that there is a reasonable likelihood that the Army will continue to apply its policies in the same way in the future).[4]

### b.  Voluntary Cessation

A party's "voluntary cessation of a challenged practice" moots a case *only if* "subsequent events made it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks omitted) (emphasis added).  This heavy burden is justified

---

their power to reinstate the challenged restrictions.  *Roman Catholic Diocese*, 592 U. S., at ——, 141 S.Ct., at 68; *see also High Plains Harvest Church v. Polis*, 592 U. S. ——, 141 S.Ct. 527, 208 L.Ed.2d 503 (2020).  These principles dictated the outcome in this case, as they did in *Gateway City Church* v. *Newsom*, 592 U. S. —— —, —— S.Ct. ——, —— L.Ed.2d ——, 2021 WL 308606 (2021).

*Tandon*, 141 S.Ct. 1294, 1297 (2021) (emphasis added); see also *Roman Catholic Diocese v. Cuomo*, 141 S. Ct. 63, 68-69 (2020) (discussing the short duration of COVID-19 restrictions and the government's retention of power to implement and change policies swiftly thereby avoiding court intervention).

[4] Recurrence of the issue need not be more probable than not; instead, it only must be *capable* of repetition.  *See Honig v. Doe*, 484 U.S. 305, 319 n.6 (1988).

here because not only are Defendants "free to return to [their] old ways," but also the public has an interest "in having the legality of the practices settled." *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953) (emphasis added); *see also City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, n. 10 (1982). And a claim should only be dismissed as moot "if the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated.' The [defendant's] burden is a heavy one." *Id.* (emphasis added).

Contrary to Defendants' arguments, and pursuant to the plain language of the authorization act, the NDAA only required that Defendants rescind their August 24, 2021 Memorandum. Nothing more. Any other actions on the part of the Defendants have been voluntary. Without court intervention requiring that Defendants comply with the RFRA, they are "free to return to [their] old ways." *W.T. Grant Co.*, 345 U.S. at 632. And they are reasonably likely to, as Defendants continue to vigorously defend their mandate and their policies in the courts and they continue implore policies, procedures, and processes that discriminate against religious individuals, such as Captain Creaghan.

## **CONCLUSION**

For the reasons stated above, and those argued in Captain Creaghan's Response to Show Cause, this Court has jurisdiction over this matter. It is not moot.

Date: January 24, 2023                Respectfully submitted,

                                                          THOMAS MORE LAW CENTER

                                                          /s/ *Richard Thompson*
                                                          Richard Thompson, MI0053

                                                          /s/ *Erin Elizabeth Mersino*
                                                          Erin Elizabeth Mersino, MI0060
                                                          24 Frank Lloyd Wright Drive
                                                          J-3200

Ann Arbor, MI 48106
Ph: (734) 826-2001
Email: rthompson@thomasmore.org
emersino@thomasmore.org

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the court's electronic filing system. Parties may access this filing through the court's system. I further certify that a copy of the foregoing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically.

THOMAS MORE LAW CENTER

/s/ *Erin Elizabeth Mersino*
Erin Elizabeth Mersino, MI0060